## Nos. 22-1393, 22-1430, 22-2395 & 22-2451

# In the
# United States Court of Appeals
## for the Seventh Circuit

JOHN NAWARA,

*Plaintiff-Appellant/Cross-Appellee,*

v.

COOK COUNTY and THOMAS J. DART,

*Defendants-Appellees/Cross-Appellants.*

_____

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division, No. 1:17-cv-02393.
The Honorable **Rebecca R. Pallmeyer**, Judge Presiding.

## BRIEF AND APPENDIX OF PLAINTIFF-APPELLANT/CROSS-APPELLEE JOHN NAWARA

PETER VINCENT BUSTAMANTE
LAW OFFICE OF PETER V. BUSTAMANTE
17 North State Street
Suite 1550
Chicago, Illinois 60602
Telephone: (312) 346-2072

RICHARD F. LINDEN
LAW OFFICES OF RICHARD LINDEN
17 North State Street
Suite 1550
Chicago, Illinois 60602
Telephone: (312) 590-0211

*Attorneys for Plaintiff-Appellant/Cross-Appellee*

 

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 22-2395

Short Caption: Nawara v. County of Cook, et al.

  To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

  The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information.  The text of the statement must also be included in the front of the table of contents of the party's main brief.  **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

  ☐ **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1) The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate  disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

John Nawara

(2) The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

Law Offices of Richard Linden and Law Office of Peter Bustamante

(3) If the party, amicus or intervenor is a corporation:

 i) Identify all its parent corporations, if any; and

  N/A

 ii) list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

  N/A

(4) Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

 N/A

(5) Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

 N/A

Attorney's Signature: /s/ Richard Linden  Date: November 16, 2022

Attorney's Printed Name: Richard Linden

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d). **Yes** ☑ **No** ☐

Address: 17 North State Street, Suite 1550, Chicago, IL 60602

Phone Number: 312/590-0211  Fax Number: 312-346-2074

E-Mail Address: lindenlaw@gmail.com

rev. 12/19 AK

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: <u>22-2395</u>

Short Caption: <u>Nawara v. Cook County, et al.,</u>

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

    ☐    **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):
<u>John Nawara</u>

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:
<u>Law Offices of Richard Linden and Law Office of Peter V. Bustamante</u>

(3)    If the party, amicus or intervenor is a corporation:

    i)    Identify all its parent corporations, if any; and

        <u>N/A</u>

    ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

        <u>N/A</u>

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

    <u>N/A</u>

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

    <u>N/A</u>

Attorney's Signature: <u>s/ Peter V. Bustamante</u>    Date: <u>November 16, 2022</u>

Attorney's Printed Name: <u>Peter V. Bustamante</u>

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).    **Yes** ☐  **No** ☑

Address: <u>17 North State Street, Suite 1550</u>

<u>Chicago, IL 60602</u>

Phone Number: <u>312 346 2072</u>    Fax Number: <u>312 346 2074</u>

E-Mail Address: <u>pvbust@bustamantelaw.com</u>

rev. 12/19 AK

**TABLE OF CONTENTS**

**Page**

CIRCUIT RULE 26.1 DISCLOSURE STATEMENTS ............................................................. i

TABLE OF AUTHORITIES .................................................................................................... v

JURISDICTIONAL STATEMENT ......................................................................................... 1

      A.     Statement of Jurisdiction for the United States District Court ....................... 1

      B.     Statement of Jurisdiction for the United States Court of Appeals ................. 2

STATEMENT OF ISSUES ...................................................................................................... 3

STATEMENT OF THE CASE .................................................................................................. 3

    Facts .................................................................................................................................. 3

SUMMARY OF ARGUMENT ............................................................................................... 16

ARGUMENT ............................................................................................................................ 18

      I.      STANDARD OF REVIEW ...................................................................... 18

      II.     THE DISTRICT COURT ERRED IN HOLDING THAT THE
            CCSO'S VIOLATION OF § 12112(d)(4)(A) WILL NOT SUPPORT
            AN AWARD OF BACKPAY .................................................................... 19

            A.     The district court disregarded the plain and unambiguous
                  text of the statute in holding that the CCSO's violation of §
                  12112(d)(4) did not constitute disability discrimination ................... 19

            B.     As a successful ADA plaintiff, Nawara is presumptively
                  entitled to backpay .............................................................................. 20

            C.     Nawara proved his entitlement to backpay ...................................... 21

            D.     Nawara was not required to prove he was "disabled" to be
                  eligible for backpay caused by the CCSO's violation of 42
                  U.S.C. § 12112(d)(4)(A) ....................................................................... 24

                i.     The lower court violated rules of statutory
                        construction by adding the term "disability" to 42
                        U.S.C. § 2000e-5(g)(2)(A) ........................................... 24

ii.  Requiring employees to disclose and prove their disability conflicts with the purpose and language of 42 U.S.C. § 12112(d)(4)(A) ........................................................26

iii.  When § 12112 is considered as a whole, there is no question that backpay is an available remedy.........................30

iv.  The lower court failed to consider on-point Sixth Circuit and other authority.........................................................31

v.  The district court was duty-bound to render a decree which will eliminate discriminatory effects of the past and bar like discrimination in the future .............33

vi.  The backpay decision violates the "Make Whole" rule of the ADA and Title VII......................................................35

vii.  The cases relied on by the district court do not support the denial of backpay..................................................37

D.  Evidence of a perceived disability was presented at trial.................40

II.  THE DISTRICT COURT ERRED BY NOT ORDERING THE RESTORATION OF NAWARA'S "PENSION-BASED SENIORITY BENEFITS" ...................................................................................41

CONCLUSION.................................................................................................................46

# TABLE OF AUTHORITIES

**Page(s)**

**Cases:**

*Albemarle Paper Co. v. Moody,*
  422 U.S. 405 (1975)................................................................ 34, 35, 36

*Armstrong v. Turner Indus.,*
  141 F.3d 554 (5th Cir. 1998) ............................................................ 39, 40

*Bates v. Dura Automotive Systems,*
  767 F.3d 566 (6th Cir. 2014) ............................................................ 15, 32, 33

*BedRoc Ltd., LLC v. United States,*
  541 U.S. 176 (2004) .............................................................................. 25

*Bragdon v. Abbott,*
  524 U.S. 624 (1998) .............................................................................. 20

*Cent. States, Se. & Sw. Areas Pension Fund v. Express Freight Lines, Inc.,*
  718 F. Supp. 716 (N.D. Ill. 1989), *aff'd sub nom. Cent. States, Se. & Sw.*
  *Areas Pension v. Jansen,* 933 F.2d 1012 (7th Cir. 1991) ................................ 45

*Chemetron Corp. v. McLouth Steel Corp.,*
  381 F. Supp. 245 (N.D. Ill. 1974), *aff'd,* 522 F.2d 469 (7th Cir. 1975)........................ 45

*Conroy v. New York State Dep't of Corr. Servs.,*
  333 F.3d 88 (2d Cir. 2003) ................................................................ 27, 28, 29

*David v. Caterpillar, Inc.,*
  324 F.3d 851 (7th Cir. 2003) ................................................................ 20

*Domanus v. Lewicki,*
  288 F.R.D. 416 (N.D. Ill. 2013), *aff'd,* 742 F.3d 290 (7th Cir. 2014) ............................ 44

*E.E.O.C. v. Ilona of Hungary, Inc.,*
  108 F.3d 1569 (7th Cir. 1997) ................................................................ 20, 22

*FDA v. Brown & Williamson Tobacco Corp.,*
  529 U.S. 120 (2000)............................................................................ 31

*First Nat'l Bank of Chicago v. Atlantic Tele–Network Co.,*
  946 F.2d 516 (7th Cir. 1991)................................................................ 45

*Franks v. Bowman Transportation Co., Inc.,*
  424 U.S. 747 (1976)............................................................................ 42

*Gonzales v. Sandoval County,*
  2 F. Supp. 2d 1442 (D.N.M. 1998) .................................................................. 33

*Green v. Joy Cone Co.,*
  278 F. Supp. 2d 525 (W.D. Pa. 2003) ...................................................... 37, 38, 40

*Greer Props., Inc. v. LaSalle Nat. Bank,*
  874 F.2d 457 (7th Cir. 1989) ........................................................................ 45

*Griffin v. Steeltek, Inc.,*
  261 F.3d 1026 (10th Cir. 2001) ................................................................ 39, 40

*Gross v. FBL Fin. Servs., Inc.,*
  557 U.S. 167 (2009)........................................................................................ 25

*Henderson v. Wilkie,*
  966 F.3d 530 (7th Cir. 2020) ........................................................................ 23

*Hutchison v. Amateur Elec. Supp., Inc.,*
  42 F.3d 1037 (7th Cir. 1994) ........................................................................ 42

*Kurtzhals v. City of Dunn,*
  969 F.3d 725 (7th Cir. 2020) ........................................................................ 30

*Miles v. Indiana,*
  387 F.3d 591 (7th Cir. 2004) .................................................................... 42, 43

*Ortega v. Chicago Bd. of Educ.,*
  280 F. Supp. 3d 1072 (N.D. Ill. 2017)........................................................ 21

*Smith v. Zachary,*
  255 F.3d 446 (7th Cir. 2001) ........................................................................ 31

*Star Athletica, L.L.C. v. Varsity Brands, Inc.,*
  137 S. Ct. 1002 (2017)................................................................................... 25

*Stragapede v. City of Evanston, Ill.,*
  865 F.3d 861 (7th Cir. 2017) .............................................................. 20, 21, 23

*Sutton v. United Air Lines, Inc.,*
  527 U.S. 471 (1999)........................................................................................ 41

*Taylor v. City of Shreveport,*
  798 F.3d 276 (5th Cir. 2015) ........................................................................ 33

*Transp. Workers Union of Am., Loc. 100, AFL-CIO v. NYC Transit Auth.,*
  342 F. Supp. 2d 160 (S.D.N.Y. 2004)......................................................... 33

*U.S. E.E.O.C. v. Rockwell Intern. Corp.*,
    23 F. Supp. 2d 770 (N.D. Ill. 1998)...................................................................... 42

*United States v. Lomax*,
    816 F.3d 468 (7th Cir. 2016) ................................................................................. 18

*United States v. Melvin*,
    948 F.3d 848 (7th Cir. 2020) ................................................................................. 25

*United States v. Rutherford*,
    442 U.S. 544 (1979)................................................................................................ 26

*United States v. S.W. Elec. Coop., Inc.*,
    869 F.2d 310 (7th Cir. 1989) ................................................................................. 45

*Vega v. Chicago Park Dist.*,
    351 F. Supp. 3d 1078 (N.D. Ill. 2018), *aff'd*, 954 F.3d 996 (7th Cir. 2020) ................. 21

*Wicker v. Hoppock*,
    6 Wall 94 (1867)..................................................................................................... 35

*Wisconsin Cent. Ltd. v. United States*,
    138 S. Ct. 2067 (2018)............................................................................................ 25

*Wright v. Illinois Dep't of Children & Family Servs.*,
    798 F.3d 513 (7th Cir. 2015) ......................................................................... 24, 32

## Statutes & Other Authorities:

7th Cir. Pattern Civil Jury Instruction 3.11 (2015) ............................................... 22

28 U.S.C. § 1331 ........................................................................................................... 1

28 U.S.C. § 1343 ........................................................................................................... 1

28 U.S.C. § 1367 ........................................................................................................... 2

42 U.S.C. § 1983 ........................................................................................................... 1

42 U.S.C. § 1988 ........................................................................................................... 1

42 U.S.C. § 2000e-3 ..................................................................................................... 1

42 U.S.C. § 2000e–5(g)............................................................................................... 43

42 U.S.C. § 2000e-5(g)(2)(A)............................................................................... *passim*

42 U.S.C. §§ 12101-12213 ........................................................................................... 1

42 U.S.C. § 12102(2) ............................................................................................ 40

42 U.S.C. § 12112 ..................................................................................... 17, 30, 31

42 U.S.C. § 12112(a) ................................................................................ 30, 31, 32

42 U.S.C. § 12112(a)(1) ................................................................................. 30, 31

42 U.S.C. § 12112(d) ........................................................................................ *passim*

42 U.S.C. § 12112(d)(1) ................................................................................... *passim*

42 U.S.C. § 12112(d)(2) ............................................................................................ 37

42 U.S.C. § 12112(d)(4) ................................................................................... *passim*

42 U.S.C. § 12112(d)(4)(A) .............................................................................. *passim*

42 U.S.C. § 12117(a) ......................................................................................... 32, 42

55 ILCS 5/3-7012 ...................................................................................................... 1

740 ILCS § 174/15 ..................................................................................................... 1

*Enforcement Guidelines on Disability–Related Inquiries and Medical Examinations of Employees under the Americans with Disabilities Act* (EEOC, July 27, 2000) ...................... 29

## JURISDICTIONAL STATEMENT

### A. Statement of Jurisdiction for the United States District court

On March 29, 2017, Plaintiff John Nawara ("Nawara") filed his complaint asserting claims against Defendants, the County of Cook, Thomas Dart, in his individual and official capacity as Sheriff of Cook County, Illinois (Dkt. 1). Plaintiff brought claims for alleged violations of the American with Disabilities Act, 42 U.S.C. §§ 12101-12213 ("ADA") and for violations of his civil rights under 42 U.S.C. §§ 1983 and 1988. *Id*. The district court had original subject matter jurisdiction over Plaintiff's federal claims under 28 U.S.C. §§ 1331 and 1343.

