Nos. 22-1393, 22-1430, 22-2395 & 22-2451

_____

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE SEVENTH CIRCUIT

_____

JOHN NAWARA,
*Plaintiff-Appellant,*

*v.*

COUNTY OF COOK and THOMAS J. DART, in his official capacity as
head of the Cook County Sheriff's Office,
*Defendants-Appellees.*

_____

On Appeal from the United States District Court
for the Northern District of Illinois
No. 17-cv-2393
Hon. Rebecca R. Pallmeyer

_____

## RESPONSE BRIEF OF DEFENDANTS-APPELLEES COOK COUNTY AND THOMAS J. DART AND OPENING BRIEF ON CROSS-APPEAL

Stephanie A. Scharf
Sarah R. Marmor
George D. Sax
SCHARF BANKS MARMOR LLC
333 West Wacker Drive, Suite 450
Chicago IL 60606
Phone: 312-726-6000
sscharf@scharfbanks.com
smarmor@scharfbanks.com
gsax@scharfbanks.com

*Special Assistant Cook County State's
Attorneys, on behalf of Defendants-Appellees
and Cross-Appellants*

Kimberly M. Foxx
COOK COUNTY STATE'S
ATTORNEY'S OFFICE
69 West Washington St., Suite 3200
Chicago, IL 60602
(312) 603-1880

*On behalf of Defendants-Appellees
and Cross-Appellants.*

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: <u>22-1393, 22-1430, 22-2395 & 22-2451</u>

Short Caption: <u>Nawara v. County of Cook, et al.</u>

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information.  The text of the statement must also be included in the front of the table of contents of the party's main brief.  **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

    ☐    **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate  disclosure information required by Fed. R. App. P. 26.1 by completing item #3):
<u>County of Cook and Thomas J. Dart</u>

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:
<u>Scharf Banks Marmor LLC</u>

(3)    If the party, amicus or intervenor is a corporation:

    i)    Identify all its parent corporations, if any; and

        None

    ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

        None

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

Attorney's Signature: <u>/s/ Stephanie A. Scharf</u>    Date: <u>2/10/2023</u>

Attorney's Printed Name: <u>Stephanie A. Scharf</u>

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).  Yes ☑ No ☐

Address: <u>333 W. Wacker Drive, Suite 450 Chicago, IL 60606</u>

Phone Number: <u>312-726-6000</u>    Fax Number: <u>312-726-6045</u>

E-Mail Address: <u>sscharf@scharfbanks.com</u>

rev. 12/19 AK

ii

Save As    Clear Form

## APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: <u>22-1393, 22-1430,</u> 22-2395 & 22-2451

Short Caption: <u>Nawara v. County of Cook, et al.</u>

   To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

   The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐    **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):
<u>County of Cook and Thomas J. Dart</u>

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:
<u>Scharf Banks Marmor LLC</u>

(3)    If the party, amicus or intervenor is a corporation:

    i)    Identify all its parent corporations, if any; and

        <u>None</u>

    ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

        <u>None</u>

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

Attorney's Signature: <u>/s/ Sarah R. Marmor</u>    Date: <u>2/10/2023</u>

Attorney's Printed Name: <u>Sarah R. Marmor</u>

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).   Yes ☑  No ☐

Address: <u>333 W. Wacker Drive, Suite 450 Chicago, IL 60606</u>

Phone Number: <u>312-726-6000</u>    Fax Number: <u>312-726-6045</u>

E-Mail Address: <u>smarmor@scharfbanks.com</u>

rev. 12/19 AK

iii

Save As     Clear Form

## APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: <u>22-1393, 22-1430,</u> 22-2395 & 22-2451

Short Caption: <u>John Nawara v. County of Cook, et al.</u>

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

<div style="border:1px solid black; display:inline-block; width:2em; height:2em;"></div>    **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):
<u>County of Cook and Thomas J. Dart</u>

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:
<u>Scharf Banks Marmor LLC</u>

(3)    If the party, amicus or intervenor is a corporation:

   i)    Identify all its parent corporations, if any; and

   <u>None</u>

   ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

   <u>None</u>

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

Attorney's Signature: <u>/s/ George D. Sax</u>     Date: <u>2/10/2023</u>

Attorney's Printed Name: <u>George Sax</u>

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).     Yes <u>✓</u>   No <u> </u>

Address: <u>Scharf Banks Marmor LLC 333 W. Wacker Drive, Suite 450 Chicago, IL 60606</u>

Phone Number: <u>312-726-6000</u>     Fax Number: <u>312-726-6045</u>

E-Mail Address: <u>gsax@scharfbanks.com</u>

rev. 12/19 AK

iv

## TABLE OF CONTENTS

Page

CIRCUIT RULE 26.1 DISCLOSURE STATEMENTS ................................................... ii

TABLE OF AUTHORITIES ........................................................................................ vi

JURISDICTIONAL STATEMENT ............................................................................... 1

ISSUES PRESENTED ................................................................................................ 3

STATEMENT OF CASE .............................................................................................. 3

    I.    Background ..................................................................................................... 3

    II.   District Court Proceedings ........................................................................... 7

SUMMARY OF THE ARGUMENT ............................................................................ 10

ARGUMENT .............................................................................................................. 10

    I.    The District Court Properly Denied Nawara's Motion for Back Pay ................... 10

        A.   The Statutory Language Of The ADA And Title VII Do Not Allow "Back Pay" For Unlawful Medical Inquiries Absent Proof of Discrimination .................. 11

        B.   Other Courts Of Appeal Do Not Allow Back Pay Without Proof Of Discrimination On The Basis Of Disability .................................................... 14

        C.   Nawara's Anger Issues Did Not Mean He Was Perceived As Disabled ......... 19

        D.   The District Court Did Not Abuse Its Discretion By Denying Nawara Back Pay ...................................................................................................... 21

    II.   Nawara's And The Federal Government's Arguments To The Contrary Are Without Merit ................................................................................................ 21

        A.   Nawara's And The Federal Government's Arguments About Text, Structure, And Legislative History Of The ADA Do Not Justify Reversal ...................... 21

        B.   Denying Back Pay Here Is Consistent With Case Law Of This And Other Cirucuits ...................................................................................................... 25

        C.   Plaintiff's "Chilling Effect" Argument Is Meritless and Premature .............. 28

        D.   The Back Pay Award Plaintiff Sought Did Not Account For Other Jobs ...... 28

        E.   Nawara Is Not Entitled To Retroactive "Pension Credits," Which Are A Form Of Back Pay ...................................................................................... 29

    III.  The District Court's Award Of Restored "Seniority" To A Department Of Corrections Position That Nawara No Longer Holds Should Be Vacated .......... 33

CONCLUSION ......................................................................................................... 34

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Albemarle Paper Co. v. Moody*,
422 U.S. 405 (1975) ............................................................... 21, 27, 28

*Armstrong v. Turner Indus., Inc.*,
141 F.3d 554 (5th Cir. 1998) ........................................................ 16, 18

*Bach v. Coughlin*,
508 F.2d 303 (7th Cir. 1974) ............................................................... 33

*Bates v. Dura Auto. Sys., Inc.*,
767 F.3d 566 (6th Cir. 2014) ............................................................... 25

*Bates v. United Parcel Serv., Inc.*,
465 F.3d 1069 (9th Cir. 2006), *rev'd en banc*, 511 F.3d 974 (9th Cir. 2007) ...................................................................................................... 27

*Bekker v. Humana Health Plan, Inc.*,
229 F.3d 662 (7th Cir. 2000) ............................................................... 13

*Cabral v. City of Evansville*,
759 F.3d 639 (7th Cir. 2014) ............................................................... 34

*Chambers v. Saul*,
861 F. App'x 95 (7th Cir. 2021) .......................................................... 20

*Conroy v. N.Y. Dep't of Corr. Servs.*,
333 F.3d 88 (2d Cir. 2003) .................................................................. 24

*Cossette v. Minn. Power & Light*,
188 F.3d 964 (8th Cir. 1999) ............................................................... 17

*David v. Caterpillar, Inc.*,
324 F.3d 851 (7th Cir. 2003) ............................................................... 22

*Domanus v. Lewicki*,
742 F.3d 290 (7th Cir. 2014) ............................................................... 32

*EEOC v. Ilona of Hungary, Inc.*,
108 F.3d 1569 (7th Cir. 1997) ............................................................. 22

*EEOC v. Rockwell Int'l Corp.*,
243 F.3d 1012 (7th Cir. 2001) ............................................................. 32

*FDA v. Brown & Williamson Tobacco Corp.*,
   529 U.S. 120 (2000) ................................................................ 24

*First Nat'l Bank of Chicago v. Atlantic Tele-Network Co.*,
   946 F.2d 516 (7th Cir. 1991) ................................................ 10, 21, 32