On July 16, 2018, Plaintiff filed his Second Amended Complaint – the operative complaint – asserting claims against Defendants, the County of Cook, Thomas Dart, in his individual and official capacity as Sheriff of Cook County, Illinois, Karen Jones-Hayes, Matthew Burke, Rebecca Reierson and Winifred Shelby, in their individual capacities (Dkt. 89). In his Second Amended Complaint, Plaintiff alleged violations of the ADA, violations of his civil rights under the First and Fourteenth Amendments to the United States Constitution pursuant to 42 U.S.C. § 1983 and 1988, violations of Title VII's anti-retaliation provision, 42 U.S.C. § 2000e-3, as amended, violations of the Illinois Whistleblower Act (740 ILCS § 174/15) and violations of the Merit Board Act (55 ILCS 5/3-7012). *Id*. The district court had original subject matter jurisdiction over Plaintiff's federal claims under 28 U.S.C. § 1331 and 28 U.S.C. § 1343. The district court had supplemental

1

jurisdiction over Plaintiff's Illinois Whistleblower Act and Merit Board Act claims pursuant to 28 U.S.C. § 1367.

### B. Statement of Jurisdiction for the United States Court of Appeals

On March 5, 2020, the district court entered judgment after the Jury returned a verdict in favor of the Plaintiff on his ADA claims and against Defendant Thomas Dart in his official capacity (Dkt. 301). On March 9, 2020, the district court vacated its minute entry dated March 5, 2020 (Dkt. 301) "with respect to Entering Judgment and Terminating Case," and reopened the case (Dkt. 307). On March 9, 2022, the district court dismissed Defendants Karen Jones-Hayes, Matthew Burke, Rebecca Reierson and Winifred Shelby with prejudice, *nunc pro tunc* March 5, 2020. (Dkt. 387-88).

On November 4, 2021, the district court denied the plaintiff's Rule 59 motion to reconsider denial of back pay and other equitable relief. (Dkt. 372-73). On February 15, 2022, the district court reconsidered its judgment and awarded restoration of seniority benefits. (A-12-15, Dkt. 382-83). On July 29, 2022, the district court denied the plaintiff restoration of lost seniority to the extent such restoration requires the defendant to issue back pay. (Dkt. 413 ). On July 29, 2022, the district court denied Defendant's Rule 59(e) motion stating: "This order and the court's previous orders are final and appealable." (Dkt. 413).

## STATEMENT OF ISSUES

1.      Whether the district court erred in holding that the Cook County Sheriff's Office's ("CCSO") violation of 42 U.S.C. § 12112(d)(4) does not support an award of backpay.

2.      Whether the district court erred in holding that 42 U.S.C. § 2000e-5(g)(2)(A) requires a plaintiff to prove that he or she is disabled or is perceived as disabled, as a prerequisite for an award of backpay for violations of 42 U.S.C. § 12112(d)(4).

3.      Whether the district court erred in denying Plaintiff backpay for the CCSO's violation of 42 U.S.C. § 12112(d)(4).

*4.*      Whether the district court erred in not ordering the restoration of Plaintiff's "pension-based seniority benefits."

## STATEMENT OF THE CASE

**Facts**

Plaintiff started working for the Cook County Sheriff's Office ("CCSO"), in 1998 as a correctional officer (3/29/21 Mem. Opinion and Order, p. 2 (Dkt. 360)).[1] On September 28, 2016, while assigned to work in the basement of Cermak Hospital, an on-site hospital for County Jail detainees, a fight broke out between two detainees (*Id)*. Nawara and

---

[1] Because this appeal involves a question of law, unless indicated otherwise, Nawara's citations are from the district court's March 29, 2021 Memorandum Opinion and Order (Dkt. 360) which contain citations to the trial transcripts and is referenced in the lower court's November 4, 2021 Memorandum Opinion and Order (A-1, Dkt. 373).

fellow officer, James Turrise, broke up the fight. *Id*. When asked about his emotional state as he broke up the fight, Nawara testified that he "wasn't happy, calm, upset...just doing [his] job." *(Id)*. The incident was captured on video and was shown multiple times to the jury (*see* video of altercation). The video shows Nawara calmly breaking up the fight (*Id*).

40 minutes later, Nawara was in the adjacent "control" room with Officer Barbie Gannon when Sergeant Thomas Conley and Superintendent Karen Jones-Hayes entered the room (Dkt. 360, p. 2). *Id.* Jones-Hayes testified that she had been making her rounds that day when, on her way into the control room, she observed that some detainees in the staging area were not properly handcuffed or shackled (*Id.* at 3). When Jones-Hayes directed Nawara to ensure the detainees were properly secured, he turned away without responding (*Id*). According to Jones-Hayes, she then "touched his arm" and asked him to "go and shackle and handcuff the detainees," and in response, Nawara "just exploded—erupted on [her]." (*Id*). Jones-Hayes testified that Nawara "got in [her] face," balled up his fist, and screamed, "'Don't touch me. Don't touch me, lady.'" (*Id*). Jones-Hayes then left to continue making her rounds by heading to the Cermak Emergency Room ("ER") (*Id*).

According to Jones-Hayes, a couple of minutes after she arrived in the ER, Nawara "burst in the door screaming" at her for making his job more difficult (*Id*). After their interaction in the control room, Nawara had struggled to shackle one of the detainees and blamed Jones-Hayes for his troubles (*Id*). Jones-Hayes followed Nawara to the staging

4

area and asked the unshackled detainee to "[h]ave a seat so the officer can shackle you," but the detainee refused, saying, "No, I'm not coming up there. That dude [Nawara] is not touching me." (*Id*). Eventually, Jones-Hayes was able to prevail upon the detainee to allow Nawara to shackle him (*Id*). This made Nawara angry; Jones-Hayes testified that, as she was leaving the staging area, Nawara said in her ear, "So what are you going to do? Walk around all F-ing day to help me do my job?" (*Id*). Jones-Hayes responded, "No, sir...I'm going to ask you to do [your] job," and left (*Id*).

Nawara confirmed portions of Jones-Hayes' account but denied others (*Id*). He testified that Jones-Hayes "seemed upset" and "was raising her voice" when she entered the room (*Id*). He claims she "poked" him twice, and, after the first poke, he "kind of freaked out a little bit." (*Id*., at 4). Nawara denied screaming at Jones-Hayes and denied using the F-word towards Jones-Hayes (*Id*). He admitted that he sarcastically remarked, "Maybe if you follow me around, I can do my job." (*Id*). Nawara acknowledged that it was improper for him to make that remark (*Id*). But he discounted that the comment was disruptive claiming that he had said it only loud enough for her to hear (*Id*). Gannon, Turrise, and Conley were all in the control room at the time and none recalled Nawara using any profanity (*Id*).

After the incident, Jones-Hayes wrote up a report, and sent it to her immediate supervisor, Jeff Johnsen, who in turn reported it to Matthew Burke ("Burke"), chief of staff for CCSO's Department of Corrections (*Id*). The following day, Nawara returned to

5

work at Cermak and Burke reassigned him to the External Operations unit (*Id*). External Operations provides security for everything outside of the jail (*Id*).

Burke was aware that Nawara was being reassigned to a position in which he would carry a firearm. (*Id*). When asked why he would assign him to a unit where he would carry a gun, Burke testified that he "did not feel as though he was a threat to himself or others." (*Id*). On September 29, Burke also referred Nawara to Human Resources ("HR"), requesting that Nawara be evaluated for fitness for duty (*Id*). Before referring Nawara, Burke did not contact any witnesses; nor did he review videotapes of the episode in the Cermak basement from September 28—a task that would have taken him no more than ten minutes (*Id*., at 4-5).

HR received the referral on September 29, 2016 (*Id*., at 5). Nawara's case was assigned to Leave and Absence Manager Rebecca Reierson ("Reierson") (*Id*). According to Reierson, the "first thing" she did was to reach out to Jones-Hayes via email to gather more information (*Id*). Jones-Hayes never responded (*Id*).

On November 8, Reierson contacted Burke with the following message: "There is not enough information in this referral to support sending Officer Nawara for a fitness for duty evaluation." (*Id*). Burke responded, suggesting that "HR should still investigate." (*Id*). Reierson replied, "Is this something more than insubordination that should be handled through the disciplinary process?" (*Id*).  On November 9, Burke sent an email to Jones-Hayes asking her to reach out to Reierson to discuss Nawara's case (*Id*).

On November 11, Reierson sent an email to her supervisor, Karyn Williams, expressing concern that the Department of Corrections "is trying to use the FFD process in lieu of supervising/disciplining employees." (*Id*). At that point, Reierson believed Nawara's case was an example of the department improperly using the FFD process for disciplinary purposes (*Id*).

On November 16, Reierson had a phone call with Jones-Hayes and Nurse Winifred Shelby ("Shelby"), an occupational health nurse (*Id*. at p. 6). Based on the call, Reierson and Shelby decided to ask Nawara to come to HR to check in (*Id*).

At around 8:00 a.m. on November 18, Nawara's shift commander directed him to go to HR (*Id*., at 7). Even though 51 days had passed since the events in the Cermak basement, Nawara was not told that this meeting concerned either those events or a fitness for duty ("FFD") evaluation (*Id*). When Nawara arrived at HR, he met with Reierson and Shelby in Shelby's office (*Id*). Nawara testified that Shelby may have begun by briefly saying, "We are here to see how you are doing," but quickly went "right into" saying "I want to know if you feel that you are threatening to your coworkers." (*Id*). Nawara asked, "Is this about something?" and "What's going on here?" (*Id*). Shelby assured him that "This isn't an investigation...We are just here to see if you feel that you are intimidating to yourself or your coworkers or detainees." (*Id*). Nawara again asked why he was there and again Shelby responded the same way (*Id*). According to Nawara, he and Shelby continued kind of dancing back and forth like this for a very

7

uncomfortable five to ten minutes (*Id*). Eventually, Shelby got "a little frustrated" and said, "You need to go so that we can talk." (*Id*).

Shelby and Reierson had a different account of the meeting (*Id*). Shelby testified that Nawara's demeanor in the meeting "went south really quickly." (*Id*). Shelby testified that Nawara "was so mad and so enraged, it was like...looking at a bulldog just ready to attack." (*Id*. at 7-8). Shelby testified that Nawara stormed out her office (*Id*. at 8). Shelby claimed she had never seen an employee respond this way to an FFD meeting before (*Id*).

Reierson testified that Nawara seemed hostile (*Id*). According to Reierson, he "seemed very tightly wound," "his fists were clenched," "his jaw was tight"; it was "like he was just trying to keep himself in the chair." (*Id*). She testified that she "had never been in a meeting like that...." (*Id*).

Nawara denied that he clenched his jaw or fists; that he was not restraining himself from doing anything; that he did not become "enraged" in the room; and that he did not "storm out." (*Id*). Nawara testified that he was "very uncomfortable...[and] just wanted to be out of the room." (*Id*).

After Nawara left the room, Shelby and Reierson "looked at each other and said, without hesitation, 'He needs to go for a fitness-for-duty [exam].' " (*Id*). Shelby testified that this decision was based on his behavior and lack of self-control and the rage (*Id*). Reierson testified that her decision to send Nawara for an FFD was based on the "combination" of the September 28 events in the Cermak basement and the November

18 events in HR. (*Id*). Nawara's episode in Shelby's office "seemed like...a continuing behavior" (*Id.*), in that his "struggling to...keep his anger under control...kind of rang a bell with what [Jones-Hayes] had expressed about him." (*Id.* at 405:7–12.). Shelby claimed that the decision to send Nawara for an FFD "was 95 percent [based on] the way he acted in the office." (*Id*).

Fifteen to twenty minutes after leaving Shelby's office, Nawara returned with a union representative (*Id*. at 9). Shelby and Reierson told Nawara they intended to refer him for a fitness-for-duty exam based on the combination of his behaviors on September 28 and what Shelby called "the aggressive display of behavior" he had exhibited in Shelby's office that day (*Id*). Nawara denied displaying any such aggressive behavior (*Id*). Even though a deputy sheriff had been posted outside of Shelby's door the entire time, Reierson and Shelby never called for assistance. (*Id*). Nor did they ask security to keep a look-out, or leave the office door open, when Nawara returned (*Id*).

Shelby explained that Nawara would not be permitted to return to work until he had completed the FFD exam and gained clearance from an examiner (*Id*). In the meantime, Nawara would not face suspension but would be placed on authorized leave (*Id*).

Next, Shelby pulled out two forms, and, told Nawara, "You need to sign these so we can go on with your fitness-for-duty process. You can't return back to work until you sign these two forms." (*Id*). The first form—the "CorVel form"—was a HIPAA

authorization form that asked Nawara to authorize disclosure of his health information to CorVel, the third-party administrator who ran CCSO's FFD exams (*Id*). The form sought approval for the disclosure of "all medical records and information...relate[d] to [his] fitness for duty exam," from "[a]ny health care provider or facility who treats [or has] treated me for my medical condition or medical illness." (*Id*).

The second form—the "CCSO form"—authorized the release of an employee's medical documentation directly to CCSO (*Id.* at 10). The form provided: "I request and authorize _____ to release [my] healthcare information...to:" and left a space to list the name and address of the employer (*Id*). The form states that "This request and authorization applies to: All healthcare information." (*Id*).

Nawara refused to sign the forms (*Id.* at 10-11). According to Shelby, Nawara kept repeating, "I'm not filling out no forms, and I'm not going for no fitness-for-duty." (*Id*. at 11). Nawara asked to take the forms with him and "review them," and Shelby allowed him to leave with the forms (*Id*).

In the following weeks, Nawara reached out to attorney Dana Kurtz (*Id*). On December 21, 2016, Kurtz emailed Shelby, stating that "requiring Nawara to complete the CorVel form was unlawful and requesting that he be immediately reinstated and allowed to return to work." (*Id*). Nawara, Kurtz, and Reierson continued corresponding through email, letter, and voicemail over the next few months but made no progress in resolving the dispute (*Id*). Reierson sent three letters to Nawara stating that he could not return to

work until he returned what she referred to as, "signed *documents*" or "HIPAA waiver *forms*" to Shelby's office (*Id*). Yet, Shelby and Reierson testified that just one form (the CorVel form) was required (*Id*).