*Franks v. Bowman Trans. Co., Inc.*,
   424 U.S. 747 (1976) ................................................................ 31

*Fredenburg v. Contra Costa Cnty. De'pt of Health Servs.*,
   172 F.3d 1176 (9th Cir. 1999) ............................................ 16, 17

*Germano v. Int'l Profit Ass'n*,
   544 F.3d 798 (7th Cir. 2008) ................................................ 13

*Gonzales v. Sandoval Cnty.*,
   2 F. Supp. 2d 1442 (D.N.M. 1998) ...................................... 26

*Green v. Joy Cone Co.*,
   278 F. Supp. 2d 526 (W.D. Pa. 2003), *aff'd by* 107 F. App'x 278 (3d
   Cir. 2004) .............................................................................. 16

*Greer Props., Inc. v. LaSalle Nat'l Bank*,
   874 F.2d 457 (7th Cir. 1989) ................................................ 32

*Griffin v. Steeltek, Inc.*,
   261 F.3d 1026 (10th Cir. 2001) ............................................ 17, 18

*Harrison v. Benchmark Elecs. Hunstville, Inc.*,
   593 F.3d 1206 (11th Cir. 2010) ............................................ 23

*Kurtzhals v. Cnty. of Dunn*,
   969 F.3d 725 (7th Cir. 2020) ................................ 14, 15, 20, 24

*Loughrin v. United States*,
   573 U.S. 351 (2014) ................................................................ 13

*McDonnell Douglas Corp. v. Green*,
   411 U.S. 792 (1973) ................................................................ 13, 14

*Miles v. Indiana*,
   387 F.3d 591 (7th Cir. 2004) ................................................ 31

*Pals v. Schepel Buick & GMC Truck, Inc.*,
   220 F.3d 495 (7th Cir. 2000) ................................................ 31

*Pate v. Kijakazi,*
Case No. 20-3207, 2021 U.S. App. LEXIS 24484 (7th Cir. Aug. 17, 2021) ................................................................................................... 20

*Pavlicek v. Saul,*
994 F.3d 777 (7th Cir. 2021) ...................................................... 20

*Porter v. Natsios,*
414 F.3d 13 (D.C. Cir. 2005) ...................................................... 21

*Salazar v. Dist. of Columbia,*
633 F.3d 1110 (D.C. Cir. 2010)................................................... 32

*Smith v. Zachary,*
255 F.3d 446 (7th Cir. 2001) ...................................................... 24

*Stragapede v. City of Evanston,*
865 F.3d 861 (7th Cir. 2017) ...................................................... 22

*Strong v. Paulson,*
249 F. App'x 470 (7th Cir. 2007) ............................................... 18

*Taylor v. City of Shreveport,*
798 F.3d 276 (5th Cir. 2015) ............................................... 26, 27

*Tice v. Ctr. Area Transp. Auth.,*
247 F.3d 506 (3d Cir. 2001)................................................. 15, 16

*Todd v. Joint Apprenticeship Committee,*
332 F.2d 243 (7th Cir. 1964) ...................................................... 33

*Trans. Workers Union of Am. Local 100, AFL-CIO v. N.Y. City Transit Auth.,*
342 F. Supp. 2d 160 (S.D.N.Y. 2004) .................................. 26, 27

*United States v. S.W. Elec. Coop., Inc.,*
869 F.2d. 310 (7th Cir. 1989) ..................................................... 33

*Weber v. Kijakazi,*
No. 20-2990, 2021 U.S. App. LEXIS 24776 (7th Cir. Aug. 19, 2021) .................. 20

*Wright v. Ill. Dep't of Children & Family Servs.,*
798 F.3d 513 (7th Cir. 2015) ............................................... 25, 26

*Wright v. Ill. Dep't of Corrs.,*
204 F.3d 727 (7th Cir. 2000) ............................................... 15, 26

## Statutes

42 U.S.C. § 1981a(a)(2) ............................................................................ 11, 23

42 U.S.C. §  2000e-5(g) ................................................................................... 18

42 U.S.C. § 2000e-5(g)(1) ............................................................................... 29

42 U.S.C. § 2000e-5(g)(2)(a) ................................................................... *passim*

42 U.S.C § 12101(b)(1) .................................................................................. 14

42 U.S.C. § 12112(a) ............................................................... 11, 12, 22, 24

42 U.S.C. § 12112(b) ................................................................. 12, 22, 24

42 U.S.C. § 12112(d) ..................................................... 12, 17, 23, 24, 25

42 U.S.C. § 12112(d)(1) .......................................................................... 12, 17

42 U.S.C. § 12112(d)(2) ........................................................................... 16, 17

42 U.S.C. § 12112(d)(4) ........................................................................... 18, 21

42 U.S.C. § 12112(d)(4)(A) ..................................................................... *passim*

42 U.S.C. § 12117(a) ............................................................................... 11, 23

## Other Authorities

H.R. Rep. No. 485, Pt. II, 101st Cong., 2d Sess. 42-43 .............................................. 23

## JURISDICTIONAL STATEMENT

The jurisdictional statement of plaintiff-appellant and cross-appellee John Nawara is not complete and correct.

Nawara filed suit against Cook County and Cook County Sheriff Thomas J. Dart, in his official capacity, as well as individual Sheriff's Office employees Matthew Burke, Karen Jones-Hayes, Rebecca Reierson and Winifred Shelby ("Individual Defendants"), alleging a claim under the Americans With Disabilities Act ("ADA"), 42 U.S.C. § 12101, a First Amendment claim under 42 U.S.C. § 1983, a retaliation claim under Title VII of the Civil Rights Act, 42 U.S.C. § 2000e-3, as well as state-law claims under the Illinois Whistleblower Act, 740 ILCS § 174/1 *et seq.*, and the Illinois Counties Code, 55 ILCS 5/3-7001 *et seq.* (the Illinois "Merit Board Act."). R. 89. The district court had jurisdiction over Nawara's federal-law claims under 28 U.S.C. § 1331, and supplemental jurisdiction over his state-law claims under 28 U.S.C. § 1367.

On March 28, 2019, the district court dismissed Nawara's § 1983 and Title VII claims. R. 187. The case proceeded to trial on the surviving claims.

During trial, all of the Defendants moved under Fed. R. Civ. P. 50 for judgment as a matter of law. R. 331 at 1821:1-1847:23. On March 4, 2020, the district court granted Rule 50 relief in part, entering judgment as a matter of law for the Individual Defendants, R. 331 at 1865:8-10, 1944:11-16, and for all Defendants on claims arising under the two Illinois statutes, *id.* at 1828:2-23, 1865:8-10, 1932:2-5.[1]

---

[1] Nawara does not contest the judgment in favor of the Individual Defendants, who are not parties to this appeal. Nawara likewise does not contest the district court's

The district court entered and continued the Rule 50 motion as to Nawara's ADA claim, allowing it to go to the jury. R. 332 at 1981:9-1983:4. The jury found in favor of Nawara on his ADA claim, R. 304, and the district court entered judgment on that verdict on March 5, 2020. R. 301. The district court vacated that judgment on March 9, 2020. R. 307.

On April 2, 2020, the Sheriff's Office filed a renewed Fed. R. Civ. P. 50 motion for judgment as a matter of law on Nawara's ADA claim. R. 314. On March 29, 2021, the district court denied that motion but withheld judgment at that time. R. 360. On November 4, 2021, the district court issued an order finding Nawara was not entitled to back pay or lost wages under the ADA. R. 373.

On November 29 and 30, 2021, Nawara moved to reconsider the district court's denial of back pay pursuant to Fed. R. Civ. P. 59(e). R. 375, 377. The district court denied that motion in part and granted it in part on February 15, 2022.  R. 382.

On February 28, 2022, the Individual Defendants filed a Fed. R. Civ. P. 59(e) motion seeking to alter the judgment. R. 385.  The district court granted that motion on March 8, 2022, and entered judgment in favor of all Individual Defendants. R. 387.

On March 10, 2022, Nawara filed a notice of appeal. R. 389. On March 15, 2022, the County filed a motion to alter the judgment under Fed. R. Civ. P. 59(e). R. 392, 394. While that motion was pending, on March 17, 2022, both Defendants filed a notice of cross-appeal. R. 396. On July 29, 2022, the district court denied the County's Rule 59(e) motion, and entered an order pursuant to Fed. R. Civ. P. 60(a) correcting

---

orders disposing of Counts II-V of his complaint prior to trial, leaving only the federal ADA claim in Count I at issue on this appeal.

its judgment entered on February 15, 2022. R. 413. Under Fed. R. App. P. 4(a), the notice of appeal and notice of cross-appeal became effective upon the denial of the County's Rule 59(e) motion on July 29, 2022.

On August 3, 2022, Nawara filed a second notice of appeal. R. 414.  On August 12, 2022, the County and Sheriff's Office filed another notice of cross-appeal. R. 418. This court has jurisdiction over this appeal and cross-appeal from a final judgment pursuant to 28 U.S.C. § 1291.