On August 17, 2017, Nawara agreed to sign a modified version of the CorVel form and undergo an FFD examination (*Id*. at 12). Nawara did so because he "was desperate" and "hurting pretty bad for money" after being out of work (*Id*). Once Nawara signed the modified CorVel form, the FFD process began (*Id*).

On August 25, 2017, Shelby prepared a draft of a "Referral Form" for CorVel based only on the events of September 28 with Jones-Hayes making no mention of the November 18 interaction in her office (*Id*). Reierson edited the draft and the final referral to CorVel mentioning Nawara's alleged behavior on both dates (*Id*). The final version listed the "Reason referring" as "Employee's aggressive, physically intimidating and inappropriate behavior directed toward his superior officer in response to a routine directive. In addition, weeks later, employee presented as aggressive and hostile in the human resources department." (*Id*). The referral noted concerns about "anger management." (*Id*).

Michelle Sarocka, CorVel's case manager, scheduled a two-day FFD exam with Dr. Diana Goldstein on September 11 and 12. (*Id.*, at 13). Based on a review of his documents and a "psychological and neurocognitive examination," Dr. Goldstein issued a report on

11

September 16, 2017 finding Nawara "fit to return to duty, without restrictions." (*Id*).

Nawara's leave from CCSO lasted from November 18, 2016 to September 26, 2017 (*Id*).

On March 5, 2020, the jury found for Nawara on his claim that the CCSO violated the ADA (Verdict, Filed March 9, 2020, Dkt. 304). The jury awarded Nawara no damages for emotional distress. *Id*. The jury was instructed that lost earnings would be decided by the court. *Id*.

On March 9, 2020, Plaintiff filed a motion for an award of backpay and other relief (Dkt. 305). The motion sought backpay from April 25, 2017 to September 26, 2017 (Dkt. 305, p. 3). In addition to backpay, the motion sought an injunction requiring the CCSO to restore the time and benefits that Nawara used and lost from November 18, 2016 through April 24, 2017 (*Id*). The motion argued that Nawara was entitled to the restoration of all benefits lost including pension contributions and seniority that was not credited to him (*Id*., at p. 4).

In its March 29, 2021 opinion denying the CCSO's renewed motion for judgment as a matter of law (Dkt. 360), the lower court struck Nawara's motion for backpay "without prejudice" pending supplemental briefing and submission of a stipulation or additional information (Dkt. 360, p. 29).

On April 20, 2021, Nawara filed additional evidence on the issue of lost pay pursuant to the court's March 29, 2021 memorandum opinion and order (Dkt. 363) which included stipulations (Dkt. 364-1). The parties stipulated that Nawara received ***no pay***

12

from April 25, 2017 to September 26, 2017 (153 days (Stip. #1, Dkt. 364-1). The parties further stipulated that his gross pay from April 25, 2017 to September 26, 2017, would have totaled $30,773.93 (*Id*). The district court expressly found that "the evidence supports a finding that requiring Nawara to submit to an FFD before returning to work was the but-for cause of Nawara's unpaid leave." (3/29/21 Memorandum Opinion, p. 26, Dkt. 360).

From November 19, 2016 to April 24, 2017, Nawara was paid by the CCSO by Nawara using 3 days of personal time, 26 vacation days, 10 accrued holidays, 1 floating holiday, 10 days of compensatory time, and 42 days of medical/sick time (Stip. #2, Dkt. 364-1). The parties stipulated that, in the event the court determined that Nawara was entitled to backpay from November 19, 2016 to April 24, 2017, instead of monetary relief, the proper approach is for the CCSO to restore 26 vacation days, 10 accrued holidays, 10 comp time days and 42 medical/sick days for a total of 88 days (Stip. #3, Dkt. 364-1).

With respect to pension benefits/contributions, the parties stipulated that in the event Nawara was awarded backpay for the period from April 25, 2017 to September 26, 2017, the County will issue a check to Nawara, making all required employer deductions, including pension contributions (Stip. #4, Dkt. 364-1). The parties stipulated that they believe that the Cook County Pension Board would contribute the required employer pension contribution amount which would be deposited/credited to Nawara's pension account (Stip. #5, Dkt. 364-1). As to seniority, the parties stipulated that if the court

13

awarded backpay, 153 days would be restored to Nawara's County full time date (Stip. #6, Dkt. 364-1).

On November 4, 2021, the district court denied Nawara's motion for backpay and other equitable relief (A-1, Dkt. 373). The lower court held that CCSO's violation of § 12112(d)(4) did not constitute disability discrimination and "[t]hus, Nawara is not entitled to back pay." (*Id*., p. 1). The court found that the back pay statute, 42 U.S.C. § 2000e-5(g)(2)(A), contains an exception barring backpay where the employer carried out the employment action for "any reason other than discrimination on account of "disability." (*Id*., p. 3). The court stated: "[t]he jury in this case determined that CCSO had engaged in an unlawful employment action: violating the ADA—but not violating the ADA's general anti-discrimination provision, which prohibits employers from "discriminat[ing] against a qualified individual on the basis of disability." *Id*. The court sided with the CCSO that **medical** examinations constitute unlawful discrimination only when done in such a way as to "discriminate against a qualified individual on the basis of disability." (*Id*., at p. 4).

On November 30, 2021, Nawara filed a Rule 59 post trial motion contending *inter alia* that the lower court erred in denying backpay (Dkt. 377). Nawara also contended that the restoration of his lost seniority was required to make him whole (Doc, 377, p. 25).

On February 15, 2022, the district court granted Nawara's post trial motion and directed Defendant to restore his lost seniority (A-12, Dkt. 382). The court stated: "the fact

14

remains that Nawara was out of work for months because he refused to take a test that his employer unlawfully required." (*Id.*, at 3). The court refused to reconsider its denial of backpay stating that Nawara "does not raise any new argument that would change the court's decision." (*Id.*, fn. 1).[2] The court rejected Nawara's claim that he presented evidence of a "perceived disability." (*Id.*, at pp. 2-3).

On March 15, 2022, Defendant Cook County filed a Rule 59(e) motion to alter or amend judgment regarding seniority benefits (Dkt. 392). It argued that the court erred in ordering the restoration of seniority because the restoration of "pension benefits" would require the payment of backpay/lost wages (*Id*).

On July 29, 2022, the district court entered a final order denying Defendants' Rule 59(e) motions and corrected its order and judgment (A-12 15, Dkt. 382-383) under Rule 60(a) to order the Sheriff to restore Nawara's lost seniority (Dkt. 413). The court, however, clarified its decision about the restoration of pension benefits noting that "nothing in the court's seniority order ordered restoration of Nawara's pension benefits, the court simply ordered restoration of his 'lost seniority.'" (Dkt. 413, p. 7). The court commented that "to the extent 'lost seniority' can be interpreted as implicating the pension benefits now discussed by the parties, Nawara still cannot receive these benefits because they require the Sheriff to issue him 'retroactive pay.'" (*Id*).

---

[2] Nawara brought *Bates v. Dura Automotive Systems*, 767 F.3d 566 (6th Cir. 2014) to the district court's attention (Dkt. 377, pp. 7-8).

## SUMMARY OF ARGUMENT

The district court erred in ruling that the CCSO's violation of 42 USC § 12112(d)(4) does not constitute disability discrimination to justify backpay. The ADA, in fact, expressly states that the prohibition against discrimination shall include medical examinations and inquiries. Only by adding the term "disability" to an enforcement provision contained in Title VII was the lower court able to circumvent the protections afforded under ADA.

The lower court's decision, if permitted to stand, will have a far-reaching impact beyond John Nawara. Without the prospect of being held legally responsible for backpay, there will be no incentive for employers to refrain from subjecting employees to intrusive unwanted medical exams and inquiries in violation of 42 U.S.C. § 12112(d)(4)(A).

The decision affects the disabled. Many persons suffer from disabilities that have no impact on their ability to do their jobs, and who do not want their disabilities disclosed. Examples include HIV, heart disease, diabetes and learning disabilities. Disabled individuals will be forced to choose between giving in to an employer's unlawful demands, or having to disclose and prove their disability to qualify for backpay. This is a primary reason why all employees, regardless of whether they have a qualifying disability, are protected from unlawful medical exams/inquiries under § 12112(d)(4)(A).

The district court's decision conflicts with long-standing precedent holding that a plaintiff who wins a favorable verdict on an ADA claim is presumptively entitled to

16

backpay. It is also contrary to the make-whole principle behind the ADA. There is no legal basis for the district court's determination that an enforcement provision contained in the Civil Rights Act somehow carves out an exception for unlawful medical exams and inquiries.

The district court was wrong in requiring Nawara to prove an actual or perceived disability to qualify for backpay. Regardless, even under the lower court's construction of § 12112, Nawara is entitled to backpay. The CCSO required him to submit to an FFD based on purported anger management issues. In a prior ruling denying Defendants' motion to dismiss, the district court noted that "Nawara was individually suspected of having a disability that impacted his ability to perform his job (thus, the referral for the FFD examination) . . ." (Mem. Opinion, 3/28/19, p. 12 (Dkt. 187)). There was substantial evidence adduced at trial that reasonably supports the inference that the CCSO perceived Nawara as having a disability whether feigned or real.

The CCSO did not allow Nawara to work until he (1) signed medical release authorizations that were unlimited in time and scope; and (2) agreed to undergo a fitness for duty examination. The parties stipulated that Nawara received *no pay* from April 25, 2017 to September 26, 2017 and that his gross pay during this time period would have totaled $30,773.93. Thus, Nawara lost $30,773.93 in wages as a direct result of the CSSO's

violations of the ADA, not including the personal and compensatory time he lost from November 18, 2016 to April 26, 2017 on account of the CCSO's unlawful actions.

Nawara also appeals from a portion of the district court's July 29, 2022 order in-so-far as the order denied Nawara so-called "pension-based seniority benefits." The restoration of Nawara's pension benefits is required as part of the ADA's "make-whole" relief. Because of the CCSO's unlawful actions, Nawara was not credited with the seniority he would have otherwise received.

The district court also sidestepped its duty to render a decree that will so far as possible eliminate the discriminatory effects of the past and to prevent like discrimination from happening in the future.

## ARGUMENT

### I.    STANDARD OF REVIEW

The district court's decision finding that Nawara cannot receive backpay for the CCSO's violation of 42 U.S.C. § 12112(d)(4)(A) involves a question of law. Hence, the standard of review is *de novo. United States v. Lomax*, 816 F.3d 468, 476 (7th Cir. 2016). Likewise, its refusal to order the restoration of Nawara's pension benefits because it would require the payment of backpay involves a question of law which is reviewable *de novo. Id*.

18

**II.    THE DISTRICT COURT ERRED IN HOLDING THAT THE CCSO'S VIOLATION OF § 12112(d)(4)(A) WILL NOT SUPPORT AN AWARD OF BACKPAY**

**A.    The district court disregarded the plain and unambiguous text of the statute in holding that the CCSO's violation of § 12112(d)(4) did not constitute disability discrimination.**

The district court's ruling that the "CCSO's violation of § 12112(d)(4) does not constitute disability discrimination" conflicts with the express language of the statute (11/21/21 Opinion, p. 1, A-1, Dkt. 373). The first sentence of subsection (d)(1) provides:

d)    Medical examinations and inquiries

(1)    In general

*The prohibition against discrimination as referred to in subsection (a) shall include medical examinations and inquiries.*

(42 U.S.C. § 12112(d)(1)) (emphasis added).

Congress could not have been any clearer. The plain and unambiguous language of § 12112(d)(1) establishes that the prohibition against discrimination includes medical examinations and inquiries.

The lower court's decision contravenes not only the plain meaning of the statute, but also its purpose. § 12112(d)(4) protects the disabled by preventing employers from learning about a  disability unless such an examination or inquiry is shown to be job-related and consistent with business necessity (42 U.S.C. § 12112(d)(4)). The district court's decision, if permitted to stand, will require individuals with disabilities to disclose

19

and prove their disability to qualify for backpay. This requirement circumvents the purpose and text of the statute.

For example, an employee who is HIV positive will be forced to prove that he/she is HIV positive or perceived to be HIV positive in order to be eligible for backpay.[3] Accordingly, the district court's decision must be reversed based on the express language and purpose of § 12112(d).

**B.     As a successful ADA plaintiff, Nawara is presumptively entitled to backpay.**

"A plaintiff who wins a favorable verdict on an ADA claim is presumptively entitled to backpay." *Stragapede v. City of Evanston, III.*, 865 F.3d 861, 868 (7th Cir. 2017); *E.E.O.C. v. Ilona of Hungary, Inc.*, 108 F.3d 1569, 1580 (7th Cir. 1997) ("Complete relief for a victim of discrimination generally will include an award of back pay; indeed, such an award is presumptively proper once a violation has been shown."); *David v. Caterpillar, Inc.*, 324 F.3d 851, 865 (7th Cir. 2003). The district court had no basis to depart from the well-established presumption of backpay.

The jury reached a unanimous verdict finding that the CCSO violated the ADA by subjecting Nawara to an unlawful medical exam/inquiry and requiring him to sign unlawful medical releases. Therefore, under well-established precedent, Nawara is

---

[3] HIV infection is a recognized "disability" under the ADA. *Bragdon v. Abbott*, 524 U.S. 624 (1998).

presumptively entitled to backpay. The district court recognized, but failed to follow, this rule in its decision denying backpay by *quoting Stragapede* (11/4/21 Mem. Opinion, Dkt. 373, A-3). This basic rule has been applied over and over again in ADA cases. *See*, *Vega v. Chicago Park Dist.*, 351 F.Supp.3d 1078, 1087 (N.D. Ill. 2018), *aff'd*, 954 F.3d 996 (7th Cir. 2020) ("Once the jury has found that there has been employment discrimination, there is a presumption that the employee is entitled to an award of backpay."); *Ortega v. Chicago Bd. of Educ.*, 280 F.Supp.3d 1072, 1078 (N.D. Ill. 2017) (backpay is "presumptively proper once a violation has been shown."). The district court erred when it departed from this general rule and carved out an exception under 42 U.S.C. § 2000e-5(g)(2)(A).