## ISSUES PRESENTED

1.      Whether the district court correctly denied Nawara back pay, where he did not prove or argue that he suffered disability discrimination.

2.      Whether the issue of whether Nawara should have his seniority at the Department of Corrections restored is now moot, where he is no longer employed by the Department of Corrections and there is no record evidence that he seeks to return to the Department of Corrections.

## STATEMENT OF THE CASE

### I.    Background.

On September 20, 2016, a fight occurred between detainees at Cermak Hospital, which Nawara and other officers broke up. *See* Incident Video (filed in the record). On September 26, 2016, Superintendent Karen Jones-Hayes, who was also involved in the Cermak Hospital incident, filed an internal complaint about Nawara's behavior during the incident. R. 421-7. According to Jones-Hayes, she tapped Nawara on the shoulder to ask why detainees were not handcuffed, and Nawara became enraged and cursed at her. R. 421-7. The complaint made its way to Department of

3

Corrections Chief of Staff Matthew Burke, who reported the incident to the Human Resources department at the Sheriff's Office. *See* R. 421-10, 421-13 & 421-19.

The complaint about Nawara came to the attention of Rebecca Reierson, a Director of HR Employee Services. R. 421-10, 421-13 & 421-19. On November 8, 2016, Reierson and Winfried Shelby, RN, a nurse at the Sheriff's Office, interviewed Jones-Hayes by phone about her complaint. R. 322 at 384:2-22. Jones-Hayes reported that when she asked Nawara why detainees "weren't cuffed," he reacted in a "frightening" way, turning his back and refusing to answer questions. *Id.* at 384:17-409:1. Jones-Hayes also told Reierson that Nawara "jumped up in her face and yelled at the top of his lungs, 'Don't touch me; don't f---ing touch me,' over and over again." *Id.* at 391:18-25. The interview left Reierson concerned Nawara might be prone to violence against inmates or coworkers. *Id.* at 391:24-392:12.

On November 18, 2016, Reierson and Shelby met with Nawara to interview him about the Jones-Hayes incident. R. 322 at 395:24-396:8. Reierson described the meeting as "tense," "very uncomfortable," and "scary." *Id.* at 400:2-402:24. It is undisputed that at some point in the meeting, Nawara walked out and later returned; Reierson recalled that he "stormed out" after being asked about Jones-Hayes. *Id.* at 400:2-402:24. Shelby testified that she was "unnerved" by Nawara's visible anger before he walked out, and that he came across as "a bulldog just ready to attack," leaving her concerned about risks to inmate safety. R. 327 at 1380:1-1406:20. Nawara also testified the meeting was uncomfortable – specifically, that he, Reierson and Shelby were "kind of dancing" for "a very good uncomfortable five or ten minutes" before he left the room. R. 325 at 1016:15-1018:14.

4

During Nawara's absence from the November 18, 2016 meeting, Reierson and Shelby spoke and agreed when he came back, they would refer him for a fitness-for-duty examination. R. 322 at 402:25-404:20. Reierson and Shelby testified that Nawara's behavior that day made them concerned about how he might behave with detainees. R. 322 at 403:3-404:16; R. 330 at 1780:11-1782:22. Reierson testified that the purpose of a fitness-for-duty exam is not to discipline or punish employees, but to find out if there is "some kind of personal or medical issue that's preventing them from performing the job the way they should." R. 322 at 381:12-18.

Nawara returned to the meeting after a 15-to-20-minute absence, with a union representative in tow.  R. 322. at 405:24-406:2. At this point, Reierson and Shelby gave Nawara two blank HIPAA release forms (R. 421-20) and asked him to sign the forms. The HIPAA forms in question were created by an outside vendor, CorVel Corporation; according to the testimony of Nurse Michelle Sarocka of CorVel, the purpose of a fitness-for duty exam (for which CorVel's forms were required) is to see if an officer can perform job functions. R. 328. at 1489:4 - 1489:9

The November 18, 2016 meeting ended after Nawara and the representative objected to signing the HIPAA forms. R. 322 at 408:1-3 (Reierson); R. 327 at 1393:14:-1395:20 (Shelby). Nawara said, several times, "I'm not filling out no forms, and I'm not going for no fitness-for-duty." *Id.* Nawara objected even though he had no concerns or worries about the fitness-for-duty examination itself, and testified his concern was "that I was being ordered to sign two blank forms." R. 325 at 1032:23-1033:4. *See also* Nawara Decl., R. 222, at ¶ 17 ("I would have submitted to a fitness for duty exam … in November 2016 had the Sheriff's Office not asked me to sign the

5

release forms."). Nawara left the meeting with the two blank HIPAA release forms in hand and did not sign or return then. R. 421-19.

Nawara was placed on leave at the end of November 2016 after refusing to sign the release forms. R. 364-1. He was paid salary and benefits through April 26, 2017, when he was taken off the payroll. *Id.*

On August 17, 2017, Nawara signed a revised medical release form, and does not dispute that the form complied with HIPAA. R. 89 at ¶ 91.

On August 25, 2017, Shelby issued a formal fitness-for-duty referral memo to CorVel about Nawara (R. 421-28), citing the following reasons for the referral:

> • Looking to determine if employee is able to perform the essential functions of his job, which require he maintain composure and respond appropriately in a high stress environment, including exhibiting proper behavior toward detainees and his superior officer. Position requires this individual can diffuse disruptive behavior verbally and, if escalated, effectively and properly use limited force on problematic and combative inmates.

> • Employer has concerns about anger management, including his ability to manage a detainee population without losing his temper.

On September 11, 2017, Nawara took and passed a fitness-for-duty exam administered by Diana S. Goldstein, a neuropsychologist. R. 329 at 1595-1664 (Goldstein testimony). Goldstein testified that Nawara was fit for duty. *Id.* at 1603:5-8. Goldstein opined that Nawara had obsessive-compulsive and narcissistic personality traits, and that these conditions could lead to anger, but did not make him unfit to serve. *Id.* at 1616:18-1619:5. She also opined that Nawara did not have stress symptoms that rose to the level of psychiatric disorder. *Id.* at 1622:24-1624:6.

6

On September 26, 2017, Nawara returned to work at the Department of Corrections, and to the payroll. R. 362. During the unpaid period of his leave from the Department of Corrections, which lasted a total of 153 days (i.e., five months), Nawara worked in private security for UPS and Amazon, earning more than $17,000. R. 325 at 1118:8-1122:23.

In September 2019, Nawara left the Department of Corrections after applying for and getting promoted to the rank of police officer. R. 409-1. He now works at the Cook County Sheriff's Police. *Id.* Officers in the Sheriff's Police are members of the Fraternal Order of Police ("FOP"), while Department of Corrections officers are members of the International Brotherhood of Teamsters. *Id.* There is no indication in the record that Nawara wishes to return to the Department of Corrections.

## II.    District Court Proceedings.

Nawara's case was tried before a jury between February 24, 2020 and March 5, 2020, during which Nawara, Burke, Jones-Hayes, Reierson, Shelby, Goldstein and Sarocka all testified. R. 321, R. 322, R. 323, R. 324, R. 325, R. 326, R. 327, R. 328, R. 329, R. 330, R.331, R. 332. Nawara did not testify at trial that he was or that he believed himself to be a victim of disability-based discrimination. No trial testimony was presented that Jones-Hayes, Reierson or Shelby believed Nawara had a disability or acted with animus toward him based on such a belief. Nor was there any trial testimony that the Sheriff's Office or CorVel crafted the forms with discriminatory animus in mind.

In its March 5, 2020 charge to the jury, the District Court did not instruct the jury to find a discriminatory motive and did not use the words "discriminate" or

7

"discrimination" at all. R. 302 at 7154-7167. Nor did Nawara request such a jury instruction. Rather, the jury was instructed to determine if the fitness-for-duty referral and related HIPAA releases were justified by a "job-related" necessity. *Id.* The jury was also asked, if it found a violation of the ADA, to decide the question of whether Nawara had incurred any emotional distress damages. *Id.*

On March 5, 2020, the jury, after being so instructed, returned a verdict finding that the Sheriff's Office had violated the ADA, but awarded Nawara zero emotional distress damages. R. 304. The verdict form left to the district court whether to award Nawara "lost earnings." *Id.* Nawara subsequently moved the district court to require the Sheriff's Office to pay him lost earnings, which he characterized as "back pay," for the period of his unpaid leave. R. 305. Nawara sought this amount without any offset for the $17,000 he made from other jobs at UPS and Amazon.