## C.     Nawara proved his entitlement to backpay.

Once the plaintiff submits evidence supporting the calculation of backpay, the burden shifts to the defendant to show the employee failed to mitigate damages or that damages were less than asserted. *Stragapede*, 865 F.3d at 868. Nawara introduced uncontroverted evidence in the form of stipulations supporting his entitlement to, and calculation of backpay.

There is no dispute that Nawara was not allowed to work unless and until he surrendered to the CCSO's illegal demands of successfully completing a fitness for duty examination, being found fit for duty and signing a medical release form authorizing, without limitation, the release of his complete medical information to the Sheriff's Office.

21

Nawara was not permitted to work from November 19, 2016 through September 26, 2017 (311 days) because he would not agree to the CCSO's unlawful demands.

The parties stipulated that Nawara received **no pay** from April 25, 2017 to September 26, 2017 (153 days) (Stip. #1, Dkt. 364-1). The district court found that "the evidence supports a finding that requiring Nawara to submit to an FFD before returning to work was the but-for cause of Nawara's unpaid leave." (3/29/21 Memorandum Opinion, p. 26, (Dkt. 360)).

The lower court's denial of backpay violates the rule that prevailing plaintiffs shall be made whole for the lost back pay and back benefits they sustained as a result of the defendant's discrimination. *E.E.O.C. v. Ilona of Hungary, Inc.*, 108 F.3d 1569, 1580 (7th Cir. 1997) ("[c]omplete relief for a victim of discrimination generally will include an award of back pay; indeed, such an award is presumptively proper once a violation has been shown."). Back pay represents the wages the plaintiff would have earned had the employee not been fired or in this case not permitted to work. (*See*, 7th Cir. Pattern Civil Jury Instruction 3.11 (2017). Backpay is required to make Nawara as close to whole as possible but for the CCSO's discrimination.

The amount of backpay is also not disputed. The parties stipulated that Nawara's gross pay during this time period would have totaled $30,773.93. *Id.* [4] Nawara provided

---

[4] It was stipulated that from November 19, 2016 to April 26, 2017 (158 days), Nawara was paid by using personal days, vacation days, accrued holidays,  compensatory time, and sick days (Stip. #2, Dkt. 364-1).

uncontested evidence to support his calculation of backpay and burden should have then shifted to the Sheriff's Office to show that Nawara failed to mitigate damages or that damages were less than asserted. *Stragapede*, 865 F.3d at 868.

It is questionable whether mitigation was even pled as an affirmative defense (*see*, Defendant's Answer to Second Amended Complaint, (Dkt. 188)). Defendants pled qualified immunity as its first affirmative defense (*Id*., p. 36). Before its first affirmative defense, the Sheriff's Office in conclusory fashion stated: "Any damages that Plaintiff could recover must be eliminated or reduced by his failure to mitigate damages." (Dkt. 188, p. 36, ¶ 3).

Irrespective of whether it was sufficiently pled, the Sheriff's Office presented no evidence at trial that Nawara failed to mitigate damages. Further, a failure to mitigate argument was not raised before the district court in Defendant's post trial motion or in its pleadings on the issue of backpay. Thus, Defendant waived any argument related to the failure to mitigate. *Henderson v. Wilkie*, 966 F.3d 530, 539 (7th Cir. 2020) ("It is a well-established rule that arguments not raised to the district court are waived on appeal.").

Accordingly, Nawara proved his entitlement to backpay in the amount of $30,773.93 and to restoration of his personal and compensatory time used while on involuntary unpaid status.

23

**D.** **Nawara was not required to prove he was "disabled" to be eligible for backpay caused by the CCSO's violation of 42 U.S.C. § 12112(d)(4)(A).**

There is no support for the district court's decision that backpay is not an available remedy for unlawful medical exams/inquiries under 42 U.S.C. § 12112(d)(4)(A), absent proof of an underlying disability. The lower court created a backpay exception where none exists. The statute protects "[a]ll employees, regardless of whether they have a qualifying disability under the ADA." *Wright v. Illinois Dep't of Children & Family Servs.*, 798 F.3d 513, 522 (7th Cir. 2015). In addition, the ADA expressly provides that the prohibition against "discrimination" includes medical examinations and inquiries. (42 U.S.C. § 12112(d)).

**i.** **The lower court violated rules of statutory construction by adding the term "disability" to 42 U.S.C. § 2000e-5(g)(2)(A).**

The district court erred when it rewrote the statute and added the term "disability" to 42 U.S.C. § 2000e-5(g)(2)(A) ("Backpay Statute"). The Backpay Statute is an enforcement provision of the Civil Rights Act of 1964 (*Id*). The word "Disability" does not appear in the Backpay Statute.

Yet, the district court's November 4, 2021 opinion reads: "The back pay statute contains an exception . . ., barring that remedy where the employer carried out the employment action *for 'any reason other than discrimination on account of disability.'*" (Emphasis added) (11/4/21 Opinion, p. 3, A-1, Dk. 373). The statute reads:

> No order of the court shall require the admission or reinstatement of an individual as a member of a union, or the hiring, reinstatement, or

24

promotion of an individual as an employee, or the payment to him of any back pay, if such individual was refused admission, suspended, or expelled, or was refused employment or advancement or was suspended or discharged *for any reason other than discrimination on account of race, color, religion, sex, or national origin* or in violation of section 2000e-3(a) of this title.

(42 U.S.C.A. § 2000e-5(g)(2)(A) (emphasis added)).

The word "disability" is nowhere to be found in the statute. If Congress intended for "disability" to be part of the statute and a requirement for backpay under the ADA for unlawful medical exams/inquiries, it would have so stated. It is not a court's function to rewrite a constitutionally valid statutory text under the banner of speculation about what Congress might have intended. *Wisconsin Cent. Ltd. v. United States*, 138 S. Ct. 2067, 2073 (2018). Where the language of the statute is plain and unambiguous, courts must give effect to the clear meaning of the statute as written. *Star Athletica, L.L.C. v. Varsity Brands, Inc.*, 137 S. Ct. 1002, 1010 (2017). Courts presume that the language of a statute manifests Congressional intent. *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 175 (2009).

All questions of statutory interpretation begin with the text of the statute to ascertain its plain meaning. *United States v. Melvin*, 948 F.3d 848, 851 (7th Cir. 2020). If the statutory language's plain meaning is unambiguous, the court's inquiry ends. *Melvin*, 948 F.3d at 852; *see also*, *BedRoc Ltd., LLC v. United States*, 541 U.S. 176, 183 (2004) ("The preeminent canon of statutory interpretation requires us to 'presume that [the] legislature says in a statute what it means and means in a statute what it says there.' [Citation

25

omitted]. Thus, our inquiry begins with the statutory text, and ends there as well if the text is unambiguous").

The Backpay Statute is unambiguous and the lower court was required to apply the statute as written without resort to external sources or speculation. The plain meaning of the Backpay Statute does not require victims of unlawful medical exams or inquiries to disclose and prove an underlying disability to be eligible for backpay. The United States Supreme Court warns that "[under our constitutional framework, federal courts do not sit as councils of revision, empowered to rewrite legislation in accord with their own conceptions of prudent public policy." *United States v. Rutherford*, 442 U.S. 544, 555 (1979). It is only when a literal construction of a statute yields results so manifestly unreasonable that they could not fairly be attributed to congressional design will an exception to statutory language be judicially implied. *Rutherford*, 442 U.S. at 555. There is no basis for the district court to rewrite 42 U.S.C. § 2000e-5(g)(2)(A) and to disregard the basic tenet that employees who prove employment discrimination under the ADA are presumptively entitled to back pay.

### ii. Requiring employees to disclose and prove their disability conflicts with the purpose and language of 42 U.S.C. § 12112(d)(4)(A).

The district court's decision must be reversed because it conflicts with the language and purpose of § 12112(d)(4)(A). The statute prohibits employers from inquiring of an employee "as to whether such employee is an individual with a disability

26

or as to the nature or severity of the disability, unless such examination or inquiry is shown to be job-related and consistent with business necessity." (42 U.S.C. § 12112(d)(4)(A)).[5] Requiring employees to prove they are disabled circumvents the purpose of the statute. Such proof requires employees with disabilities to disclose their disability in order to be eligible for backpay—the very disclosure the statute is designed to prevent. *See also*, discussion *infra*.

Congress' decision not to amend the Backpay Statute by adding the term "disability" is consistent with the purpose and legislative history of the statute 42 U.S.C. § 12112(d)(4)(A). In contrast to other parts of the ADA, the statutory language contained in § 12112(d)(4)(A) "does not refer to qualified individuals with disabilities, but instead merely to 'employees.'" *Conroy v. New York State Dep't of Corr. Servs.*, 333 F.3d 88, 94–95 (2d Cir. 2003); 42 U.S.C. § 12112(d)(4)(A).

In *Conroy*, a correctional officer challenged the New York Department of Corrections' sick leave policy requiring employees to submit a general diagnoses as part of the medical certification procedure following certain absences. *Id*. at 91-92. The certification required a brief general diagnosis sufficient to allow the department to determine the employee's entitlement to leave or to evaluate the need for an examination prior to returning to duty. *Id*. at 92. The plaintiff, who suffered from asthma and

---

[5] The jury by finding in favor of Nawara rejected the CCSO's contention that the medical inquiry was job related and consistent with business necessity.

pulmonary obstructive disease, argued that the policy violated the ADA's prohibition of inquiries into disability and sought declaratory relief that the general diagnosis requirement violated the ADA and an injunction prohibiting the defendant from requiring her to submit a general diagnosis. *Id*.

The district court granted plaintiff's motion for summary judgment finding that even if the directive/policy required only a general rather than specific diagnoses, this "could cause an employee in some circumstances to divulge a disability or perceived disability" and that the certification was an "inquiry" under the ADA. *Id*. at 93. The department argued that the plaintiff lack standing because she suffered no injury from the policy because the department was already aware of her disabilities. *Id*. at 93. The Second Circuit disagreed for the reason that inquiries made under the policy could also reveal disabilities previously unknown to the department. *Id*. at 94.

> We agree with our sister circuits that a plaintiff need not prove that he or she has a disability unknown to his or her employer in order to challenge a medical inquiry or examination under 42 U.S.C. § 12112(d)(4)(a). In contrast to other parts of the ADA, the statutory language does not refer to qualified individuals with disabilities, but instead merely to "employees." 42 U.S.C. § 12112(d)(4)(A). Moreover, we agree with the Tenth Circuit that "[i]t makes little sense to require an employee to demonstrate that he has a disability to prevent his employer from inquiring as to whether or not he has a disability." *Roe,* 124 F.3d at 1229.

*Conroy*, 333 F.3d at 94–95.

28

The EEOC's Enforcement Guidance on Disability-Related Inquiries and Medical Examinations[6] is consistent with this reading and interpretation providing:

> This statutory language makes clear that the ADA's restrictions on inquiries and examinations apply to all employees, not just those with disabilities. Unlike other provisions of the ADA which are limited to qualified individuals with disabilities, the use of the term 'employee' in this provision reflects Congress's intent to cover a broader class of individuals and to prevent employers from asking questions and conducting medical examinations that serve no legitimate purpose [citation and footnote omitted]. Requiring an individual to show that s/he is a person with a disability in order to challenge a disability-related inquiry or medical examination would defeat this purpose [citation and footnote omitted]. Any employee, therefore, has a right to challenge a disability-related inquiry or medical examination that is not job related and consistent with business necessity.

(*Enforcement Guidance on Disability–Related Inquiries and Medical Examinations of Employees under the Americans with Disabilities Act, p. 6* (EEOC, July 27, 2000).

There is no reason to hold that employees who prove employment discrimination under other provisions of the ADA are presumptively entitled to backpay while employees who prove an unlawful medical examination/inquiry, but fail to prove a "disability" in connection therewith are barred from recovering backpay especially when the ADA provides that the prohibition against ***"discrimination" "shall include medical examinations and inquiries."*** (42 U.S.C. § 12112(d)) (Emphasis added).

---

[6] Even when they are not formally promulgated as regulations, such agency publications are a body of experience and informed judgment to which courts and litigants may properly resort for guidance. *Conroy*, 333 F.3d at 95.

29

To require employees to prove they are "disabled" to recover backpay for improper medical examinations and inquiries defeats the purpose of the statute. The purpose of § 12112(d)(4)(A) is to prevent employers from inquiring into whether an employee has a "disability" through a medical examination/inquiry unless the examination/inquiry is shown to be "job-related and consistent with business necessity." 42 U.S.C. § 12112(d)(4)(A); *Kurtzhals v. City of Dunn*, 969 F.3d 725, 730 (7th Cir. 2020).

There are many disabilities that do not affect an individual's work, which an employee may want to keep confidential. The court erred in requiring Nawara to prove that he had a disability to qualify for backpay. Proof and the necessary disclosure of a "disability" or "perceived disability" that would accompany such proof are not required under 42 U.S.C. § 12112(d)(4)(A).

### iii.    When § 12112 is considered as a whole, there is no question that backpay is an available remedy.

Backpay is an available remedy when the text of § 12112 is considered as a whole. § 12112(d)(1) provides:

> The prohibition against discrimination as referred to in subsection (a) shall include medical examinations and inquiries.

(42 U.S.C. § 12112(d)(1)).

> § 12112(a)(1) provides:

> No covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.

30

(42 U.S.C. § 12112(a)(1)).

A fundamental canon of statutory construction is that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme. *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 133 (2000); *Smith v. Zachary*, 255 F.3d 446, 448 (7th Cir. 2001). Here, when the words of § 12112 are read in their context with a view to their place in the overall statutory scheme, it is evident that backpay cannot be exempted based on a failure to demonstrate a "disability."