On November 4, 2021, the district court issued a judgment denying back pay relief, reasoning that "on the facts of this case, CCSO's violation of § 12112(d)(4) did not constitute disability discrimination." R. 373 at 1. The district court noted that at no point during or prior to trial did Nawara "claim to have an actual or perceived disability." *Id.* at 2. The district court found the ADA's "general anti-discrimination provision," 42 U.S.C. § 12112(a), was "not before the jury" and that it could not award Nawara money under Title VII of the Civil Rights Act, the "back pay statute" incorporated in the ADA. 42 U.S.C. § 2000e-5(g)(2)(a). The district court held § 2000e-5(g) awards are inappropriate for ADA violations that occur "for 'any reason other than discrimination on account of' disability." R. 373 at 3, 5 n.3. The district court found that in this "unusual case" of a "non-disabled" employee to whom the jury

8

awarded no damages, back pay was not appropriate. *Id.* at 9. Rather, the appropriate measure of damages was for Nawara's "emotional distress" (*id.*), which the jury had found to be zero dollars.

On November 29, 2021, Nawara filed a Fed. R. Civ. P. 59(e) motion seeking reversal of the judgment. R. 377, 378. The district court denied Nawara's Rule 59(e) motion in part, leaving open the question of whether to equitably award Nawara restoration of "seniority." R. 376.

On February 15, 2022, the district court altered its judgment to order that Nawara is "awarded no damages, but Defendant is directed to restore his lost seniority." R. 382 at 1. The district court made clear that its altered judgment sounded under 42 U.S.C. § 2000e-5(g)(1), the section of the Civil Rights Act allowing discretionary, nonmonetary relief for ADA violations proven to a jury, and that the restoration of seniority was a form of equitable relief given Nawara within the Court's discretion. *Id.* At 2, 3 n.3. Defendants moved under Fed. R. Civ. P. 59(e) to vacate the "seniority" ruling. R. 392, 394, 409. In that motion, Defendants argued Nawara's lost "seniority" as a member of the Department of Corrections was not recoverable because he had in 2019 been promoted and transferred to the Sheriff's Police – meaning any restoration of seniority would have no actual impact on his employment. *Id.*

In its final judgment of July 29, 2022, the district court denied Defendants' motion, reiterating that Nawara is not entitled to back pay for the five months he was on unpaid leave, and "awarding restoration of seniority without an accompanying award of back pay." R. 413 at 4. The district court went on to explain that, contrary

9

to Nawara's belief, the order to restore seniority did *not* include an award of retroactive pension benefits, which are a form of lost earnings. *Id.* at 6-7. Rather, as the district court explained, its final order limited Nawara to "restoration of vacation days" and any other "lost seniority benefits that do not call for retroactive payment of lost wages." *Id.* At 5. This appeal followed.

## SUMMARY OF THE ARGUMENT

The district court correctly denied Nawara back pay. Nothing in the text of 42 U.S.C. § 12112(d)(4)(A) or 42 U.S.C. § 2000e-5(g) permits back pay for a technical ADA violation such as was found here; to the contrary, the statutory text indicates that Congress did not contemplate an award of back pay absent a showing of intentional discrimination. Indeed, other courts have correctly recognized that back pay should not be awarded without a finding of discrimination based on disability.

Regarding Nawara's seniority, the district court's order instructing the Sheriff's Office to restore seniority should be vacated as moot. In 2019, Plaintiff was promoted out of the Department of Corrections and into the Sheriff's Police. The Sheriff's Office cannot restore seniority to a job Nawara no longer has.

## ARGUMENT

### I.    The District Court Properly Denied Nawara's Motion For Back Pay.

The district court correctly denied Nawara back pay here, for three reasons. *First*, the statutory language of the ADA and Title VII do not allow a district court to award back pay where, as here, the plaintiff did not prove discrimination on the basis of Nawara's actual or perceived disability. *Second*, the district court's reading of the statute was supported by a host of other circuits' precedent. *Third*, Nawara did not

10

argue or prove discrimination below. *Fourth*, and in the alternative, the district court had equitable discretion to deny back pay and did not abuse that discretion.

### A. The Statutory Language Of The ADA And Title VII Do Not Allow "Back Pay" For Unlawful Medical Inquiries Absent Proof Of Discrimination.

Nawara's ADA claim below sounded under 42 U.S.C. § 12112(d)(4)(A), which states: "A covered entity shall not require a medical examination and shall not make inquiries of an employee as to whether such employee is an individual with a disability or as to the nature or severity of the disability, unless such examination or inquiry is shown to be job-related and consistent with business necessity."

The jury found the medical inquiry about Nawara was unlawful and that he had no emotional distress from the inquiry. Nawara's post-trial motion sought back pay under Title VII, 42 U.S.C. § 2000e-5(g)(2)(a), which states that "back pay" cannot be awarded for unlawful acts based on "any reason other than discrimination." The ADA incorporates this provision of Title VII, making back pay available only for acts of discrimination "on the basis of" disability. *See* 42 U.S.C. § 1981a(a)(2); § 12117(a).

The ADA does not define "basis of disability" to mean that an unlawful medical inquiry in violation of 42 U.S.C. § 12112(d)(4)(A), *without* evidence of animus toward a disability, constitutes "discrimination" in all cases. Instead, the ADA makes a catch-all statement, at 42 U.S.C. § 12112(a): "No covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions and privileges of employment."

11

Section 12112(a) sets a general rule that unlawful actions by an employer are acts of "discrimination" if they are directed "against a qualified individual on the basis of disability." Section 12112(a) does *not* say all unlawful medical inquiries, including inquiries of people not disabled or perceived as disabled, are acts of discrimination "on the basis of disability." That language should not be read into the statute.

The ADA goes on, in 42 U.S.C. § 12112(b), to list a set of seven specific actions that Congress deems to "discriminate against a qualified individual on the basis of a disability." The list of seven specific actions in §12112(b) includes things like employment tests, segregation of disabled workers, and other acts of discrimination – but does not include medical inquiries. *See id.* Instead of including medical inquiries in § 12112(b), Congress opted to address the topic in a different statutory subsection, 42 U.S.C. § 12112(d). The omission of medical examinations from § 12112(b) takes subsection (d) out of the ambit of subsection (b)'s definition of seven things that constitute per se discrimination "on the basis of a disability."

Underscoring the significance of the omission, 42 U.S.C. § 12112(d)(1) states that "[t]he prohibition against discrimination *as referred to in subsection (a)* shall include medical examinations and inquiries" (emphasis added). As noted above, subsection (a) refers generally to discrimination "on the basis of disability," but does not say when a medical examination or inquiry rises to the level of discrimination "on the basis of disability." In order to make sense, the statute should be read to mean that a medical inquiry is "discrimination" only if it is based on animus "on the basis of" someone's perceived disability. Thus, an employer's medical inquiry without

12

discriminatory intent in violation of § 12112(d)(4)(A) is a technical violation of the ADA for which back pay is not available.

Moreover, it is well-settled that "when 'Congress includes particular language in one section of a statute but omits it in another'" then "a difference in meaning" is presumed. *Loughrin v. United States,* 573 U.S. 351, 358 (2014). Here, if Congress intended to treat all employers' unlawful medical inquires under 42 U.S.C. § 12112(d)(4)(A) as per se discrimination, subsection (d)(1) would be superfluous. Otherwise, Congress would not have separated subsections (a) and (d) from subsection (b)'s clearly defined list of seven acts that constitute discrimination on the basis of disability. A difference in meaning is presumed, and subsections (a) and (d) should be read together to limit "discrimination" to cases of medical exams and inquiries based on animus toward someone's disability or perceived disability.

Another factor weighing in favor of finding technical violations of 42 U.S.C § 12112(d)(4)(A) are not per se "discrimination" is that, under the statute, a plaintiff need only prove the employer made an inquiry or sent the employee for an exam that might reveal a disability or the extent of a disability; the burden then shifts to the employer to prove the inquiry was job-related or necessary. The statute offers no provision for showing non-pretextual reasons for the medical inquiry. This stands in stark contrast to all other ADA discrimination cases, where the *plaintiff* often bears the burden under *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973) to show a non-pretextual reason for the challenged employer's action. *See, e.g. Germano v. Int'l Profit Ass'n,* 544 F.3d 798, 806 (7th Cir. 2008) (applying *McDonnell Douglas* burden shifting framework to ADA); *Bekker v. Humana Health Plan, Inc.,* 229 F.3d 662, 670

13

(7th Cir. 2000) (same). Reading the statute to require proof of discrimination as a condition for back pay is consistent with *McDonnell Douglas*.

Finally, reading medical examinations to be per se acts of discrimination would be contrary to the stated purpose of the ADA, which was "to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." 42 U.S.C § 12101(b)(1) (emphasis added). Making a special rule for people *without* disabilities that permits them to obtain back pay without intentional discrimination is not consistent with that purpose.

### B. Other Courts Of Appeal Do Not Allow Back Pay Without Proof Of Discrimination On The Basis Of Disability.

A host of other well-reasoned Circuit Courts of Appeal decisions support the district court's judgment below: that, without more, a technical violation of § 12112(d)(4)(A) cannot support a claim of discrimination (at least for back pay claims).