Under § 12112(d)(1), unlawful medical examinations and medical inquiries constitute "discrimination" and by § 12112(d)(1) referencing subsection (a), such violations are also discrimination on the "basis of disability" under the ADA. Thus, when the statutory scheme is read as a whole, it is apparent that backpay is an available remedy.

### iv. The lower court failed to consider on-point Sixth Circuit and other authority.

In its November 4, 2021 opinion denying backpay, the district court noted: "Nawara has not identified (nor has the court found) a single case in which a court awarded back pay to a plaintiff in response to a § 12112(d) violation, where the plaintiff did not assert that the defendant discriminated against her on the basis of an actual or perceived disability." (Dkt. 373, A-7).[7] Nawara, however, in his November 30, 2021 Rule

---

[7] Nawara submits that the dearth of case law on this issue shows that very few litigants advanced such a strained argument.

31

post-trial Nawara cited *Bates v. Dura Automotive Systems*, 767 F.3d 566 (6th Cir. 2014) (rehearing *en banc denied*). (Dkt. 377, pp. 7-8. (Dkt. 377).

In *Bates*, the Sixth Circuit rejected the employer's contention that an employee must have a disability to be awarded statutory damages. *Id.*, p. 582. In *Bates*, **non-disabled employees** sued their former employer challenging its drug testing policy under § 12112(d)(4). After the employees obtained a jury verdict, the employer moved for judgment as a matter of law or a new trial. The employer contested the availability of damages under the ADA's damage provision, 42 U.S.C. § 12117(a), "arguing that the non-disabled plaintiffs-appellees do not qualify under the statute as 'person[s] alleging discrimination on the basis of disability.'" 767 F.3d at 582. The Sixth Circuit disagreed:

> We reject this argument because § 12112(d)(1) clarifies that the ADA "prohibition against discrimination referred to in [§ 12112(a)] ... include[s] medical examinations and inquiries," and subsection (d)(4) extends this protection to all employees. 42 U.S.C. § 12112(d)(1), (d)(4). The ADA ban of "discriminat[ion] ... on the basis of disability" thus encompasses medical examinations and disability inquiries involving employees. Because the damages provision does not exclude (d)(4) claims, we affirm the district court's judgment that plaintiffs-appellees qualify for statutory damages should they prevail on their (d)(4) claim.

*Bates*, 767 F.3d at 582.

*Bates* is on-point and demonstrates that the district court erred in holding that proof of a disability or perceived disability is required for backpay under § 12112(d). This Court in *Wright v. Illinois Dep't of Child. & Fam. Servs.*, 798 F.3d 513, 522, n. 24 (7th Cir. 2015), cited *Bates* for the proposition that all employees, regardless of whether they have

32

a qualifying disability under the ADA, are protected under § 12112(d)(4)(A). *Bates* establishes Nawara's right to backpay.

*Gonzales v. Sandoval County*, 2 F.Supp.2d 1442 (D.N.M. 1998), also supports backpay. The *Gonzales* Court awarded backpay to a plaintiff who was successful under § 12112(d)(4). The court rejected the employer's argument that there was insufficient evidence that Plaintiff was a qualified individual with a disability because the plaintiff was not "disabled" within the meaning of the ADA. *Gonzales*, 2 F.Supp.2d at 1444. The court held that the plaintiff "need not establish disability to state a claim for a prohibited inquiry under the ADA." *Id*. The court held that a prohibited inquiry itself is a form of discrimination under the ADA. *Id*. at 1445-46.

The district court also erred by not giving appropriate weight to *Taylor v. City of Shreveport*, 798 F.3d 276 (5th Cir. 2015) and *Transp. Workers Union of Am., Loc. 100, AFL-CIO v. NYC Transit Auth.*, 342 S.Supp.2d 160 (S.D.N.Y. 2004). Both of these cases hold that a prohibited medical examination may constitute a form of employment discrimination under the ADA, and that the ADA's definition of discrimination includes medical examinations and inquiries (11/4/21 Opinion, A-8, Dkt. 373).

> **v. The district court was duty-bound to render a decree which will eliminate discriminatory effects of the past and bar like discrimination in the future.**

The district court "has not merely the power but the duty to render a decree which will so far as possible eliminate the discriminatory effects of the past as well as bar like

discrimination in the future." *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 418 (1975). The lower court's decision, if permitted to stand, sets a dangerous precedent. Not only will the decision fail to eliminate discriminatory effects of the past but the decision will encourage employers to subject employees to unlawful medical inquiries and examinations in the future. The decision renders § 12112(d)(4) toothless. As this case teaches, juries are hesitant to award significant amounts for mental anguish on account of being off work for refusing to be subjected to unjustified medical inquiries and exams. Without the threat of backpay, employers will have little incentive to refrain from violating § 12112(d)(4).

The decision will also have a chilling effect on attorneys willing to take on such cases. The Sheriff has already argued that Nawara is not a "prevailing party" for purposes of attorneys' fees based on the denial of backpay even though jury in this case found that the CCSO violated the ADA and the court found that Nawara is entitled to a restoration of seniority. Without the prospect of backpay, attorneys will be hesitant to take on these type of cases which will cause disabled and non-disabled individuals to be subjected to unlawful medical inquiries and exams.

The district court's decision is sure to encourage employers to violate the ADA by subjecting employees, including disabled employees, to unwanted and unlawful exams and medical inquiries. Without make-whole-relief, including backpay, employers will have little incentive to comply with § 12112(d)(4)(A). If the decision is permitted to stand,

34

employees, particularly those with a disability, face a dilemma when an employer demands that they submit to an unlawful medical exam/inquiry. If they refuse, they will not be able to work, will not be paid and will not have any prospects of being made whole. The decision seriously erodes the protections of the ADA.

### vi. The backpay decision violates the "Make Whole" rule of the ADA and Title VII.

The Court's backpay decision must be reversed based on the "make-whole" principle found in the ADA and Title VII. Not permitting backpay for losses resulting from the Sheriff's Office's violations of § 12112(d)(4)(A) denies Nawara a remedy, denies Nawara make-whole relief and fails to compensate Nawara for the damages he sustained from the Sheriff's Office's discrimination. Nawara missed 311 days of work. He used personal and compensatory time for 158 of those days and received no pay for 153 days on account of the Sheriff's Office violation of the ADA.

In *Albemarle Paper Company*, a Title VII case involving backpay, the United States Supreme Court reiterated the long-established rule:

> The general rule is, that when a wrong has been done, and the law gives a remedy, the compensation shall be equal to the injury. The latter is the standard by which the former is to be measured. The injured party is to be placed, as near as may be, in the situation he would have occupied if the wrong had not been committed.

*Albemarle Paper Co. v. Moody*, 422 U.S. 405, 418-19 (1975), *quoting Wicker v. Hoppock*, 6 Wall 94, 99 (1867).

35

The Supreme Court elaborated on the legislative history of Title VII's backpay provision:

> The 'make whole' purpose of Title VII is made evident by the legislative history. The backpay provision was expressly modeled on the backpay provision of the National Labor Relations Act. Under that Act, '(m)aking the workers whole for losses suffered on account of an unfair labor practice is part of the vindication of the public policy which the Board enforces. We may assume that Congress was aware that the Board, since its inception, has awarded backpay as a matter of course—not randomly or in the exercise of a standardless discretion, and not merely where employer violations are peculiarly deliberate, egregious, or inexcusable. Furthermore, in passing the Equal Employment Opportunity Act of 1972, Congress considered several bills to limit the judicial power to award backpay. These limiting efforts were rejected, and the backpay provision was re-enacted substantially in its original form. A Section-by-Section Analysis introduced by Senator Williams to accompany the Conference Committee Report on the 1972 Act strongly reaffirmed the 'make whole' purpose of Title VII.

*Albemarle Paper Co.*, 422 U.S. at 419–21 (1975) (citations omitted).

In this case, by returning a general verdict, the jury found that the Sheriff's Office violated the ADA by making a disability-related examination or inquiry when it required Nawara to undergo a fitness-for-duty exam and/or when it required Nawara to sign the medical release forms in question. *Nawara*, 2021 WL 1172742, at *8, jury instructions, Dkt. 302, p. 25. The district court denied the Sheriff's Office's motion for judgment as a matter of law finding that there was sufficient evidence to support Nawara's claims that the Sheriff's Office violated 42 U.S.C. § 12112(d)(4)(A) (Dkt. 360).

The district court's decision on backpay is at odds with the make-whole purpose of the ADA and Title VII. The decision leaves Nawara without a remedy for a wrong

36

committed by the CCSO. The district court's decision denies Nawara make whole relief and prevents Nawara from being placed in the same position he would have otherwise occupied absent the discrimination.

More importantly, and as previously stated, the district court's decision harms all disabled persons that now must be forced to reveal their disability to obtain backpay. The decision is in contravention of the ADA and must be reversed.

### vii.    The cases relied on by the district court do not support the denial of backpay.

According to the lower court, "*Green v. Joy Cone Co.*, 278 F.Supp.2d 525 (W.D. Pa. 2003), is the only case that deals with this question, and *Green* supports this court's decision." (11/4/21 Opinion, A-7 Dkt. 373). However, *Green* and the other cases relied upon by the lower court lend no support to its decision.

Unlike this case, *Green* is a pre-employment case governed by a different section of the ADA concerning pre-employment medical inquiries/exams (42 U.S.C. § 12112(d)(2)), as opposed to current employees under § 12112(d)(4). Green was never offered employment. Green alleged that Joy Cone's employment policy requiring job applicants to execute an authorization to release their medical records as part of the initial paperwork was a *per se* violation of the ADA's policy against pre-offer medical inquiries. *Green*, 278 F.Supp.2d at 530. Because the form indicated that medical records would not be obtained pre-offer and in fact medical records were not obtained pre-offer, the *Green*

37

Court ruled that the release form was not a pre-offer medical inquiry under the ADA and alternatively that Green lacked standing. *Id*.

The court found that Green failed to establish that Joy Cone made an unlawful pre-offer inquiry under the ADA. *Id*., p. 539-40. The court, therefore, held that there was no violation of the ADA. *Id*., p. 542. While the court dismissed the case on the merits, it ruled, in the alternative, that the plaintiff did not have standing. *Id*. The court found as a matter of law that Green "cannot show an injury-in-fact." *Id*., p. 543.

The court also found that Green could not establish causation. *Id*., p. 545. Joy Cone offered an affidavit attesting that Green was not chosen to advance in the hiring process beyond an initial screening of her employment application. *Id*., p. 544. The court found that even if Joy Cone's use of the form was a *per se* violation of the ADA, Green could not show that such a violation gave rise to any injury because Green was never chosen for hiring. *Id*., p. 545.

Moreover, *Green* is devoid of any analysis of § 2000e–5(g)(2)(A). It does not speak to whether "employees" who prove a violation of § 12112(d)(4) have to demonstrate a "disability" or a "perceived disability" for an award of backpay. The *Green* Court also did not address 42 U.S.C. § 12112(d)(1) which states that "[t]he prohibition against *discrimination* as referred to in subsection (a) shall include medical examinations and inquiries." Thus, *Green* lends no support for the Court's decision that the ADA precludes an award of backpay.

38

The other cases cited by the district court, *Armstrong v. Turner Indus.*, 141 F.3d 554 (5th Cir. 1998) and *Griffin v. Steeltek, Inc.*, 261 F.3d 1026 (10th Cir. 2001), also provide no support for the decision. Unlike this case, *Armstrong* and *Griffin* are pre-employment cases where the plaintiffs had no damages.

*Armstrong* involved a job applicant alleging that his employer subjected him to a pre-offer medical examination and inquiry in violation of the ADA. The Tenth Circuit upheld summary judgment holding that the applicant lacked standing. The court held: "Because Armstrong has not identified a cognizable and compensable injury arising out of the medical examination and inquiry, or any corresponding damages, he has completely failed to demonstrate any entitlement to a damages remedy." *Armstrong*, 141 F.3d at 562.

*Griffin* also fails to support the denial of backpay. There, a non-disabled job applicant alleged that his prospective employer violated the ADA by asking questions about his medical history or condition on a job application. Following a jury trial, the district court entered judgment for the employer. The employer presented testimony that the questions played no part in its hiring decision; that Griffin was never even interviewed because the face of his application showed that he did not have the requisite experience; and that employer rehired an experienced individual who had been recently laid off. *Griffin*, 261 F.3d at 1028. The jury found that Griffin suffered no injury. *Id*.

The cases relied on by the district court, *Green*, *Armstrong* and *Griffin*, all share common themes. They are pre-employment cases where the employee could not demonstrate any cognizable injury. This is a stark difference from this case where the jury found ADA violations by the CCSO, and where it cannot be disputed that Nawara suffered cognizable damages, including lost pay, proximately caused by the Sheriff's Office's violation of the ADA.

## D.     Evidence of a perceived disability was presented at trial.

Assuming *arguendo*, that the district court was correct that backpay is not available for violations of 42 U.S.C. § 12112(d)(4)(A) without evidence of an actual or perceived disability, evidence of a "perceived disability" was presented at trial. The district court recognized this by stating in its motion to dismiss ruling that "Nawara was individually suspected of having a disability that impacted his ability to perform his job." (Doc. 187, p. 12)

The CCSO's defense was that its actions were justified based on a "perceived disability", *i.e.*, anger management and lack of mental control. An individual who does not have an actual disability can still be "disabled" within the meaning of the ADA if he/she is "regarded as having such an impairment." 42 U.S.C. § 12102(2). An individual is "regarded as" having a disability if "(1) a covered entity mistakenly believes that a person has a physical impairment that substantially limits one or more major life activities, or (2) a covered entity mistakenly believes that an actual, nonlimiting

40

impairment substantially limits one or more major life activities." *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 489 (1999).