As a threshold matter, the district court correctly noted that *Kurtzhals v. Cnty. of Dunn,* 969 F.3d 725 (7th Cir. 2020), which also involved a police officer plaintiff's claim that a fitness-for-duty referral violated § 12112(d)(4)(A), is not directly on point. *Kurtzhals* noted in general terms that § 12112(d)(4)(A) "applies to all employees, with or without an actual or perceived disability." *Id.* at 730. *Kurtzhals* did not hold that a violation of § 12112(d)(4)(A) is in and of itself an act of disability discrimination within the meaning either of the ADA or the remedies provision of § 2000e-5(g)(2)(A). In addition, the *Kurtzhals* plaintiff failed, among other things, to prove that the request to take a fitness-for-duty exam was discrimination "on the basis of" a perceived disability, because his angry outbursts and threats to another police officer

14

did not mean his employer believed him to be disabled. 969 F.3d at 727, 730. To the extent it applies here, *Kurtzhals* supports affirming the district court's decision.

In the absence of other precedent in this jurisdiction, this court may look to opinions of other courts as instructive. In an on-point case, *Tice v. Ctr. Area Transp. Auth.*, 247 F.3d 506, 514-16 (3d Cir. 2001), the Third Circuit held a requirement that the plaintiff bus driver take a medical examination, standing alone, was not sufficient to establish that the defendant "regarded" the plaintiff as disabled. The *Tice* plaintiff, much like Nawara, was required to take a medical exam to determine if he was fit to return to work after a back injury, and the *Tice* plaintiff, much like Nawara, refused to take the exam. *Id.* at 509-510. Finally, just like Nawara, the *Tice* plaintiff was not disabled or perceived as disabled, because his condition did not impair major life activities and the employer did not believe that to be the case. *Id.* at 513-14 (applying *Wright v. Ill. Dep't of Corrs.*, 204 F.3d 727, 731-33 (7th Cir. 2000)) *Tice* found that the plaintiff was not perceived as disabled and could not recover any damages. 247 F.3d at 514-15. The court held that 42 U.S.C. § 12112(d)(4)(A) does not allow damages absent proof of intentional discrimination. *Id.*

Importantly, the Third Circuit held that "even an improper [independent medical exam] request, without more, might not be sufficient to demonstrate that an employee was 'regarded as' disabled." *Tice*, 247 F.3d at 515. The Third Circuit read the ADA to require "that the request and surrounding circumstances must establish that the employee was 'regarded as' disabled within the meaning of the ADA." *Id.* at

15

516. *Tice* strongly supports the district court ruling below, which found that Nawara offered no proof that he was regarded as disabled within the meaning of the ADA. [2]

Fifth Circuit case law is also instructive here. In *Armstrong v. Turner Indus., Inc.*, 141 F.3d 554, 556-557 (5th Cir. 1998), the Fifth Circuit affirmed judgment in favor of an employer who asked plaintiff a "broad," "general" series of medical questions when he applied to a pipefitting job, then required the plaintiff to take a medical exam that revealed plaintiff's prior exposure to asbestos. *Armstrong* rejected plaintiff's argument that if the employer technically violated 42 U.S.C. § 12112(d)(2) (which covers medical inquiries to prospective hires) he should get "make whole" monetary relief. *Id.* at 560-61. *Armstrong* found that, unlike the "vast majority" of ADA cases, plaintiff proved no injury "caused by or 'because of' discrimination on the basis of a prohibited characteristic or trait" such as disability. *Id* at 560. The Fifth Circuit held: "This Court has been unable to find any indication either in the text of the ADA or in its legislative history that a violation of the prohibition against preemployment medical examinations and inquiries, in and of itself, was intended to give rise to damages liability." *Id.* at 561. Although it involved a prospective hire and not an actual employee, *Armstrong*'s sound logic and reading of the ADA applies here.

The Eighth and Ninth Circuits likewise interpret § 12112(a) and (d) of the ADA consistently with the district court's holding below. In *Fredenburg v. Contra Costa*

---

[2] While not binding Third Circuit law, the lower court opinion in *Green v. Joy Cone Co.*, 278 F. Supp. 2d 526, 544 (W.D. Pa. 2003), *aff'd by* 107 F. App'x 278, 279 (3d Cir. 2004) contains a well-reasoned and thorough analysis of § 12112 of the ADA, and held the statutory framework of 42 U.S.C. § 12112 means that if a plaintiff "is not claiming to have been discriminated against on account of a disability, the issuance of back pay is inappropriate."

*Cnty. De'pt of Health Servs.*, 172 F.3d 1176, 1182 (9th Cir. 1999), the court found in favor of (and awarded back pay to) an employee asked to take an unlawful fitness-for-duty exam – but critically did *not* hold that all violations of § 12112(d)(4)(A) are per se discrimination. To the contrary, *Fredenburg* recognized that § 12112(d)(1) stands for "a general principle" that "medical examinations may not be used to discriminate against qualified persons with a disability," and "categorically directs courts to treat medical examinations as *possible evidence* of discriminatory conduct." *Id.* at 1182. (emphasis added). In *Cossette v. Minn. Power & Light*, 188 F.3d 964, 971 (8th Cir. 1999), the Eighth Circuit adopted *Fredenburg*. In both jurisdictions, violation of § 12112(d)(4)(A) is not per se evidence of discrimination – meaning some violations may be nondiscriminatory, technical violations for which back pay is not required. Indeed, the plaintiff in *Fredenburg* suffered emotional distress, 172 F.3d at 1182, and Nawara did not – explaining the different result here.

Finally, the Tenth Circuit has recognized that some violations of 42 U.S.C. § 12112(d) are technical violations for which only nonmonetary relief is appropriate. In *Griffin v. Steeltek, Inc.*, 261 F.3d 1026, 1028 (10th Cir. 2001) the plaintiff applied for a job at a steel plant and refused to answer a medical inquiry on a questionnaire asking if he had "physical defects which preclude you from performing certain jobs." A jury found the question to be a technical violation of 42 U.S.C. § 12112(d)(2) (which covers prospective employees), but *not* an act of intentional discrimination, such that the only appropriate relief was to make the employer discontinue the questionnaire. *Id.* at 1028. *Griffin* held "compensatory damages" are available "only if the plaintiff establishes that the employer not only technically violated § 12112(d)(2)(A) by

17

asking a prohibited question, but also that by doing so it actually 'engaged in unlawful intentional discrimination.'" *Id.* at 1028-29 (citing *Armstrong, Cosette* and *Tice*).

As these authorities reflect, Nawara should not, without more, be allowed to bootstrap a claim of a technical violation of § 12112(d)(4)(A) into a finding of "discrimination" in order to permit an award of back pay. *See Armstrong*, 141 F.3d at 560-62 (a medical examination, "in and of itself," does not "give rise to damages liability" under the ADA); *accord Strong v. Paulson*, 249 F. App'x 470, 473 (7th Cir. 2007) (granting summary judgment for employer where refusal to hire was not solely based on improper medical inquiry). Here, back pay may not be awarded for unlawful employment decisions based on "any reason other than discrimination." 42 U.S.C. § 2000e-5(g). The jury may have found a technical violation of § 12112(d)(4)(A), but such a violation is not the same as unlawful discrimination.

Under the circumstances of this case (where Nawara never alleged any actual discrimination on account of disability), this court should not hold that a technical violation of §12112(d)(4) alone constitutes the type of discrimination required to award back pay. To rule otherwise would create a conflict of authority among the circuits and create a massive loophole in the ADA, allowing non-disabled individuals to obtain backpay awards using a lower bar than is applied to individuals with a disability who sue for discrimination on account of disability. That cannot have been Congress's intention.

Nor did the jury's general verdict find any act of discrimination that might give rise to Title VII back pay damages. To the contrary, the jury instructions on Nawara's ADA claim limited the jurors to considering whether the fitness-for-duty inquiry was

18

appropriately job-related – the instructions say nothing about whether Nawara had a perceived disability substantially limiting him in a major life activity, let alone discrimination on the basis of that perception. The jury found solely that the Sheriff's Office violated § 12112(d)(4)(A) of the ADA, meaning it did not view the medical inquiry as job-related. The jury also found Nawara entitled to no money for emotional distress damages. This verdict was not a finding of unlawful discrimination on the basis of disability under the plain meaning of the ADA and Title VII.

## C. Nawara's Anger Issues Did Not Mean He Was Perceived As Disabled.

Nawara claims that he presented evidence at trial that Defendants perceived him to be disabled. Nawara Br. 40-41. As the district court correctly recognized, Nawara did no such thing. Nawara's trial testimony made crystal clear that the reason he went on unpaid leave had nothing to do with a perception he was disabled. Rather, the leave was based on his refusal to sign two HIPAA release forms that he did not want to sign. In fact, Nawara admitted he had no concerns or worries about the fitness-for-duty examination itself, and that his only concern was the blank forms.