There was substantial evidence adduced at trial that reasonably supports the inference that the CCSO perceived Nawara as having a disability including: (1) Reierson's testimony that the FFD process was meant for individuals "having some kind of personal or medical issue that's preventing them from [properly] performing the[ir] job. . ." (*Id.*, p. 5); (2) the CCSO's referral to CorVel noted concerns about "anger management." (*Id.*, p. 12); (3) Reierson's testimony that at HR, Nawara's "fists were clenched," "his jaw was tight"; it was "like he was just trying to keep himself in the chair (*Id.*, p. 8); (4) Shelby's testimony that Nawara "was so mad and so enraged, it was like . . . looking at a bulldog just ready to attack." (*Id.*, pp. 7-8); and (5) Shelby's testimony that no one had ever showed this type of rage (*Id.*, p. 8).

Accordingly, even under the district court's interpretation of §§ 12112(d)(4) and 2000e–5(g)(2)(A), Nawara is entitled to backpay for the CCSO's unlawful medical inquiries.

## II.     THE DISTRICT COURT ERRED BY NOT ORDERING THE RESTORATION OF NAWARA'S "PENSION-BASED SENIORITY BENEFITS"

The district court's decision that Nawara is entitled to a restoration of seniority (A-12, Dkt. 382) but is not entitled to the restoration of "pension-based seniority benefits" (Dkt. 413) cannot be legally reconciled. In its February 15, 2022 order, the district court held:

41

Still, the fact remains that Nawara was out of work for months because he refused to take a test that his employer unlawfully required. On balance, the court finds that an award of retroactive seniority is appropriate.

(Dkt. 382, A-12).

There is no basis to differentiate between the restoration of seniority benefits generally and "pension-based seniority benefits." From April 26, 2017 to September 26, 2017, Nawara received no pay, and no seniority credits. The Sheriff's illegal conduct caused Nawara's eligibility for retirement to be delayed 153-days along with any other pension benefits.

It is firmly established that retroactive seniority is an available remedy under the ADA. *Franks v. Bowman Transportation Co., Inc.*, 424 U.S. 747 (1976); *U.S. E.E.O.C. v. Rockwell Intern. Corp.*, 23 F.Supp.2d 770 (N.D.Ill. 1998). The Supreme Court held that a court may award retroactive seniority to Title VII plaintiffs commenting "that one of the central purposes of Title VII is to make persons whole for injuries suffered on account of unlawful employment discrimination." *Franks*, 424 U.S. at 763. 42 U.S.C. § 12117(a) incorporates all remedies available under Title VII into the ADA.

This Court has repeatedly stated that "'A Title VII victim is presumptively entitled to full relief.'" *Miles v. Indiana*, 387 F.3d 591, 599 (7th Cir. 2004), *quoting Hutchison v. Amateur Elec. Supp., Inc.*, 42 F.3d 1037, 1044 (7th Cir. 1994).

Absent the restoration of "pension-based seniority benefits," Nawara will not be made whole for the harm caused by the CCSO's unlawful discrimination. Courts have

42

broad discretion under 42 U.S .C. § 2000e–5(g) to craft equitable relief necessary to make whole a plaintiff who has won a verdict in his/her favor. *Miles*, 387 F.3d at 599. This court will only approve the denial of equitable relief if that denial does not frustrate Title VII's (and by extension the ADA's) objective of "making the plaintiff whole." *Id*.

It is a fact that Nawara lost valuable "pension-based seniority benefits" because of the CCSO's unlawful conduct. Nawara will have to work an extra 153-days before he qualifies for a 30-year pension. The reasoning behind the lower court's denial of "pension-based seniority benefits" is not legally sustainable. The court denied such benefits, not because they were not warranted on the merits, but because retroactive "pension-based seniority benefits" would somehow circumvent the court's finding that backpay is precluded for the CCSO's violations of 42 U.S.C. § 12112(d)(4)(A). (7/29/22 Order, p. 4, (Dkt. 413).

Regardless of the merits of the backpay decision, retroactive "pension-based seniority benefits" would not "disturb the court's finding that Nawara is not entitled to backpay." (7/29/22 Order, p. 4, Dkt. 413). The CCSO, through its discriminatory conduct, caused Nawara to lose 153-days of "pension based seniority benefits." The CCSO must be required to do whatever is necessary to restore what it illegally took from Nawara as part of his make-whole relief.

The lower court recognized that Nawara is entitled to the restoration of seniority. The CCSO, who unlawfully caused Nawara to lose pension-based seniority benefits,

43

should not be allowed to escape the consequences of its unlawful actions and effectively deny Nawara make-whole relief because it might have to pay Nawara $30,773.93 that he would have otherwise received from April 26, 2017 to September 26, 2017 to restore his "pension-based seniority benefits."

The CCSO, in substance, asserted "impossibility" as a defense for its refusal to comply with the Court's Seniority Order by restoring Nawara's pension benefits (Defendant's Rule 59(e) Motion, (Dkt. 392, 394)). The lower court clarified that its Seniority Order "awards only lost seniority benefits that do not call for retroactive payment of lost wages." (7/29/22 Order, pp. 4-5, (Dkt. 413)).

The ruling makes no sense given "make-whole" relief under the ADA. If the County (or its Pension Board) requires retroactive pay for the restoration of Nawara's seniority, nothing prevents the Sheriff from making such payment for the five plus months at issue. The Court's ruling that Nawara is not entitled to an award of backpay under the ADA in no way means that it is illegal for the Sheriff to pay Nawara retroactive pay to have Nawara's pension-based seniority restored. All the Sheriff must do is pay Nawara for the 153 days in which he did not collect a paycheck for his pension to be credited and his seniority restored.

"Impossibility" is an exacting legal standard, which requires "extensive efforts at compliance" undertaken in good faith. *Domanus v. Lewicki*, 288 F.R.D. 416, 420 (N.D. Ill. 2013), *aff'd*, 742 F.3d 290 (7th Cir. 2014). In the context of an order requiring pension plan

44

contributions, Judge Zagel rejected the company's impossibility defense stating: "It may have been costly, but it was not impossible. Even if complying with an order is a hardship, it must be obeyed nonetheless." *Cent. States, Se. & Sw. Areas Pension Fund v. Express Freight Lines, Inc.*, 718 F.Supp. 716, 718 (N.D. Ill. 1989), *aff'd sub nom. Cent. States, Se. & Sw. Areas Pension v. Jansen*, 933 F.2d 1012 (7th Cir. 1991).

Simply because performance is economically burdensome does not generally excuse performance. *Greer Props., Inc. v. LaSalle Nat. Bank*, 874 F.2d 457, 460 (7th Cir. 1989); *United States v. S.W. Elec. Coop., Inc.*, 869 F.2d 310, 316 (7th Cir. 1989). Additionally, a party cannot, through its own conduct, create the event causing the impracticability of performance. *First Nat'l Bank of Chicago v. Atlantic Tele–Network Co.*, 946 F.2d 516, 521 (7th Cir.1991); *Chemetron Corp. v. McLouth Steel Corp.*, 381 F. Supp. 245, 257 (N.D. Ill. 1974), *aff'd*, 522 F.2d 469 (7th Cir. 1975).

In this case, any difficulty for the Sheriff to restore Nawara's seniority, including pension benefits, was directly caused by the Sheriff's unlawful conduct. The restoration of seniority is separate and apart from the issue of backpay and requiring the CCSO to restore Nawara's loss seniority (including pension benefits) is required to make Nawara as close to whole as possible on account of the CCSO's unlawful discrimination.

Accordingly, Nawara requests that this Court reverse that portion of the district court's orders of February 5, 2022 (A-12, Dkt. 382) and July 29, 2022 (Dkt. 413) to the extent

the orders do not require the restoration of Nawara's "pension-based seniority benefits," and order the CCSO to restore such benefits.

## CONCLUSION

The district court's decision, if affirmed, erodes the protections afforded by the ADA. Nawara is entitled to more than what the CCSO would like to characterize as a moral or symbolic victory. The court violated its mandate to craft equitable relief in a manner to make persons whole for injuries suffered on account of unlawful employment discrimination.

There is no support for the proposition that plaintiffs are required to prove they "disabled" to be eligible for backpay for unlawful medical inquiries and examinations. The lower court's opinion, if permitted to stand, creates a dangerous precedent that will negatively impact the disabled in direct contravention of the purpose of 42 U.S.C. § 12112(d)(4). The purpose of the statute is to prevent employers from learning about an employee's disability unless the inquiry is shown to be "job-related and consistent with business necessity."

For the foregoing reasons, Plaintiff-Appellant, John Nawara, respectfully requests that this Court reverse the district court's order of November 4, 2021, denying Nawara's motion for backpay and other equitable relief, the orders of February 15, 2022 and July 29, 2022, in so far as the orders denied Nawara what the district court characterized as "pension-based seniority"/"seniority benefits."

46

Respectfully Submitted,

**JOHN NAWARA**

/s/ *Richard F. Linden*
Richard F. Linden

Richard F. Linden
Law Offices of Richard Linden
17 North State Street, Suite 1550
Chicago, IL 60602
312/590-0211
lindenlaw@gmail.com

Peter V. Bustamante
Law Office of Peter V. Bustamante
17 North State Street, Suite 1550
Chicago, IL 60602
312/346-2072
pvbust@bustamantelaw.com

## CERTIFICATE OF COMPLIANCE

This document complies with the type-volume limitations of Fed. R. App. P. 32(a)(7)(B) and Circuit Rule 32, because this document contains 11,576 words, excluding the parts of the document exempted by Fed. R. App. P. 32(f).

This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in 12-point Palatino Linotype style font.

Dated:   November 21, 2022

/s/ Richard F. Linden
Richard F. Linden
One of the Attorneys for Appellant

48

## CIRCUIT RULE 30(d) STATEMENT

Pursuant to Circuit Rule 30(d), counsel certifies that all materials required by

Circuit Rule 30(a) and (b) are included in the Appendix.


/s/ *Richard F. Linden*
Richard F. Linden

## CERTIFICATE OF SERVICE

I hereby certify that on November 21, 2022, the Brief and Appendix of Appellant was filed with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the appellate CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

/s/ *Richard F. Linden*
Richard F. Linden

# APPENDIX

## TABLE OF CONTENTS TO APPENDIX

Memorandum Opinion and Order entered on November 4, 2021, Doc. 373.................. A-1

Order entered on February 15, 2022, Doc. 382................................................... A-12

Judgment entered on February 15, 2022, Doc. 383............................................ A-15

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| JOHN NAWARA, )<br><br>            Plaintiff, )<br><br>      v. )<br><br>COUNTY OF COOK, a unit of local )<br>Government, THOMAS DART, in his official )<br>capacity as Sheriff of Cook County, Illinois, )<br>KAREN JONES-HAYES, MATTHEW BURKE, )<br>REBECCA REIERSON, and WINIFRED )<br>SHELBY, in their individual capacities, )<br><br> )<br> )<br>            Defendants. ) | No. 17 C 02393<br><br>Judge Rebecca R. Pallmeyer |

**MEMORANDUM OPINION AND ORDER**

John Nawara was temporarily removed from his position as a correctional officer at the

Cook County Sheriff's Office ("CCSO"), pending a fitness-for-duty examination. Nawara believed

that CCSO's testing demand violated his rights under the Americans with Disabilities Act ("ADA")

and, while on leave, he filed this lawsuit. After several months of leave, however, Nawara

underwent the examination, was found fit for duty, and immediately returned to work. His case

proceeded to a jury trial, and on March 5, 2020, the jury entered a general verdict for Nawara,

finding that CCSO had violated the ADA [304]. This court then denied CCSO's renewed motion

for judgment as a matter of law [360], but withheld judgment on whether CCSO's violation of 42

U.S.C. § 12112(d)(4) constituted discrimination on the basis of disability and thus whether Nawara

was entitled to back pay. The parties have since submitted supplemental briefing [366, 371] on

the issue.

The court concludes that on the facts of this case, CCSO's violation of § 12112(d)(4) did

not constitute disability discrimination. Thus, Nawara is not entitled to back pay. The court also

1

A-1

denies Nawara's request for an injunction barring CCSO's continued use of the medical release forms in question.

## BACKGROUND

The court presented the facts of this case in its March 29, 2021 ruling. *See Nawara v. Cnty. of Cook*, No. 17 C 2393, 2021 WL 1172742 (N.D. Ill. Mar. 29, 2021). As relevant here, Nawara argued at trial that CCSO violated 42 U.S.C. § 12112(d)(4) by unlawfully forcing him to undergo a fitness-for-duty exam and making him sign medical disclosure forms. *Id.* at *7–8. Nawara does not claim to have an actual or perceived disability and did not seek punitive damages for his ADA claim. (*See* Second Am. Compl. [89] ¶¶ 108–117.) The jury entered a general verdict for Nawara, but awarded him no emotional distress damages [304]. This court rejected CCSO's renewed argument in its post-trial motion for judgment as a matter of law [312, 314] that no reasonable jury could have found that CCSO violated § 12112(d)(4). *See Nawara*, 2021 WL 1172742, at *12.

In that decision, the court also addressed Nawara's motion for back pay and equitable relief [305]. CCSO had argued that an enforcement provision of the Civil Rights Act of 1964, *see* 42 U.S.C. § 2000e-5(g)(2)(A), prohibits courts from awarding back pay in cases where a plaintiff experienced an adverse employment action "for any reason other than discrimination" on the basis of disability. (CCSO Backpay Resp. [347] at 2.) Because Nawara did not claim to have an actual or perceived disability, CCSO contended that the § 12112(d)(4) violation was not discrimination on the basis of disability and Nawara was not entitled to back pay. (*Id.*) The court concluded, however, that the parties' briefing on this issue was inadequate and declined to decide the issue of back pay. The court ordered the parties to provide supplemental briefing on "whether improper medical inquiries or examinations in violation of § 12112(d)(4) constitute discrimination under the ADA for purposes of a backpay award." *Nawara*, 2021 WL 1172742, at *14. The court now addresses that supplemental briefing.