Nor was there trial testimony establishing that anyone at the Sheriff's Office thought Nawara was disabled. The fitness-for-duty referral was stated in writing to be a referral for "anger management," and Reierson and Shelby testified that Nawara was asked to take a fitness-for-duty exam because he was visibly angry with them. But difficulty managing anger is not by itself a disability, or even a medical issue at all. Reierson testified that employee referrals for fitness-for-duty exams are intended to uncover "some kind of *personal or* medical issue that's preventing them from performing the job." *See* page 5 supra (emphasis added). Personal events that cause

19

anger issues at work are not disabilities. If Nawara were going through a personal issue affecting his job such as divorce, for example, or the loss of a parent, a fitness-for-duty exam with a psychologist would discover that.

In addition, it is well-settled that not all personality disorders causing anger or other extreme emotions rise to the level of a disability. *Weber v. Kijakazi*, No. 20-2990, 2021 U.S. App. LEXIS 24776 at *23-24 (7th Cir. Aug. 19, 2021) (plaintiff diagnosed with traumatic brain injury and PTSD was not disabled); *Pate v. Kijakazi,*, Case No. 20-3207, 2021 U.S. App. LEXIS 24484, at *5 (7th Cir. Aug. 17, 2021) (plaintiff diagnosed with depression, anxiety and ADHD was not disabled); *Chambers v. Saul*, 861 F. App'x 95, 97 (7th Cir. 2021) (plaintiff diagnosed with depression, anxiety, PTSD and other disorders was not disabled); *Pavlicek v. Saul*, 994 F.3d 777, 784 (7th Cir. 2021) (plaintiff diagnosed with depression and anxiety was not disabled). *See also Kurtzhals*, 969 F.3d at 730 (plaintiff's anger issues leading to a fitness-for-duty referral that would have uncovered a PTSD diagnosis did not mean the police department perceived plaintiff as disabled). Reierson's and Shelby's testimony about Plaintiff's "anger" issues did not mean he was perceived as disabled.

Nawara never presented this case below as a discrimination case, and never met his trial burden to show his perceived anger issues rose to the level of a perceived disability. There was no instruction to the jury to decide whether Nawara was perceived as having a disorder rising to the level of an actual disability, and no testimony that he was perceived as having such a disorder. In sum, there is nothing in the record on appeal to support Nawara's theory that he was perceived as disabled – including no finding by the jury of any discrimination, attempted or otherwise.

### D. The District Court Did Not Abuse Its Discretion By Denying Nawara Back Pay.

Even were back pay available to Nawara as a matter of law, the district court did not abuse its discretion by denying him that back pay on the facts of this case. As the D.C. Circuit has held, district courts have wide equitable discretion to deny back pay under Title VII. *Porter v. Natsios*, 414 F.3d 13, 14 (D.C. Cir. 2005); *see also Albemarle Paper Co. v. Moody*, 422 U.S. 405, 421-22 (1975) (recognizing that although discretion to deny back pay is not "unfettered," the "trial court will often have the keener appreciation of those facts and circumstances peculiar to particular cases" when ruling on back pay motions). Here, the district court exercised its discretion to deny a back pay award to Nawara where the balance of equities did not warrant doing so. In this case, Nawara was not disabled or perceived as disabled, presented no evidence of discrimination against him, and was awarded zero emotional distress damages. The district court did not abuse its discretion by balancing these equities in favor of the Defendants, and its ruling can be affirmed for that reason alone.

### II. Nawara's And The Federal Government's Arguments To The Contrary Are Without Merit.

Nawara and the United States offer a scattered set of attacks in favor of awarding Nawara back pay here, but those arguments are without merit.

### A. Nawara's And The Federal Government's Arguments About Text, Structure, And Legislative History Of The ADA Do Not Justify Reversal.

*First*, contrary to Nawara's reading of the statute, the "express language" of the ADA does not mean that all medical inquiries in violation of 42 U.S.C. §

12112(d)(4) are per se discrimination. Nawara Br. 19-20. Nawara's reading of the statute (*id.* at 19) glosses over the language of 42 U.S.C. § 12112(a) and ignores 42 U.S.C. § 12112(b), which omits medical inquiries from the list of per se discriminatory acts. As argued in Part I.A *supra*, §§ 12112(a), (b) and (d) should be read together to mean that medical inquiries are *not* per se acts of discrimination.

*Second*, Nawara's claim of "presumptive entitlement" to back pay (Nawara Br. 19-20) is based on three inapposite cases. In *Stragapede v. City of Evanston*, 865 F.3d 861, 868 (7th Cir. 2017), a jury found that a city employee who suffered a brain injury should not have been suspended and was capable of doing his job despite the injury; the district court awarded back pay and found that the city did not prove that plaintiff failed to mitigate damages. In *EEOC v. Ilona of Hungary, Inc.*, 108 F.3d 1569, 1580 (7th Cir. 1997), involved an award of back pay to employees fired for not working on a Jewish holiday – an obvious case of unlawful religious discrimination. Finally, *David v. Caterpillar, Inc.*, 324 F.3d 851, 865-66 (7th Cir. 2003) affirmed the district court's *reduction* of damages following a Title VII verdict and emphasized that back pay was a matter over district courts had "broad equitable discretion." *Id.* at 865. *Stragapede*, *Ilona* and *David* all were cases of obvious discrimination; this case is not. The presumption in favor of back pay should not apply here.

*Third*, Nawara is wrong to argue the district court required "proof of an underlying disability" as a precondition to back pay under § 12112(d)(4)(A). Nawara Br. 24. The district court required proof of discrimination based on *perceived* disability and found that proof wanting – because Nawara never presented it at trial. R. 373 at 10; R. 413 at 3-5.

*Fourth*, Nawara's "statutory construction" argument (Nawara Br. 25-26) quibbles that 42 U.S.C. § 2000e-5(g)(2)(a), the basis of his back pay claim, refers to "discrimination on account of race, color, religion, sex, or national origin" and does not use the word "disability." Nawara Br. 25.  Nawara ignores that the ADA expressly incorporates disability discrimination into the Title VII back pay statute, and makes it a prerequisite to back pay. *See* 42 U.S.C. § 1981a(a)(2); § 12117(a).

*Fifth*, both Nawara (Nawara Br. 26-27) and the United States (Govt. Br0. at 12-13) are wrong to argue that the district court's holding somehow conflicts with Congress's "purpose" when enacting the ADA. Nawara cites no legislative history for this argument, and the legislative history cited by the United States (Govt. Br. at 12-13), shows only that the drafters of § 12112 were concerned about pre-hiring medical inquiries to job applicants – specifically, that medical testing could unfairly screen out new hires with disabilities before they started work. H.R. Rep. No. 485, Pt. II, 101st Cong., 2d Sess. 42-43. Put another way, Congress's concern was that people with disabilities might not be hired in the first place. *Harrison v. Benchmark Elecs. Hunstville, Inc.*, 593 F.3d 1206, 1212 (11th Cir. 2010) (Congress intended to stop people with "so-called hidden disabilities such as epilepsy, diabetes, emotional illness, heart disease and cancer" from losing out on jobs "before their ability to perform the job was even evaluated").[3] That concern is not at issue here. At the time of the 2016

---

[3] *Harrison*, a hiring case, reversed summary judgment for the defendant, but required that on remand plaintiff would have to "at least show some damages (emotional, pecuniary or otherwise) caused by a § 12112(d) violation." 593 F.3d at 1217. *Harrison* did not address or consider a post-trial motion for back pay.

medical inquiry, Nawara had worked for the Sheriff's Office for years, and there is no suggestion that anyone at the Sheriff's Office tried to screen him before he was hired.

As to Nawara's arguments about Congress's "purpose" (Nawara Br. 27-30) he cites only three sources: (1) an EEOC enforcement guideline stating that non-disabled individuals may be covered by the ADA's prohibition on medical inquiries; (2) *Kurtzhals*, 969 F.3d at 730, where the officer suffered from PTSD that the employer did not know about and (3) *Conroy v. N.Y. Dep't of Corr. Servs.*, 333 F.3d 88, 94-95 (2d Cir. 2003), which involved an officer with a clearly serious physical disability (chronic obstructive pulmonary disease). None of these cases held that plaintiffs who are not disabled or perceived as disabled, and not discriminated against, can get back pay for a technical violation of § 12112(d) of the ADA.