2

A-2

**DISCUSSION**

**A.     Back Pay**

"A plaintiff who wins a favorable verdict on an ADA claim is presumptively entitled to backpay." *Stragapede v. City of Evanston, Ill.*, 865 F.3d 861, 868 (7th Cir. 2017), *as amended* (Aug. 8, 2017). The back pay statute contains an exception, however, barring that remedy where the employer carried out the employment action for "any reason other than discrimination on account of" disability.[1] 42 U.S.C. § 2000e-5(g)(2)(A). The jury in this case determined that CCSO had engaged in an unlawful employment action: violating the ADA—but not violating the ADA's general anti-discrimination provision, which prohibits employers from "discriminat[ing] against a qualified individual on the basis of disability," *see* 42 U.S.C. § 12112(a), and which was not before the jury.[2] (Jury Instructions [302] at 24.)

Rather, the jury found that CCSO had violated § 12112(d)(4), which prohibits employers from "requir[ing] a medical examination . . . [or] mak[ing] inquiries of an employee as to whether such employee is an individual with a disability or as to the nature or severity of the disability, unless such examination or inquiry is shown to be job-related and consistent with business necessity." 42 U.S.C. § 12112(d)(4)(A). An employer can "make inquiries into the ability of an employee to perform job-related functions," *see id.* § 12112(d)(4)(B), and other provisions in

---

[1]     Subsection 2000e-5(g)(2)(A) is an enforcement provision of the Civil Rights Act of 1964, and it only refers to discrimination on account of "race, color, religion, sex, or national origin." However, a provision of the ADA "mak[es] § 2000e-5(g) applicable to the ADA." *EEOC v. AutoZone, Inc.*, 707 F.3d 824, 840 (7th Cir. 2013) (citing 42 U.S.C. § 12117(a)). The statute's legislative history and caselaw suggest it applies to disability discrimination as well. *Nawara*, 2021 WL 1172742, at *14 n.9.

[2]     Under § 12112(a), a plaintiff must establish that (1) "he is disabled; (2) he is otherwise qualified to perform the essential functions of the job with or without reasonable accommodation; and (3) the adverse job action was caused by his disability." *Richardson v. Chi. Transit Auth.*, 926 F.3d 881, 886 (7th Cir. 2019) (citation omitted). The ADA defines "disability" as: (1) "a physical or mental impairment that substantially limits one or more major life activities," (2) "a record of such an impairment," or (3) "being regarded as having such an impairment." *Id.* (quoting 42 U.S.C. § 12102(1)).

3

A-3

subsection (d) prohibit certain inquiries and examinations in the preemployment and employment entrance contexts.  *Id.* §§ 12112(d)(2), (3).  To establish a violation of § 12112(d)(4)(A), Nawara did not need to offer evidence that he had an actual or perceived disability or that anybody at CCSO subjected him to the fitness-for-duty process because of that disability.  *See Kurtzhals v. Cnty. of Dunn*, 969 F.3d 725, 730 (7th Cir. 2020) ("[Subsection 12112(d)(4)(A)] applies to all employees, with or without an actual or perceived disability.").  And Nawara offered no such evidence of a disability.  Thus, this case now presents a single question: does a violation of § 12112(d)(4) constitute discrimination on the basis of a disability, even when the plaintiff has not alleged that he has an actual or perceived disability?

In addressing this question, Nawara begins with the language of the ADA as codified in Title 41.  Subsection 12112(a), entitled "General rule," states:

> No covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.

Subsection 12112(d) is entitled "Medical examinations and inquiries," and its subsection (d)(1) (entitled "In general") states, "The prohibition against discrimination as referred to in subsection (a) shall include medical examinations and inquiries."  Nawara interprets this language to mean that all unlawful medical examinations and inquiries constitute "discrimin[ation] against a qualified individual on the basis of disability" as outlawed in subsection (a), regardless whether the plaintiff has an actual or perceived disability.  Defendant, on the other hand, interprets it to mean that while medical examinations are included in the list of subsection (a) employment practices, they constitute unlawful discrimination only when done in such a way as to "discriminate against a qualified individual on the basis of disability."  42 U.S.C. § 12112(a).  The court agrees with Defendant.

Subsection (a) lists a number of employment actions that will be unlawful if carried out in such a way as to "discriminate against a qualified individual on the basis of disability."  42 U.S.C.

4

A-4

§ 12112(a).  By "includ[ing] medical examinations and inquiries" in this "prohibition against discrimination as referred to in subsection (a)," subsection (d)(1) intends to include medical examinations and inquiries on this list—or, alternatively, to include them under the umbrella of "other terms, conditions, and privileges of employment."  And because medical examinations and inquiries belong on the subsection (a) list, they are discriminatory only if they "discriminate against a qualified individual on the basis of disability."  42 U.S.C. § 12112(a).  So, while an employer may *unlawfully* require a medical examination or inquiry if those actions are not "job-related" or "consistent with business necessity" under § 12112(d)(4)(A), those unlawful actions are not inherently *discriminatory* under § 1211(d)(1).[3]

Subsection 12112(b) lends further support to this interpretation.  Subsection (b), entitled "Construction," states that subsection (a)'s term "discriminate against a qualified individual on the basis of disability" includes certain practices, including practices that have a disparate impact on persons with disabilities or practices that fail to make reasonable accommodations.  Nawara's interpretation of subsection (d)(1) suggests that, like the practices listed in subsection (b), unlawful medical examinations and inquiries are inherently a form of "discriminat[ion] against a qualified individual on the basis of disability."  But the statute states that each employment practice listed in subsection (b) is unlawful when done "because of" or "on the basis of" the individual's disability, *see* §§ 12112(b)(1), (3)–(4), or when it has an adverse effect on an employee "with" or "who has"

---

[3]      The court notes that in an unpublished opinion, the Seventh Circuit similarly construed subsection (d) in reference to subsection (a), explaining: "[I]t seems clear that in order to assert that one has been discriminated against because of an improper medical inquiry, that person must also have been otherwise qualified [under the ADA]."  *Hunter v. Habegger Corp.*, No. 97-2133, 1998 WL 104635, at *13 (7th Cir. Mar. 5, 1998).  The Seventh Circuit also determined that the defendant's wrongful inquiry into an applicant's workers' compensation history did not automatically entitle him to back pay and damages; rather, the court concluded that in order to receive any non-injunctive relief, plaintiff needed to show he would have been hired, but for the wrongful inquiry.  *Id.*  And the *Hunter* plaintiff could not establish this, because while the court assumed he was disabled, the record did not support that he was otherwise qualified.  *Id.* at *14.  The court notes, however, that to the extent *Hunter* holds that plaintiffs must be qualified individuals with a disability to bring § 12112(d) claims, it does not appear to survive more recent caselaw.  *See Kurtzhals*, 969 F.3d at 730.

5

a disability.  *See* §§ 12112(b)(2), (5)–(7).  In other words, this subsection provides no support for the contention that an unlawful action against a person who has not alleged a disability constitutes disability discrimination under the ADA.

The limited case authority also supports this court's conclusion.  The Seventh Circuit has not yet decided whether a violation of § 12112(d)—without plaintiff alleging a disability— constitutes discrimination.  As already noted, like other circuits, our Court of Appeals has held that a plaintiff may sue for violations of § 12112(d) without claiming or proving a disability.[4]  *See Wright v. Ill. Dep't of Child. & Fam. Servs.*, 798 F.3d 513, 522 & n.24 (7th Cir. 2015); *O'Neal v. City of New Albany*, 293 F.3d 998, 1007 (7th Cir. 2002).  But none of these courts have held that such violations constitute discrimination on the basis of disability, even where the plaintiff has not shown an actual or perceived disability.  And some cases suggest the opposite.  In *Harrison v. Benchmark Elecs. Huntsville, Inc.*, a job applicant without a qualifying disability sued the defendant under § 12112(d)(2) for asking follow-up questions in response to a positive drug test.  593 F.3d 1206, 1209–11 (11th Cir. 2010).  Interpreting subsection (d)(1), the Eleventh Circuit explained that it "incorporates § 12112(a)'s general rule that to maintain an *action for discrimination itself*, a plaintiff must be disabled under the ADA," but it does not bar non-disabled plaintiffs from bringing claims under § 12112(d)(2).  *Id.* at 1213 (emphasis added).  Similarly, in *Frendenburg v. Contra Costa Cnty. Dep't of Health Servs.*, the Ninth Circuit held that the plaintiff could sue her employer under § 12112(d)(4)(A) for forcing her to undergo fitness-for-duty examinations.  172 F.3d 1176, 1180–82 (9th Cir. 1999).  The Ninth Circuit rejected the district court's conclusion that subsection (d)(1)'s reference to subsection (a) meant that plaintiff had to

---

[4]     The Seventh Circuit has also held that an involuntary medical examination— allegedly a violation of § 12112(d)(4)—did not warrant punitive damages (which require a malicious or reckless "discriminatory practice"), because, given the novelty of plaintiff's legal theory, defendant did not have the requisite state of mind.  *See EEOC v. Flambeau, Inc.*, 846 F.3d 941, 947–48 (7th Cir. 2017).  That case concerned whether plaintiff had a personal stake in the litigation, and was decided on mootness grounds.  *See id.* at 946.  The court did not discuss or determine whether violating § 12112(d)(4) constitutes disability discrimination.

A-6

establish she was a "qualified individual with a disability" to bring suit, explaining that subsection (d)(1) does not apply to subsection (d)(2), (3), or (4); rather, subsection (d)(1) "directs courts to treat medical examinations as *possible evidence* of discriminatory conduct.  Within this context, *only qualified individuals with a disability* have a cause of action."  *Id.* at 1181–82 (emphasis added).

Despite several opportunities, Nawara has not identified (nor has the court found) a single case in which a court awarded back pay to a plaintiff in response to a § 12112(d) violation, where the plaintiff did not assert that the defendant discriminated against her on the basis of an actual or perceived disability.  To the court's knowledge, *Green v. Joy Cone Co.* is the only case that deals with this question, and *Green* supports this court's decision.  278 F. Supp. 2d 526 (W.D. Pa. 2003).  There, a job applicant brought a § 12112(d)(2) claim and sought back pay after her prospective employer required her to provide access to her medical records.  *Id.* at 529–30.  The plaintiff did not bring a claim for discrimination on behalf of a disability, nor did the court identify her as having a disability.  *Id.* at 538.  The Western District of Pennsylvania found that the plaintiff was not entitled to pecuniary relief, including back pay.  *Id.* at 544–45.  The court explained that § 2000e-5(g)(2)(A) prohibits courts from granting back pay to individuals who are "refused employment . . . for any reason other than discrimination" and found that "[s]ince Ms. Green [by raising only a § 12112(d)(2) claim] is not claiming to have been discriminated against on account of disability, the issuance of back pay is inappropriate under the law." [5]  *Id.* at 544.

Other courts have similarly declined to award damages for violations of § 12112(d) to plaintiffs who provide no evidence of discrimination on the basis of disability.  *See Armstrong v.*

---

[5]     Nawara argues that the court cannot rely on *Green* in this decision because the court previously considered *Green* in its March 28, 2019 Motion to Dismiss opinion [187] and found the case "unpersuasive," as it dealt with subsection (d)(2) instead of subsection (d)(4). *Nawara v. Cnty. of Cook*, No. 17 C 2393, 2019 WL 1399972, at *6 (N.D. Ill. Mar. 28, 2019).  There, however, the issue was whether the medical release forms constituted an "inquiry" and thus fell within the scope of subsection (d)(4).  The distinction between subsections (d)(2) and (d)(4) is immaterial to the issue of back pay, as Nawara's argument assumes that subsection (d)(1) applies to all medical inquiries under § 12112(d).

A-7

*Turner Indus.*, 141 F.3d 554, 560 (5th Cir. 1998) ("The magistrate judge determined that there was no evidence indicating the employment action in question was tainted by disability discrimination, and consequently it does not constitute a compensable injury."); *see also Griffin v. Steeltek, Inc.*, 261 F.3d 1026, 1028–29 (10th Cir. 2001) ("Compensatory damages are available under the ADA, however, only if the plaintiff establishes that the employer not only technically violated § 12112(d)(2)(A) by asking a prohibited question, but also that by doing so it actually engaged in unlawful intentional discrimination." (internal quotations omitted)).

The caselaw Nawara does cite in support of his argument is not persuasive. First, he points to the two cases that this court identified in its March 29, 2021 decision: *Taylor v. City of Shreveport*, 798 F.3d 276 (5th Cir. 2015), and *Transp. Workers Union of Am., Loc. 100, AFL-CIO v. NYC Transit Auth.*, 342 F. Supp. 2d 160 (S.D.N.Y. 2004). In *Taylor*, police officers filed a putative class action against the city alleging, among other things, that the department's sick leave policy violated § 12112(d)(4)(A). In discussing this claim, the Fifth Circuit stated, "[A] prohibited medical examination or inquiry may constitute a form of employment discrimination under the ADA." *Taylor*, 798 F.3d at 282. Similarly, in *Transport Workers*, labor unions representing municipal mass-transit workers sued New York City and alleged, among other things, that the transit authority's sick leave policy violated § 12112(d)(4)(A). *Transp. Workers*, 342 F. Supp. 2d at 162. There, the Southern District of New York explained, "Peculiar to [ADA] Article I's definition of discrimination is that it include[s] medical examinations and inquiries." *Id.* at 164 (citing 42 U.S.C. §§ 12112(a), (d)(4)(A).)