*Sixth*, Nawara argues that the "overall statutory scheme" of the ADA supports reversal of the District Court. Nawara Br. 30-31. This argument is easily set aside. As we explain above, the statutory scheme separates violations of § 12112(d) from the list of acts that constitute per se discrimination under § 12112(b). The placement of § 12112(d), and its cross-reference to § 12112(a) rather than (b), suggest that medical inquiries are *not* per se acts of discrimination. Moreover, Nawara cites two off-point cases (Nawara Br. 31): *Smith v. Zachary*, 255 F.3d 446, 448 (7th Cir. 2001), requiring prisoners to exhaust administrative remedies, and *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 133 (2000), which held Congress did not intend to give the FDA power to regulate tobacco companies. These cases have nothing to do with the ADA and do not support Nawara's arguments about its "statutory scheme."

**B.     Denying Back Pay Here Is Consistent With Case Law Of This And Other Circuits.**

Nawara and the United States argue that the Sixth Circuit decision in *Bates v. Dura Auto. Sys., Inc.*, 767 F.3d 566, 582 (6th Cir. 2014), supports an award of back pay here.  (Nawara Br. 15, 32-33; Govt. Br. 12-13.) *Bates* is easily distinguishable, however, because the plaintiffs in *Bates* did not receive back pay on appeal. The *Bates* employer was a factory owner who required all employees to take urine tests for drug screening, which the jury found to have no job-related purpose. 767 F.3d at 566-67. The tests led to the firing of a group of plaintiffs who tested positive for "opiates," some of whom were disabled with back problems and taking prescription medicine. *Id.* at 570-71. The trial court awarded the plaintiffs $870,000 in direct and punitive damages – some of which was reversed on appeal. *Id.* at 566, 583. *Bates* noted in nonbinding *dicta* that, on remand to recalculate damages, "non-disabled" plaintiffs could still "qualify for statutory damages" from the district court in the form of back pay. *Id.* at 582. *Bates* did not state that every violation of 42 U.S.C. § 12112(d) requires an award of back pay to a "non-disabled" plaintiff. Further, and unlike this case, *Bates* was an obvious case of discrimination based on perceived or actual employee disability. All of the *Bates* plaintiffs, whether taking prescription drugs to treat a disability or using opiates recreationally, failed the drug tests they took. Here, by contrast, Plaintiff took and passed his fitness for duty exam, and could not reasonably be deemed disabled or perceived as disabled.

Nawara also argues that *Bates* is "on point" with this court's decision in *Wright v. Ill. Dep't of Children & Family Servs.*, 798 F.3d 513 (7th Cir. 2015) (Nawara Br.

24, 32), but *Wright* is also distinguishable. *Wright* explains the "business necessity" proof that an employer must show at trial to avoid liability for an employee medical inquiry under § 12112(d)(4)(A) and noted that non-disabled individuals may be covered by the statute. 798 F.3d at 522. *Wright* addresses only liability under the statute, not damages. *Wright* did not determine when and if a non-disabled plaintiff can get back pay, nor does it hold that back pay is available without proof of discrimination.

Nawara also cites *Gonzales v. Sandoval Cnty.*, 2 F. Supp. 2d 1442 (D.N.M. 1998), but *Gonzales* is not binding authority, and in any event is distinguishable. *Gonzales* applied "equitable discretion" to give back pay to a sheriff's deputy who lost a month of work due to illness, and where the deputy showed at trial that there was a prohibited inquiry about that medical condition. *Id.* at 1446. *Gonzales* does not support Nawara's position that back pay is available for all prohibited medical inquires by an employer, even if the employee is not disabled or perceived as disabled.

Nawara cites two other cases in passing (Nawara Br. 33) that do not support his "conflict" argument. *Taylor v. City of Shreveport*, 798 F.3d 276, 277 (5th Cir. 2015) struck down a Louisiana police department's policy that all officers on "sick leave" be confined in their homes while on leave. *Trans. Workers Union of Am. Local 100, AFL-CIO v. N.Y. City Transit Auth.*, 342 F. Supp. 2d 160 (S.D.N.Y. 2004) invalidated a similar overbroad policy requiring all officers on "sick leave" to take medical exams proving their condition. Both cases involved large-scale ADA violations by employers who instituted draconian sick leave policies, justifying broad equitable relief. The case at bar, however, involves a single, technical ADA violation against a single

26

correctional officer at the Sheriff's Office: a far cry from the broad conduct of the defendants in *Taylor* and *Trans. Workers Union*.

Moreover, United States is wrong to urge this Court to apply the vacated and overruled opinion in *Bates v. United Parcel Serv., Inc.*, 465 F.3d 1069, 1082 (9th Cir. 2006), *rev'd en banc*, 511 F.3d 974 (9th Cir. 2007) ("*UPS*") (Govt. Br. at 14.) The en banc opinion reversed a district court and three-judge Ninth Circuit panel's rulings that UPS had no job-related reason for requiring its truck drivers to take physical examinations. *Id.* at 975-76. The en banc opinion pointed to the importance of avoiding car accidents and complying with federal auto safety standards, which the lower court and three-judge panel improperly disregarded. *Id.* at 991-93. The earlier, overruled decisions in *UPS* that the Government now urges on this Court would dangerously have allowed UPS drivers to avoid necessary medical tests, are bad law and bad policy, and should be given no weight in this Court.

Finally, Nawara is wrong to argue (Nawara Br. 35-37) that the district court judgment was contrary to the "make whole" policy of *Albemarle Paper*, 422 U.S. at 419-21. This argument overreaches and ignores, once again, that back pay awards are limited to cases of actual discrimination. *Albemarle Paper* did not fully eliminate a district court's equitable discretion to award or deny back pay in Title VII cases. Further, *Albemarle Paper* involved serious and systematic failures of the defendant to hire and promote black employees. This amounted to intentional discrimination on the basis of race, and more than justified back pay awards to the plaintiffs, such that the lower court would have abused its discretion by denying back pay. Nothing in

27

*Albemarle Paper* requires "make whole" back pay to all plaintiffs in all instances of ADA violations, including technical violations of the ADA like the one at issue here.

### C.     Plaintiff's "Chilling Effect" Argument Is Meritless And Premature.

Nawara argues that, because he could not convince the jury to award him "mental anguish" damages at trial, there will be a "chilling effect on attorneys willing to take" cases like this one unless he gets back pay. Nawara Br. 33-35. Nawara is conspicuously unable to cite any authority for this argument, and the court should reject it.  The fact that Nawara could not get the jury to award him "mental anguish" damages does not prove the ADA is "toothless," *id.* at 34-35, but only that Nawara failed to prove his emotional distress case at trial. Nawara now seeks a back pay award to fill the gap left by his loss at trial, but this hardly means the ADA is "toothless."  Moreover, back pay should not be treated as a replacement for emotional distress damages when a litigant fails to prove them.  Nothing in the statutes before this court permit treating the array of potential damages as interrelated in this way.

Nawara also improperly ties his "chilling effect" argument to his petition to the district court for "attorneys' fees." Nawara Br. 34. This argument is premature and should not be considered in this appeal. Nawara has petitioned the district court for more than $1.2 million in attorney's fees. R. 410. The district court has – at Nawara's request – stayed consideration of the petition until this appeal is resolved. R. 411, 412. This court should not consider arguments about the fee petition before the district court does so.

### D.     The Back Pay Award Plaintiff Sought Did Not Account For Other Jobs.

Even if this Court requires the District Court to make a back pay award (which it should not), Nawara is wrong to that he has "proven" the right to five months back pay, which he claims to be $30,773.93, owed without mitigation or setoff. Nawara Br. 21-23.  This claim is inflated, because Nawara was gainfully employed and working security jobs at UPS and Amazon during those same months. Under 42 U.S.C. § 2000e-5(g)(1), back pay awards to Title VII plaintiffs must be reduced to account for the plaintiff's "interim earnings" at other jobs or for failure to mitigate by reasonable efforts to seek other jobs.  Here, Nawara admitted to earning at least $17,000 at other jobs, and never testified that these other jobs would have been incompatible with other work as a correctional officer. Nawara's argument for $30,773.93 in back pay ignores § 2000e-5(g)(1)'s requirement of setoff for interim earnings – which would require at least a $17,000 reduction or full equitable denial of any back pay award.

Instead of addressing the law of setoff, Nawara argues the Sheriff's Office did not prove he failed to mitigate damages by finding other work.  Nawara Br. 23. This argument misses the point. Nawara admitted he found other work during his unpaid months, and the problem with his back pay calculation is his failure to account for his interim earnings *and* failure to mitigate. Nor did Defendants "waive" setoff or mitigation arguments by failing to present them below, as Nawara argued. Nawara Br. 23. The district court found that Nawara was not entitled to any back pay at all, and there was no need for it to consider setoff or mitigation arguments. These arguments are persevered if this matter is remanded for a back pay calculation.

### E. Nawara Is Not Entitled To Retroactive "Pension Credits," Which Are A Form Of Back Pay.

Nawara's last argument is that he should have been given retroactive "pension credits" along with his restored seniority. (Nawara Br. 41-45). This argument is wrong on the facts and the law. The record, and the law, is that retroactive pension credits in Cook County are just another form of back pay, and which fall within the purview of a nonparty state agency. The district court rightly rejected awarding Nawara pension credits along with other forms of back pay.