That "a prohibited medical examination or inquiry *may* constitute a form of employment discrimination under the ADA," *Taylor*, 798 F.3d at 282 (emphasis added), does not mean that it *is* employment discrimination. An employer-imposed medical examination—like an employer's act of hiring, advancing, discharging, or taking any other action listed in § 12112(a)—constitutes employment discrimination only where the adverse action was taken on the basis of the employee's disability. Thus, the court's holding today in no way prevents future litigants from

8

A-8

securing an award of back pay following an employer's violation of § 12112(d).  But such a successful plaintiff must show—as Nawara cannot—that they were discriminated against on the basis of their disability.

Neither is the court persuaded by the ruling of the District of New Mexico in *Gonzales v. Sandoval Cnty.*, 2 F. Supp. 2d 1442 (D.N.M. 1998).  There, the court awarded back pay to a plaintiff who had succeeded on his claim under § 12112(d)(4)(A).  *Id.* at 1446.  In a portion of the decision that did not concern back pay, the court stated that "the prohibited [medical] inquiry [was] itself a form of discrimination under the ADA."  *Id.* (citing 42 U.S.C. § 12112(d)(1)).  Notably, this conclusory statement was not necessary for the court to award the plaintiff back pay; the jury in that case had specifically found that the defendant discriminated against the plaintiff on the basis of the plaintiff's disability.  *Id.* at 1444.  Therefore, the precise issue in this case—whether to award a non-disabled plaintiff back pay following a successful claim under § 12112(d)(4)(A)—was not before the court.  Regardless, to the extent the court in *Gonzales* would have made that statement even had the jury not found disability discrimination (independent of the unlawful medical inquiry), this court respectfully disagrees.[6]

Finally, Nawara argues that without the threat of back pay as a remedy, § 12112(d) is rendered "toothless."  (Pl.'s Suppl. Brief [366] at 7.)  The court disagrees.  A successful § 12112(d) claim brought by an employee who is a qualified individual with a disability—the class of persons ordinarily protected by the ADA—would merit the court's consideration of an award of back pay. Even in the unusual case such as this one, where a non-disabled, non-discriminated against

---

[6]    Other cases that Nawara cites are of little relevance.  *See U.S. EEOC v. Gulf Logistics Operating, Inc.*, 299 F. Supp. 3d 832, 835 (E.D. La. 2018) (refusing to grant a motion to dismiss a § 12112(d)(4)(A) claim only because "Defendant fail[ed] to request dismissal of the two claims actually pleaded in the complaint"); *see also Buchanan v. City of San Antonio*, 85 F.3d 196, 198–200 (5th Cir. 1996) (reversing, for reasons unrelated to the district court's decision to award back pay, a district court's mid-trial decision to grant a plaintiff's motion for judgment as a matter of law as to a § 12112(d)(2) claim).

A-9

employee alleges a violation of § 12112(d), the employee may still seek monetary remedies such as punitive and emotional distress damages, so long as the facts support them.

The court concludes, from the language and structure of § 12112 and relevant caselaw, that an unlawful medical examination as occurred here does not constitute discrimination on the basis of disability where the plaintiff has neither claimed nor proven any perceived or actual disability.  As Nawara has not provided any other reason that CCSO's violation of § 12112(d)(4) should constitute discrimination on the basis of disability, the court concludes he is not entitled to back pay.  The court likewise denies Plaintiff's request that CCSO should restore the vacation days, holidays, and sick days that he used and the seniority that he would have accrued during the period in question.[7]

**B.    Enjoining CCSO from future use of forms**

Finally, in his motion for back pay and equitable relief, Nawara also asked the court to enjoin CCSO from continuing to engage in this type of behavior in the future.  In deciding whether to grant an injunction the court "must consider whether the employer's [unlawful] conduct could possibly persist in the future."  *EEOC v. AutoZone, Inc.*, 707 F.3d 824, 840 (7th Cir. 2013).  Nawara's request alleges other instances in which CCSO's Human Resources department unlawfully refers employees for fitness-for-duty exams, but he has provided little evidence that this problem persists.  And to the extent that Nawara's request refers to the medical release forms

---

[7]    Defendant makes additional arguments that do not change the outcome of this case.  Defendant cites *Armstrong*, where the Fifth Circuit mentioned in a footnote that a § 12112(d)(2) violation must be not only the but-for cause of a plaintiff's injury, but also the "legal or proximate cause."  141 F.3d at 560 n.16.  But the Fifth Circuit was concerned about an attenuated causal chain: in that case, the unlawful medical inquiry prevented plaintiff from gaining employment because it ultimately led to questioning that revealed that he had lied on his written application.  *Id.* at 560 n.16, 556–57.  The link between Nawara's lost wages and the fitness-for-duty exam is not so attenuated.  Defendant additionally revisits arguments that this court rejected in its earlier opinion, including an argument surrounding *EEOC v. Costco Wholesale Corp.*, 903 F.3d 618 (7th Cir. 2018), and an argument that Nawara's injury is not cognizable because it arose from a mere order to undergo an unlawful fitness-for-duty exam, rather than from the exam itself. The court need not address these arguments again.

10

A-10

in question, the record shows that neither form is still in use.  (Trial Tr. [321–332] at 294:2–302:13, 1536:3–10.)  The request for injunctive relief is thus denied.

## CONCLUSION

For the foregoing reasons, the court rejects in full Plaintiff's motion for back pay and other equitable relief [305].

ENTER:

Dated:  November 4, 2021

REBECCA R. PALLMEYER
United States District Judge

11

A-11

**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| JOHN NAWARA, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **No. 17 C 2393** |
| | ) | |
| v. | ) | |
| | ) | **Judge Rebecca R. Pallmeyer** |
| COUNTY OF COOK, a unit of local | ) | |
| government, and THOMAS DART, in his | ) | |
| official capacity as Sheriff of Cook County, | ) | |
| Illinois, | ) | |
| | ) | |
| **Defendant.** | ) | |

**ORDER**

Plaintiff John Nawara's post-trial motion [377] seeking restoration of his seniority is granted.  The Clerk is directed to enter judgment in favor of Plaintiff John Nawara and against the Defendant. Nawara is awarded no damages, but Defendant is directed to restore his lost seniority.

**STATEMENT**

On March 5, 2020, a jury found that Defendant Cook County violated 42 U.S.C. § 12112, a provision of the Americans with Disabilities Act prohibiting unlawful medical examinations and inquiries. (Jury Verdict [304] at 1.)  The jury awarded Plaintiff no damages for emotional distress. (*Id.*)  On November 4, 2021, after substantial post-trial motion practice and briefing, this court denied Plaintiff's request for back pay. *Nawara v. Cty. of Cook*, No. 17 cv 02393, 2021 WL 5140483, at *6 (N.D. Ill. Nov. 4, 2021).  In the same opinion, the court denied Plaintiff's request for restoration of "the vacation days, holidays, and sick days that he used and the seniority that he would have accrued during the period in question*." Id*.  Nawara asks the court to reconsider the matter as it relates to his seniority.[1]  (Pl.'s Mot. [377] at 25.)  He argues that the court's November 4 opinion, beyond the line noted above, only pertains to back pay, and thus his seniority restoration request was insufficiently addressed.  (Pl.'s Reply [380] at 2–3.)  For the reasons discussed herein, the court grants Nawara's request to restore his seniority.

The enforcement provision of the Civil Rights Act grants courts broad discretion to award equitable relief, stating:

If the court finds that the respondent has intentionally engaged in or is intentionally engaging in an *unlawful employment practice* charged in the complaint, the court

---

[1]      Much of Nawara's motion also attempts to relitigate the court's denial of back pay. In a recent Minute Entry, the court stated that the parties and the court had "exhaustively" addressed back pay and thus that issue would not be reconsidered at this time.  (Nov. 30, 2021 Minute Entry [376].)  In any event, Nawara does not raise any new arguments about back pay that would change this court's decision.

1

A-12

> may . . . order such affirmative action as may be appropriate, which may include, but is not limited to, reinstatement or hiring of employees . . . or any other equitable relief as the court deems appropriate.

42 U.S.C. § 2000e-5(g)(1) (emphasis added).  This discretion is limited by section (g)(2)(A), which provides:

> No order of the court shall require the admission or reinstatement of an individual as a member of a union, or the hiring, reinstatement, or promotion of an individual as an employee, or the payment to him of any back pay, if such individual was refused admission, suspended, or expelled, or was refused employment or advancement or was suspended or discharged *for any reason other than discrimination* on account of race, color, religion, sex, or national origin or in violation of section 2000e–3(a) of this title.

§ 2000e-5(g)(2)(A) (emphasis added).

As explained in its prior opinion, the court reads section (g)(2)(A) to preclude an award of back pay for Nawara, because it prohibits courts from awarding back pay in cases where a plaintiff experienced an adverse employment action "for any reason other than discrimination."  Where, as here, the plaintiff does not claim or prove discrimination, nor any perceived or actual disability, a mere violation of § 12112 does not constitute discrimination.  *Nawara*, 2021 WL 5140483, at *6.  Nawara now argues that section (g)(2)(A), while clearly covering back pay, "does not even mention 'seniority.'"[2]  (Pl.'s Reply at 5.)  Thus, he argues, the court's analysis regarding back pay does not apply to the seniority issue.

The court agrees.  Section (g)(1) broadly grants the court the power to award "affirmative action" and "any other equitable relief" it deems appropriate.  Section (g)(2)(A)—which limits this power—does not contain any such sweeping language.  Rather, section (g)(2)(A) lists various types of equitable relief that may not be awarded where the adverse employment action occurred "for any reason other than discrimination."  Seniority benefits are not enumerated in this list of restricted equitable relief.  Defendant suggests, however, that seniority falls under the umbrella of "hiring, reinstatement, or promotion," as described in section (g)(2)(A).  (Def.'s Resp. [379] at 2–3.)  But in *Franks v. Bowman Transp. Co.*, 424 U.S. 747, 770 (1976), the Supreme Court located the power to award retroactive seniority in section (g)(1)'s broad "affirmative action" language, rather than the more specific "reinstatement or hiring of employees" language.  This, as well as the plain language of the statute, suggests that the court may still award other "affirmative action"—such as seniority benefits—not expressly restricted by section (g)(2)(A).

The court also concludes that seniority benefits are "appropriate" here, though it is a close question under the unusual factual context of this case.  Weighing against an award of seniority is the fact that Nawara did not allege discrimination on the basis of disability.  Though he now belatedly argues that Defendant "regarded [him] as" having a "physical or mental impairment," *see* 42 U.S.C. § 12102(3)(A), he did not plead an actual or perceived impairment or disability, and

---

[2]     Nawara also points out that this section does not include the word "disability."  (Pl.'s Reply at 5.)  But the court already found that § 2000e-5(g)(2)(A), like corresponding § 2000e-5(g)(1), applies to employment discrimination on the basis of disability.  *See Nawara*, 2021 WL 5140483, at *2 n.1.

A-13

that argument is waived.[3]  In any event, this untimely argument is not persuasive.  Nawara cites various evidence presented at trial (*see* Pl.'s Mot. at 14–17; Pl.'s Reply at 8–10), but as the court reads the record, it suggests that Cook County required a fitness for duty examination due to a fear that Nawara's anger rendered him unfit for duty, not because they perceived any specific "mental impairment."  As this case demonstrates, not every failure to meet a job qualification is a disability, or even a perceived disability.

Still, the fact remains that Nawara was out of work for months because he refused to take a test that his employer unlawfully required.  On balance, the court finds that an award of retroactive seniority is appropriate.

Nawara's motion [377] is granted.


ENTER:

Dated:  February 15, 2022

_____
REBECCA R. PALLMEYER
United States District Judge

---

[3]     The court recognizes that in many circumstances, a plaintiff may be able to allege that his employer conducted the examination or inquiry under § 12112(d) because the employer regarded him as disabled, which would constitute disability discrimination.  *See* 42 U.S.C. § 12102(9)(C).  But as discussed, Nawara has waived this argument: he did not raise it in his motion for back pay [305], reply in support of back pay [351], response to Defendant's supplemental authority [356], or supplemental memoranda in support of back pay [364, 366].

The court also notes that a qualified employee suffering any adverse employment action subsequent to the examination or inquiry may be well on their way to proving disability discrimination, given the proximity between the employer's knowledge of the examination results and the adverse action.  *Cf. Malkowski v. Cleveland Corp.*, No. 18-cv-5829, 2021 WL 5769534, at *15 (N.D. Ill. Dec. 6, 2021) ("Suspicious timing isn't always enough, but suspicious-timing-plus can get a plaintiff over the summary judgment hurdle.").  That did not occur here, however.

3

A-14

ILND 450 (Rev 01/2015) Judgment in a Civil Action

# IN THE UNITED STATES DISTRICT COURT
## FOR THE
## NORTHERN DISTRICT OF ILLINOIS

John Nawara

Plaintiff

v.

County of Cook and Thomas Dart

Defendant(s).

Case No. 17 cv 2393
Judge Rebecca R. Pallmeyer

## JUDGMENT IN A CIVIL CASE

Judgment is hereby entered (check appropriate box):

☐    in favor of plaintiff(s)
and against defendant(s)
in the amount of $    ,

     which ☐ includes    pre–judgment interest.
           ☐ does not include pre–judgment interest.

Post-judgment interest accrues on that amount at the rate provided by law from the date of this judgment.

Plaintiff(s) shall recover costs from defendant(s).

---

☐    in favor of defendant(s)
and against plaintiff(s)

Defendant(s) shall recover costs from plaintiff(s).

---

X    other: Judgment is entered in favor of plaintiff, John Nawara and against defendant. Plaintiff is awarded no damages, but defendant is directed to restore his lost seniority.

This action was *(check one)*:

☐ tried by a jury with Judge Rebecca R. Pallmeyer presiding, and the jury has rendered a verdict.
☐ tried by Judge Rebecca R. Pallmeyer without a jury and the above decision was reached.
X decided by Judge Rebecca R. Pallmeyer

Date:   2/15/2022           Thomas G. Bruton, Clerk of Court

                               /s/ R. Franco, Deputy Clerk

A-15