As matter of Illinois law, a pension credit is money given to a Cook County employee via the Cook County Pension Fund ("Pension Fund"), a public fund created pursuant to 40 ILCS 5/1-101 *et seq.* The Pension Fund has exclusive power to award benefits based on length of service, and expressly ties pension credits to the employee's actually working at the job and receiving regular paychecks. R. 392 at 2-3 and exhibits thereto (citing relevant provisions of the Pension Fund web site and Illinois case law); *see also* 40 ILCS 5/9-220(a) (requiring Pension Fund to tie service credits to months actually worked).

The relevant provisions of the Illinois statute and of the Pension Fund's web site were memorialized in the record via the district court's final judgment. The statute requires that service credits from the Pension Fund must be tied to the period for which "an employee receives all or part of his salary." R. 413 at 6 n.6 (quoting 40 ILCS 5/9-220(a)(2)(i)-(ii)). The Pension Fund web site likewise informs employees that service credits are tied to pay, and if they "receive a paycheck with less than 40 hours of salary in a pay period, you may not be earning service credit." *Id.* at 6 n.6 (citing Pension Fund web site).

Further, the Pension Fund – not Cook County or the Sheriff's Office – has exclusive authority to issue pension-based seniority benefits. 40 ILCS 5/1-109(a)(1). Nawara did not dispute that fact below and has waived any contrary argument. R. 413 at 7 n.7 (finding waiver).

After reviewing the Illinois authorities above, the district court correctly concluded that pension credits are a form of back pay inextricably tied to an officer's paycheck – and that in its equitable discretion, the court could and should deny Plaintiff's petition for pension credits along with other forms of back pay or monetary relief. R. 413 at 7-9. In support of its decision, the district court cited *Pals v. Schepel Buick & GMC Truck, Inc.*, 220 F.3d 495, 499 (7th Cir. 2000), which reinforced that back pay is a form of equitable relief separate from compensatory damages.

Nawara's argument about pension credits (Nawara Br. 41-45) points to no law, either state or federal, that would require reversal of the district court and an award of pension credits. For one thing, the Pension Fund has never been a party to this case, and it cannot be ordered to take action it would not ordinarily take without Nawara receiving a regular paycheck. R. 413 at 7 n.7. For another, Nawara cites no authority indicating that the ADA violation at issue below was so problematic that the district court had no discretion to deny pension credits.

 Instead, Nawara cites two cases of systematic race discrimination (Nawara Br. 42), in violation of Title VII, where a court ordered restoration of seniority. In *Franks v. Bowman Trans. Co., Inc.*, 424 U.S. 747, 750 (1976), the Georgia employer refused to hire or promote black truck drivers. In *Miles v. Indiana*, 387 F.3d 591, 599 (7th Cir. 2004), the Indiana employer failed to promote qualified black police officers.

31

Neither of these cases have anything to do with Illinois pension credits and involved broadly inequitable acts of race discrimination. Nawara also cites (Nawara Br. 42-43) a lower court opinion in *EEOC v. Rockwell Int'l Corp.*, 243 F.3d 1012 (7th Cir. 2001). *Rockwell* granted summary judgment for the employer on ADA claims, and also has nothing to do with Illinois pension credits.

Nawara concludes his brief by attacking an argument Defendants have not made and a conclusion the district court did not reach: impossibility of performance. Nawara Br. 44-45. Impossibility of performance is grounds for *relief* from judgment under Fed. R. Civ. P. 60(b)(5). *See, e.g., Salazar v. Dist. of Columbia*, 633 F.3d 1110, 1122 (D.C. Cir. 2010). There is no pending Rule 60(b)(5) motion before the district court. In any event, Nawara's "impossibility" cases (Nawara Br. 44-45) are inapposite. *Domanus v. Lewicki*, 742 F.3d 290 (7th Cir. 2014), involved dispositive sanctions imposed on a defendant who refused to appear or participate in discovery, and where it was not impossible for the defendants to comply with court orders. Here, there can be no question that Defendants have appeared and vigorously defended themselves. Another of Nawara's cases, *Cent. States, S.E. & S.W. Areas Pension Fund v. Express Freight Lines*, Ltd., 971 F.2d 5 (7th Cir. 1992), dismissed a premature appeal of an order granting post-judgment discovery, and has no bearing on the present motion. Nawara's other cases involve the defense of impossibility in breach of contract cases, which is not at issue here because this case is not a breach of contract case. *First Nat'l Bank of Chicago v. Atlantic Tele-Network Co.*, 946 F.2d 516 (7th Cir. 1991) (stock purchase agreement); *Greer Props., Inc. v. LaSalle Nat'l Bank*, 874 F.2d 457 (7th Cir.

1989) (land sale contract); *United States v. S.W. Elec. Coop., Inc.*, 869 F.2d. 310 (7th Cir. 1989) (electric requirements contracts). These cases are immaterial here.

### III.   The District Court's Award Of Restored "Seniority" To A Department Of Corrections Position That Nawara No Longer Holds Should Be Vacated.

The district court, in its February 15, 2022 Order, found that Nawara was "awarded no damages," but that Defendant was "directed to restore his lost seniority." R. 382, at 1.  Nawara lost seniority at the Department of Corrections during his leave but left the Department of Corrections for the Sheriff's Police in 2019. The Defendants sought reconsideration of the seniority ruling on that basis. The district court, in its July 29, 2022 final order, stated Defendants may be correct that "Nawara cannot benefit from certain aspects of seniority because he took a new position upon his return to work," but did not vacate the order because compliance "will pose no challenge." R. 413, at 5-6 (emphasis added).

Defendants cross-appeal from and ask the Court to vacate the above-referenced portion of the July 22, 2022 judgment on grounds that the order to restore Plaintiff's seniority at his old job became moot in 2019, when he left his old job as a correctional officer for the Sheriff's Police. When an issue becomes moot while a case is pending, "all prior orders should be vacated." *Todd v. Joint Apprenticeship Committee*, 332 F.2d 243, 247 (7th Cir. 1964); *see also Bach v. Coughlin,* 508 F.2d 303, 305-306 (7th Cir. 1974) (vacating controversy with the defendants as moot).

Here, Nawara's departure to the Sheriff's Police "restarts his seniority 'clock' for the purposes of assignments and the like." R. 369, at 6. The district court's order to restore "seniority" and "vacation days" is directed to Nawara's old position at the

Department of Corrections, not the Sheriff's Police. R. 413, at 5-6. There is nothing in this record suggesting Nawara wants to return to the Department of Corrections. The district court appears to have been speculating that Nawara will one day try to return to the Department of Corrections – but speculation is not a basis for injury. *Cabral v. City of Evansville*, 759 F.3d 639, 642 (7th Cir. 2014) ("merely speculative" injuries are not cognizable). The ruling restoring Nawara's seniority at the Department of Corrections should be vacated as moot.

## CONCLUSION

This court should affirm the district court's judgment denying Nawara back pay, and vacate as moot the portion of that judgment requiring restoration of his seniority.

## CERTIFICATE OF COMPLIANCE

Pursuant to. R. App. P. 32(a)(7)(C), the undersigned hereby certifies that this brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B).

1.     Exclusive of the exempted portions of the brief, as provided in Fed. R. App. P. 32(a)(7)(B), the brief contains 9,848 words.

2.     The brief has been prepared in proportionally spaced typeface using Microsoft Word in 12-point Century font. As permitted by Fed. R. App. P. 32(a)(7)(C)(i), the undersigned has relied upon the word count feature of this word processing system in preparing this certificate.

Respectfully submitted,

/s/ George D. Sax
Stephanie A. Scharf
Sarah R. Marmor
George D. Sax
SCHARF BANKS MARMOR LLC
333 West Wacker Drive, Suite 450
Chicago IL 60606
Phone: (312) 726-6000
sscharf@scharfbanks.com
smarmor@scharfbanks.com
gsax@scharfbanks.com

*Attorneys for Defendants-Appellees and Cross-Appellants Cook County, Illinois and Thomas J. Dart, Sheriff of Cook County*

35

**CERTIFICATE OF SERVICE**

I hereby certify that on **February 10, 2023,** I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

Respectfully submitted,

/s/ George D. Sax
Stephanie A. Scharf
Sarah R. Marmor
George D. Sax
SCHARF BANKS MARMOR LLC
333 West Wacker Drive, Suite 450
Chicago IL 60606
Phone: (312) 726-6000
sscharf@scharfbanks.com
smarmor@scharfbanks.com
gsax@scharfbanks.com

*Attorneys for Defendants-Appellees and Cross-Appellants Cook County, Illinois and Thomas J. Dart, Sheriff of Cook County*