# In the
# United States Court of Appeals
## for the Seventh Circuit

JOHN NAWARA,

*Plaintiff-Appellant/Cross-Appellee,*

v.

COOK COUNTY and THOMAS J. DART,

*Defendants-Appellees/Cross-Appellants.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division, No. 1:17-cv-02393.
The Honorable **Rebecca R. Pallmeyer**, Judge Presiding.

## REPLY BRIEF PLAINTIFF-APPELLANT/BRIEF OF CROSS-APPELLEE JOHN NAWARA

PETER VINCENT BUSTAMANTE
LAW OFFICE OF PETER V. BUSTAMANTE
17 North State Street
Suite 1550
Chicago, Illinois 60602
Telephone: (312) 346-2072

RICHARD F. LINDEN
LAW OFFICES OF RICHARD LINDEN
17 North State Street
Suite 1550
Chicago, Illinois 60602
Telephone: (312) 590-0211

*Attorneys for Plaintiff-Appellant/Cross-Appellee*



Page

TABLE OF AUTHORITIES.............................................................................ii

SUMMARY OF THE ARGUMENT.................................................................1

ARGUMENT......................................................................................................2

I.  THE DISTRICT COURT ERRED IN DENYING NAWARA'S MOTION FOR
    BACKPAY...................................................................................................2

    A.  THE EEOC'S INTERPRETATION OF THE ADA THAT PROOF OF A
        DISABILITY IS NOT REQUIRED FOR BACK PAY FOR VIOLATIONS
        OF 42 U.S.C. § 12112(d)(4)(A) IS ENTITLED TO DEFERENCE....................2

    B.  THE CCSO's PORTRAYAL OF ITS ADA VIOLATIONS AS
        "TECHNICAL" VIOLATIONS IS FARCICAL ................................................4

    C.  THE ADA PERMITS BACK PAY FOR UNLAWFUL MEDICAL
        INQUIRIES AND EXAMINATIONS ABSENT PROOF OF A
        DISABILITY .........................................................................................7

    D.  THE CCSO IGNORES THE IMPACT THE DECISION WILL HAVE ON
        THE DISABLED BY REQUIRING THE DISCLOSURE OF THEIR
        DISABILITY .......................................................................................11

    E.  BATES V. DURA AUTOMOTIVE SYSTEMS (6th CIR. 2014) IS ON-
        POINT, WELL-REASONED AND SHOULD BE FOLLOWED ..................12

    F.  CONTRARY TO WHAT IS CLAIMED BY THE CCSO, OTHER CIRCUIT
        COURTS OF APPEAL HAVE NOT REQUIRED PROOF OF A
        DISABILITY TO BE ELIGIBLE FOR BACK PAY UNDER 42 U.S.C.
        § 12112(d)(4) .....................................................................................14

    G.  THE CCSO'S McDONNELL DOUGLAS AND MOOTNESS
        ARGUMENTS SHOULD BE DEEMED WAIVED FOR FAILING TO
        RAISE THE ARGUMENTS BELOW ...............................................19

II.  NAWARA PROVED THAT HE IS ENTITLED TO BACK PAY .............................22

III.  THE DISTRICT COURT ERRED IN NOT ORDERING THE RESTORATION
      OF NAWARA'S "PENSION-BASED SENIORITY BENEFITS".............................24

CONCLUSION ...................................................................................................27

# TABLE OF AUTHORITIES

**Page(s)**

**Cases:**

*Albemarle Paper Co. v. Moody*,
422 U.S. 405 (1975) ...............................................................................................11

*Armstrong v. Turner Indus.*,
141 F.3d 554 (5th Cir. 1998) .........................................................................16, 17

*Bates v. Dura Automotive Systems*,
767 F.3d 566 (6th Cir. 2014) ...........................................................1, 12, 13, 14

*Burton v. Ghosh*,
961 F.3d 960 (7th Cir. 2020) ...............................................................................21

*Citizens Ins. Co. of Am. v. Barton*,
39 F.3d 826 (7th Cir. 1994) .................................................................................20

*Conroy v. New York State Dep't of Corr. Servs.*,
333 F.3d 88 (2d Cir. 2003) ..................................................................................12

*Cossette v. Minn. Power & Light*,
188 F.3d 964 (8th Cir. 1999) ...............................................................................18

*David v. Caterpillar, Inc.*,
324 F.3d 851 (7th Cir. 2003) .........................................................................10, 23

*E.E.O.C. v. Commercial Office Products, Co.*,
486 U.S. 107 (1988) ...............................................................................................4

*E.E.O.C. v. Ilona of Hungary, Inc.*,
108 F.3d 1569 (7th Cir. 1997) .............................................................................10

*E.E.O.C. v. O & G Spring & Wire Forms Specialty Co.*,
38 F.3d 872 (7th Cir. 1994) .................................................................................10

*Ennin v. CNH Indus. Am., LLC*,
878 F.3d 590 (7th Cir. 2017) ...............................................................................12

*Firefighters Local. Union No. 1784 v. Stotts*,
467 U.S. 561 (1984) .............................................................................................19

*First Bank of Oak Park v. Ave. Bank & Tr. Co. of Oak Park*,
605 F.2d 372 (7th Cir. 1979) .................................................................................9

*Franks v. Bowman Transportation Co., Inc.,*
424 U.S. 747 (1976) ...................................................................27

*Fredenburg v. Contra Costa Cnty. Dep't of Health Servs.,*
172 F.3d 1176 (9th Cir. 1999) ..............................................11, 17

*Griffin v. Steeltek, Inc.,*
261 F.3d 1026 (10th Cir. 2001) ............................................18, 19

*Kurtzhals v. City of Dunn,*
969 F.3d 725 (7th Cir. 2020) ...................................................15

*McDonnell Douglas Corp. v. Green,*
411 U.S. 792 (1973) ...................................................................19

*Miles v. Indiana,*
387 F.3d 591 (7th Cir. 2004) ...................................................27

*Ortega v. Chicago Bd. of Educ.,*
280 F. Supp. 3d 1072 (N.D. Ill. 2017) ......................................11

*Quint v. A.E. Staley Mfg. Co.,*
172 F.3d 1 (1st Cir. 1999) .........................................................11

*Robinson v. Shell Oil Co.,*
519 U.S. 337 (1997) .....................................................................8

*Roe v. Cheyenne Mountain Conf. Resort, Inc.,*
124 F.3d 1221 (10th Cir. 1997) ................................................12

*Schoenfeld v. Apfel,*
237 F.3d 788 (7th Cir. 2001) ...................................................20

*Sofferin v. Am. Airlines, Inc.,*
923 F.2d 552 (7th Cir. 1991) .....................................................4

*Stragapede v. City of Evanston, Ill.,*
865 F.3d 861 (7th Cir. 2017) .....................................................9

*Strong v. Paulson,*
249 F. App'x 470 (7th Cir. 2007) .............................................17

*Surface Shields, Inc. v. Poly-Tak Prot. Sys., Inc.,*
213 F.R.D. 307 (N.D. Ill. 2003) ...............................................21

*Tice v. Ctr. Area Transp. Auth.,*
    247 F.3d 506 (3rd Cir. 2001) ........................................................15, 16

*United States v. Salerno,*
    108 F.3d 730 (7th Cir. 1997) .............................................................20

*Vega v. Chicago Park Dist.,*
    351 F. Supp. 3d 1078 (N.D. Ill. 2018), *aff'd*, 954 F.3d 996 (7th Cir. 2020) ..................10, 11

*Wright v. Illinois Dep't of Children & Family Servs.,*
    798 F.3d 513 (7th Cir. 2015) .............................................................20

**Statutes & Other Authorities:**

42 U.S.C. § 2000e–5(g) ........................................................................ 27

42 U.S.C. § 12112(a) ............................................................................ 9, 18

42 U.S.C. § 12112(b) ............................................................................ 9

42 U.S.C. § 12112(d) ............................................................................ 13, 19

42 U.S.C. § 12112(d)(1) ...................................................................... *passim*

42 U.S.C. § 12112(d)(4) ...................................................................... *passim*

42 U.S.C. § 12112(d)(4)(A) ................................................................ *passim*

Fed. Civ. Jury Instructions of the 7th Circuit No. 3.10 ....................24

Fed. R. Civ. P. 59 .................................................................................25

Fed. R. Civ. P. 59(e) ............................................................................21, 22

# SUMMARY OF ARGUMENT

The district erred in denying Plaintiff, John Nawara's ("Nawara") motion for backpay. The Equal Employment Opportunity Commission's ("EEOC") interpretation of the ADA that proof of a disability is not required for backpay for violations of 42 U.S.C. § 12112(D)(4)(a) is entitled to deference and should be upheld by this Court. The Cook County Sheriff's Office's ("CCSO") portrayal of its ADA violations as "technical" violations is farcical. The CCSO prevented Nawara from working for nine (9) months. Nawara lost $33,773.93 in wages and a comparable amount in compensatory, benefit time and seniority, as a direct result of the CSSO's violations of § 12112(d)(4)(A).

The ADA permits backpay for unlawful medical inquiries and examinations without proof of a disability. The ADA provides that "the prohibition against 'discrimination' includes medical examinations and inquiries." (42 U.S.C. § 12112(d)(1)). Congress could not have been any clearer that impermissible medical examinations and inquiries constitute "discrimination."

The CCSO ignores the impact the district court's decision will have on the disabled by requiring the disclosure of their disability. *Bates* v. *Dura Automotive Systems, Inc.*, 767 F.3d 566 (6th Cir. 2014) is on-point an shows the lower court erred requiring proof of a disability in order for Nawara to be eligible for backpay for violations of § 12112(d)(4)(A). The CCSO is wrong that other Circuit Courts of Appeal have required proof of a disability in order to be eligible for backpay for violations of § 12112(d)(4)(A). The CCSO's

*McDonnell Douglas* and mootness arguments should be deemed waived for failing to raise the arguments below.

Nawara proved at trial that he is entitled to backpay. Based on the proofs and the parties' stipulations, Nawara should be awarded $30,773.93 in back pay, plus the restoration of his personal and compensatory time used.

Finally, the district court erred by not ordering the restoration of Nawara's "pension-based seniority benefits." The full restoration of seniority, including "pension-based seniority benefits" is required as part of Nawara's make-whole relief for the CCSO's violations of § 12112(d)(4)(A).

## ARGUMENT

## I. THE DISTRICT COURT ERRED IN DENYING NAWARA'S MOTION FOR BACKPAY

### A. THE EEOC'S INTERPRETATION OF THE ADA THAT PROOF OF A DISABILITY IS NOT REQUIRED FOR BACK PAY FOR VIOLATIONS OF 42 U.S.C. § 12112(d)(4)(A) IS ENTITLED TO DEFERENCE

On November 23, 2022, the United States, on behalf of the Equal Employment Opportunity Commission ("EEOC") and the Department of Justice ("DOJ") filed an amicus brief urging the reversal of the district court on the issue of back pay (Doc. 41). Plaintiff, John Nawara ("Nawara"), incorporates by reference the amicus brief of the United States (Doc. 41). As set forth in the amicus brief, the EEOC and the DOJ share enforcement responsibility under Title I of the ADA, and the EEOC has Title I rulemaking authority (EEOC Brief, Doc. 41 p. 2).

After a thorough analysis of the text of Title I, its legislative history, case law, the purpose of the ADA and the relevant statutory provisions, the EEOC[1] and DOJ concluded that an employee without a disability may recover back pay for a violation of § 12112(d)(4) (Doc. 41). The EEOC found that the district court's reading of the statute cannot be reconciled with the consensus view among courts of appeals, including this Court, that § 12112(d)(4) protects all employees irrespective of disability status (EEOC Brief, Doc. 41 p. 16).

The EEOC found that Nawara is entitled to back pay noting that there is no dispute that the Cook County Sheriff's Office's ("CCSO") violation of § 12112(d)(4) caused Nawara to miss work (EEOC Brief, Doc. 41 p. 8). The EEOC concluded that Nawara suffered a tangible injury citing the fact that he spent more than ten months on authorized leave, and did not receive a paycheck for a substantial portion of that time, for refusing to submit to a prohibited fitness-for-duty exam or to sign medical-disclosure forms. *Id.*, p. 23. According to the EEOC, "Nawara is entitled to back pay to redress that injury for the violation of § 12112(d)(4)." (*Id.*, p. 23).

The EEOC's interpretation of the ADA is entitled to deference. As the Supreme Court stated in *E.E.O.C. v. Commercial Office Products, Co.*,

> [I]t is axiomatic that the EEOC's interpretation of Title VII, for which it has primary enforcement responsibility, need not be the best one by grammatical or any other standards. Rather, the EEOC's interpretation of ambiguous language need only be reasonable to be entitled to deference.

---

[1] Nawara will refer to the DOJ and the EEOC collectively as the "EEOC."

*E.E.O.C. v. Commercial Office Products, Co.*, 486 U.S. 107, 115 (1988).

In *Commercial Office Products*, the Supreme Court gave substantial deference to the EEOC's interpretation of the statute in question, finding its interpretation was more than amply supported by the legislative history and concluding that "[d]eference is therefore appropriate." *Commercial Office Products*, 486 U.S. at 115-16.

In *Sofferin v. Am. Airlines, Inc.*, 923 F.2d 552, 557 (7th Cir. 1991), citing *Commercial Office Products*, this Court accepted the EEOC's interpretation of the legality of a work sharing agreement between the EEOC and the Illinois Department of Human Rights: "We have no difficulty in concluding that the EEOC's interpretation of the agreement and its effect under section 706 of Title VII is reasonable and accordingly should be upheld." *Sofferin v. Am. Airlines, Inc.*, 923 F.2d 552, 557 (7th Cir. 1991).

The EEOC sets forth the basis why the district court's conclusion stems from a misreading of Title VII's back-pay provision. (EEOC Brief, Doc. 41 p. 9). The EEOC's interpretation of the statute is reasonable, persuasive and should be upheld. Its position is more than amply supported by the text and plain language of the ADA, its legislative history and case law. Its conclusions are well-reasoned and factually supported. Therefore, its interpretation is subject to deference and should be upheld.

### B. THE CCSO's PORTRAYAL OF ITS ADA VIOLATIONS AS "TECHNICAL" VIOLATIONS IS FARCICAL

The entirety of Defendant CCSO's arguments against back pay are grounded on the false premise that it only committed a "technical" violation of the ADA when it

prevented Nawara from working for nine (9) months, all due to Nawara's refusal to submit to an illegal fitness for duty ("FFD") examination and his refusal to sign medical releases, both of which, Nawara contended and proved, were in violation of 42 U.S.C. § 12112(d)(4)(A). "Technical" or a derivation of "technical" appears at least fifteen (15) times in its brief (CCSO Brief, Doc. 50[2] pp. 10, 13, 13, 14, 16, 17, 17, 17, 17, 18, 18, 18, 24, 26, 28).

The CCSO tries to trivialize Nawara's damages and its own misconduct arguing that the jury awarded nothing for emotional distress while ignoring the undisputed monetary harm he suffered as a direct result of its illegal conduct. This case is not about a "technical" violation of § 12112(d)(4)(A) where an employee suffered no harm. More exactly, for 9 months, Nawara was not permitted to work; he lost $30,773.93 in wages and a comparable amount in compensatory, benefit time and seniority, as a direct result of the CSSO's violations of the ADA. Calling its violation of § 12112(d)(4)(A) a "technical violation" is inaccurate, misleading and an affront to the ADA.

The CCSO falsely claims that a "technical ADA violation was found here." (CCSO Brief, Doc. 50 p. 10). The district court never found that the CCSO's violations were mere "technical" violations, which explains why the CCSO does not cite to the record for this assertion. *Id*.

---

[2] The CCSO filed its brief twice, first under Doc. 50, and then under Doc. 51. The briefs are identical. Nawara will refer only to Doc. 50).

The CCSO's characterization of its illegal conduct as a "technical" violation of the ADA underscores the lengths to which the CCSO will go in an attempt to trivialize its unlawful conduct and avoid responsibility. After a two week jury trial, the jury unanimously found that the CCSO violated 42 U.S.C. § 12112(d)(4)(A). The verdict is not being challenged in this appeal.

A message must be sent to the CCSO and other employers that requiring unlawful FFD exams and unlimited medical releases is not a technical violation of the ADA. Employers must be told that make-whole relief, including back pay, will be imposed for such violations. "Without the prospect of monetary liability, employers would have little incentive to refrain from subjecting employees to invasive medical exams and disability-related inquiries, undermining the purpose of subsection (d)." (EEOC Brief, Doc. 41 p. 18).

Subjecting employees to unlawful FFD exams and medical inquiries is a serious violation of the ADA. Nawara was prevented from working from November 19, 2016 until September 26, 2017. It is stipulated that Nawara received *no pay* from April 26, 2017 to September 26, 2017, and that he used accumulated compensatory and benefit time from November 19, 2016 to April 26, 2017. The parties further stipulated that his gross pay from April 26, 2017 to September 26, 2017, would have totaled $30,773.93[3]. Nawara lost

---

[3] The Parties stipulated that if the district court allowed back pay, the CCSO would restore, in kind, all of Nawara's compensatory and benefit time. (Doc. 362).

$30,773.93 in wages as a direct result of the CSSO's violations of the ADA, not counting

the loss of compensatory time, personal days, other benefit time and seniority.

This case does not involve a "technical violation."

## C. THE ADA PERMITS BACK PAY FOR UNLAWFUL MEDICAL INQUIRIES AND EXAMINATIONS ABSENT PROOF OF A DISABILITY

Nawara in his opening brief, and the EEOC in its amicus brief, discussed why the

district court erred in ruling that back pay is not available for violations of 42 U.S.C.

§ 12112(d)(4)(A), absent proof of a disability. Each of the CCSO's arguments are rebutted

in the previously filed briefs on this issue (Docs. 38 and 41).

The CCSO's argument that the statutory language of the ADA and Title VII do not

permit back pay for unlawful medical inquiries absent proof of a disability, because it

does not constitute discrimination, is without support. The ADA expressly provides that

unlawful medical exams and inquiries constitute "discrimination" under the ADA. 42

U.S.C. § 12112(d)(1). The CCSO's request that this Court read the statute to require

proof of discrimination as a condition for back pay is inconsistent with the plain words

of the statute.

"Because Title I classifies Section 12112(d)(4) violations as a form of disability

discrimination, Nawara was the victim of such discrimination and is therefore eligible for

back pay." (EEOC Brief, Doc. 41 p. 19). "Section 12112(d)(1) defines *all* violations of Title

I's specific prohibitions against the use of medical examinations or disability-related inquiries as disability discrimination." (EEOC Brief, Doc. 41 p. 12).

Only by ignoring the plain and unambiguous text of the ADA, can the CCSO argue that Nawara did not prove discrimination. The ADA provides that "the prohibition against 'discrimination' includes medical examinations and inquiries." (42 U.S.C. § 12112(d)(1)). Congress could not have been any clearer that impermissible medical examinations and inquiries constitute "discrimination."

The CCSO urges the Court to ignore the obvious and disregard fundamental rules of statutory construction by pretending that the statute does not say what it says. The court's inquiry must cease if the statutory language is unambiguous and the statutory scheme is coherent and consistent. *Robinson v. Shell Oil Co.*, 519 U.S. 337, 340 (1997). Accordingly, any inquiry should end based on the plain and unambiguous language of § 12112(d)(1).

The CCSO stands on a limb when it argues that "Nawara never presented this case below as a discrimination case." (CCSO Brief, Doc. 50 p. 20). Nawara filed this action under § 12112(d)(4) which by its terms makes this a discrimination case. The fact that Nawara proved that the FFD exam and medical release authorizations violated § 12112(d)(4) and were unlawful, proves "discrimination" under the statute. In addition, Nawara's second amended complaint avers that [o]n March 24, 2017, Plaintiff filed a

charge of discrimination and retaliation with the EEOC." (Doc. 200, ¶ 81). Count I is labeled "**ADA – Disability Discrimination." (**Doc. 200).

It is disingenuous for the CCSO to claim that Nawara's reading of the statute glosses over the language of 42 U.S.C. § 12112(a) and ignores 42 U.S.C. § 12112(b), contending that §§ 12112(a), (b) and (d) should be read together to mean that medical inquiries are not *per se* acts of discrimination (CCSO Brief, p. 22). It is the CCSO that glosses over and ignores the language of the statute—not Nawara. There is no support for the CCSO's construction.

One of the many problems with the CCSO's argument is that § 12112(d)(1) specifically applies to medical examinations and inquiries while §§ 12112(a) and 12112(b) do not. "It is a cardinal principle of statutory construction that the more specific controls over the more general." *First Bank of Oak Park v. Ave. Bank & Tr. Co. of Oak Park*, 605 F.2d 372, 375 (7th Cir. 1979). In addition, the CCSO's argument that the general language contained in §§ 12112(a) and 12112(b) somehow nullifies the express language of § 12112(d)(1) is wrong. There is nothing in §§ 12112(a) and 12112(b) to support such a construction of § 12112(d)(1 ). The CCSO's argument strains credibility. It is the CCSO, not Nawara, who ignores the clear and unambiguous language that states that prohibition against discrimination includes medical examinations and inquiries. 42 U.S.C. § 12112(d)(1).

The CCSO's position that unlawful medical inquiries are not "**per se**" acts of discrimination rests entirely on its unsupported premise that it only technically violated the ADA. The CCSO disregards that Nawara has tangible economic damages caused by its unlawful conduct. The CCSO does not, and cannot, contest that Nawara was prevented from working for nine (9) months and that he lost more than $30,000 in back pay, as well as compensatory time, benefit time and seniority lost, on account of its unlawful actions.

The CCSO offers no meaningful rebuttal to this Court's prior rulings that an award of back pay is presumptively proper once a violation has been shown. *E.E.O.C. v. Ilona of Hungary, Inc.*, 108 F.3d 1569, 1580 (7th Cir. 1997); *Stragapede v. City of Evanston, Ill.*, 865 F.3d 861, 868 (7th Cir. 2017); *David v. Caterpillar, Inc.*, 324 F.3d 851, 865 (7th Cir. 2003); *see also, E.E.O.C. v. O & G Spring & Wire Forms Specialty Co.*, 38 F.3d 872, 880 (7th Cir. 1994) ("back pay is presumptively appropriate in a Title VII case."). The CCSO does not dispute that back pay is presumptively appropriate. Its only response is that *Ilona of Hungary, Inc.*, *Stragapede* and *Caterpillar* are inapposite (CCSO Brief, Doc. 50 p. 22). Because of the "highly fact-specific nature of Title VII cases, such comparisons are rarely dispositive." *Vega v. Chicago Park Dist.*, 954 F.3d 996, 1008 (7th Cir. 2020). These cases fully support the rule that back pay is presumptively appropriate.

Moreover, the presumption to back pay has been consistently applied by the district courts and approved by this Court. *See, Vega v. Chicago Park Dist.*, 351 F.Supp.3d

1078, 1087 (N.D. Ill. 2018), *aff'd*, 954 F.3d 996 (7th Cir. 2020); *Ortega v. Chicago Bd. of Educ.*, 280 F. Supp.3d 1072, 1078 (N.D. Ill. 2017). The rule has also been applied by other circuits. *Quint v. A.E. Staley Mfg. Co.*, 172 F.3d 1, 15 (1st Cir. 1999) ("A prevailing ADA claimant is presumptively entitled to all back pay which would have accrued from the termination date to the entry of judgment," citing *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 421–22 (1975).

The CCSO also fails to provide any rationale or a coherent basis for why damages for emotional distress and other damages including equitable remedies such as restoration of seniority are available for illegal medical inquiries absent proof of a disability but back pay is not. Its argument directly conflicts with the "make whole" principle behind the ADA and Title VII.

### D. THE CCSO IGNORES THE IMPACT THE DECISION WILL HAVE ON THE DISABLED BY REQUIRING THE DISCLOSURE OF THEIR DISABILITY

Nawara's opening brief focused on how the lower court's decision will detrimentally affect the disabled by requiring employees to disclose their disability to be eligible for back pay (Nawara Brief, Doc. 38 pp. 16, 19, 20, 24, 26-30). Unable to rebut this argument, the CCSO instead chose to ignore the impact the court's ruling will have on the disabled.

The CCSO provides no credible opposition to the argument that the district court's decision must be reversed because it conflicts with the language and purpose of §

12112(d)(4)(A), in requiring the disabled to disclose their disability to pursue back pay claims (Nawara Brief, Doc. 38 pp. 26-30). The failure to respond to an argument generally results in waiver. *Ennin v. CNH Indus. Am., LLC*, 878 F.3d 590, 595 (7th Cir. 2017).

In support, Nawara cites the statute itself, the purpose and legislative history of the statute, citing *Conroy v. New York State Dep't of Corr. Servs.*, 333 F.3d 88 (2nd Cir. 2003) and the EEOC's Enforcement Guidance on Disability-Related Inquiries and Medical Examinations. These authorities make clear that § 12112(d)(4)(A)'s use of the term "employee," unlike other provisions of the ADA which are limited to qualified individuals with disabilities, reflects Congress' intent to cover a broader class of individuals. Thus, requiring an individual to show that he/she has a disability in order to challenge a medical inquiry or examination would defeat the statute's purpose (Nawara Brief, Doc. 38 pp. 28-29). As the Second Circuit stated, "'It makes little sense to require an employee to demonstrate that he has a disability to prevent his employer from inquiring as to whether or not he has a disability.'" *Conroy*, 333 F.3d at 95, *quoting, Roe v. Cheyenne Mountain Conf. Resort, Inc.*, 124 F.3d 1221, 1229 (10th Cir. 1997).

The CCSO's position would eviscerate the protections for the disabled under the ADA.

### E.    BATES V. DURA AUTOMOTIVE SYSTEMS (6th CIR. 2014) IS ON-POINT, WELL-REASONED AND SHOULD BE FOLLOWED

The district court failed to consider *Bates* v. *Dura Automotive Systems, Inc.*, 767 F.3d 566, 582 (6th Cir. 2014). *Bates* is on-point and holds that proof of a disability or perceived

disability is not required for backpay under § 12112(d) and that impermissible medical exams and inquiries constitute discrimination. The lower court was mistaken when it stated that no Circuit Courts of Appeal have held that "such violations constitute discrimination on the basis of disability, even where the plaintiff has not shown an actual or perceived disability." (Doc. 373, p. 6).

The EEOC, who also intervened in *Bates*, echoed that *Bates* is the only circuit-level opinion that has addressed whether plaintiffs without disabilities suing under § 12112(d)(4) are eligible for the remedies incorporated into the ADA. Relying on § 12112(d)(1), the *Bates* court found that employees without disabilities suing under § 12112(d)(4) qualify as persons alleging discrimination on the basis of disability. *Bates*, 767 F.3d 566, 582 (6th Cir. 2014); EEOC Brief, Doc. 41 p. 12.

The *Bates* Court rejected the employer's claim that non-disabled plaintiffs fail to qualify for statutory damages. *Bates*, 767 F.3d at 582. The court made clear that statutory damages encompassing back pay is an available remedy for violations of § 12112(d)(4)(A): "The ADA ban of "discriminat[ion] ... on the basis of disability" thus encompasses medical examinations and disability inquiries involving employees. Because the damages provision does not exclude (d)(4) claims, we affirm the district court's judgment that plaintiffs-appellees qualify for statutory damages should they prevail on their (d)(4) claim." *Bates*, 767 F.3d at 582.

The CCSO fails to meaningfully distinguish *Bates*. It tries to make short shrift of *Bates* arguing that the case is distinguishable because the plaintiffs did not receive back pay on appeal. This is a distinction without a difference. *Bates* stands for the proposition that non-disabled plaintiffs are eligible for statutory damages, *i.e.* backpay for medical inquiries and examinations in violation of § 12112(d)(4)(A). The fact that the Sixth Circuit did not order that the *Bates* plaintiffs receive back pay has no impact on their eligibility for back pay. The case was remanded to the district court to determine whether the drug testing was a medical examination or disability inquiry. *Bates*, 767 F.3d at 583. In this case, unlike the plaintiffs in *Bates*, Nawara has proven his entitlement to back pay.

*Bates'* reasoning is sound and demonstrates that the district court erred in holding that proof of a disability or perceived disability is required for backpay under § 12112(d). *Bates* establishes Nawara's right to backpay.

**F.    CONTRARY TO WHAT IS CLAIMED BY THE CCSO, OTHER CIRCUIT COURTS OF APPEAL HAVE NOT REQUIRED PROOF OF A DISABILITY TO BE ELIGIBLE FOR BACK PAY UNDER 42 U.S.C. § 12112(d)(4)**

Other Circuit Courts of Appeal decisions do not support the district court's judgment as claimed by the CCSO (CCSO Brief, Doc. 50 pp. 14-19). The Sixth Circuit in *Bates* is the only Circuit Court of Appeal who has ruled on this issue and held that proof of a disability is not required. *See*, discussion *supra*.

None of the cases cited by the CCSO hold or even support the proposition that proof of a disability is required to obtain back pay under § 12112(d)(4). Referring to

*Kurtzhale v. County of Dunn*, 969 F.3d 725 (7th Cir. 2020), the CCSO notes that the district court found the case "not directly on point." (CCSO Brief, Doc. 50 p. 14). A case not on point lends no support to its argument. Nawara cited *Kurtzhale* for the proposition that the purpose of § 12112(d)(4)(A) is to prevent employers from inquiring into whether an employee has a "disability" through a medical examination/inquiry unless it is shown to be "job-related and consistent with business necessity." (Nawara Brief, Doc. 38 p. 30).

The CCSO acknowledges that *Kurtzhale* holds that "§ 12112(d)(4)(A) 'applies to all employees with or without an actual or perceived disability.'" (CCSO Brief, Doc. 50 p. 14, *quoting Kurtzhale*, 969 F.3d at 730). *Kurtzhale* not only supports an award of back pay, it destroys the CCSO's argument that Nawara is not entitled to back pay absent proof of a disability.

The CCSO's reliance on *Tice v. Ctr. Area Transp. Auth.*, 247 F.3d 506 (3rd Cir. 2001) is equally misguided and is not even close to being "on-point" as claimed by the CCSO (CCSO Brief, Doc. 50 p. 15). *Tice* did not involve whether an employee must prove that he/she is disabled to be eligible for back pay for unlawful medical exams and inquiries. *Tice* involved the interpretation of "the ADA's provisions regarding permissible and impermissible medical examinations and inquiries, located at 42 U.S.C. § 12112(d)." *Tice*, 247 F.3d at 508. The case has nothing to do with whether a plaintiff who has proven that a medical exam and inquiry is impermissible under § 12112(d), must also prove that he or she is disabled to be eligible for back pay.

The *Tice* court found that the employer was justified under the facts of the case to require Tice to submit to a medical examination when Tice, a bus driver, complained of severe pain, difficulty walking and spasms that interfered with the use of his legs. *Tice*, 247 F.3d at 517. Tice also had a long history of medical absences. *Id*. at 509-10. The district court granted the employer's motion for summary judgment finding that the employer established that requiring the examination was job related and consistent with business necessity. *Id.* at 519-20. The district court found the evidence "overwhelming" that the transit authority had good reason to doubt Tice's abilities to perform his job as a bus driver. *Id.* at 519.

*Tice* provides no support to the CCSO. Here, the jury decided that the CCSO's demand that Nawara submit to a FFD exam and sign medical releases was not job related and consistent with business necessity. The jury spoke on this issue and it is no longer open for debate. *Tice* lends further support for Nawara's case in that "[E]ven a 'good faith' mandatory medical examination by an employer may nevertheless give rise to liability if the court determines that the examination was unwarranted." *Id*. at 518.

*Armstrong v. Turner Indus., Inc.*, 141 F.3d 554 (5th Cir. 1998), cited by the CCSO, also provides no support. *Armstrong* did not involve back pay and the case did not even involve an employee subjected to an impermissible medical exam or inquiry. The case was brought under 42 U.S.C § 121112 (d)(2)(A) dealing with job applicants. The employer was granted summary judgment based on a lack of standing. "Because Armstrong has

not identified a cognizable and compensable injury arising out of the medical examination and inquiry, or alleged any corresponding damages, he has completely failed to demonstrate any entitlement to a damages remedy." *Id*. at 562.

*Armstrong* sheds no insight on the issue at hand and it most certainly does not support the claim that a successful ADA plaintiff who proved a violation of 42 U.S.C. § 12112(d)(4)(A) and who, as a result of that violation, was prevented from working for nine (9) months for his refusal to submit to an illegal fitness for duty examination and sign unlimited medical releases, must prove that he is disabled in order to qualify for back pay. Unlike Armstrong, Nawara proved a cognizable and compensable injury arising from the unlawful medical examination and inquiry.

The CCSO cited *Armstrong* and *Strong v. Paulson,* 249 F. App'x 470, 473 (7th Cir. 2007) for the claim that "a medical examination, in and of itself, does not give rise to damages liability under the ADA" (CCSO Brief, Doc. 50 p. 18). This also lends no support to the CCSO. Here we have monetary damages caused by the impermissible medical examination and inquiry.

The next case cited, *Fredenburg v. Contra Costa Cnty. Dep't of Health Servs*., 172 F.3d 1176 (9th Cir. 1999), also adds nothing to the CCSO's argument. The question before the court was whether Fredenburg was judicially estopped from establishing an ADA claim against her former employer because of representations she made in applying for state disability benefits. *Id*. at 1177.

*Fredenburg* ironically supports Nawara's claim for back pay. Citing 42 U.S.C. § 12112(d)(1), the court held that "[t]he prohibition against discrimination as referred to in subsection (a) of this section shall include medical examinations and inquiries." *Id*. at 1182. The court held that "plaintiffs need not prove that they are qualified individuals with a disability in order to bring claims challenging the scope of medical examinations under the ADA." *Id*.

In its analysis of § 12112(d), the Ninth Circuit in *Fredenburg* found that the restrictive language of § 12112(a), incorporated by reference in § 12112(d)(1), does not apply to subsections (d)(2), (d)(3) and (d)(4). *Id.* The court noted that these subsections refer to "employees," and "job applicants," not "qualified individuals with a disability." The court reasoned that protecting only qualified individuals would defeat much of the usefulness of those sections. *Id*.

The *Fredenburg* Court, like every other circuit who has addressed this issue recognized: (1) § 12112(d)(4)(A) applies to all employees with or without a disability; and, (2) subjecting employees to impermissible medical exams or inquiries is a form of discrimination. No other reading of the statute makes sense.

*Cossette v. Minn. Power & Light*, 188 F.3d 964 (8th Cir. 1999), *Griffin v. Steeltek, Inc.* 261 F.3d 1026 (10th Cir. 2001), and every other case cited by the Defendant, shows the tenuousness of its arguments. None of the cases assist the CCSO, despite how it tries to spin the cases and take them out of context.

The CCSO claims that *Griffin* recognized that some violations of 42 U.S.C. § 12112(d) do not allow for monetary relief." (CCSO Brief, Doc. 50 p. 17). All *Griffin* and the other authorities cited hold is that an employee is not entitled to damages absent proof that he/she suffered injury as result of violation. *Griffin*, 261 F.3d at 1029. Having to prove an injury or damages is nothing novel. In *Firefighters Local. Union No. 1784 v. Stotts*, the Supreme Court stated:

> In a Title VII class action of the type brought by respondents, an individual plaintiff is entitled to an award of individual relief only if he can establish that he was the victim of discrimination. That requirement grows out of the general equitable principles of "make whole" relief; an individual who has suffered no injury is not entitled to an individual award [citation omitted]. If victimization is shown, however, an individual is entitled to whatever retroactive seniority, backpay, and promotions are consistent with the statute's goal of making the victim whole [citation omitted].

*Firefighters Loc. Union No. 1784 v. Stotts*, 467 U.S. 561, 612 (1984).

In the instant case, it cannot be disputed that Nawara was a victim of discrimination and suffered an injury. Back pay, the restoration of Nawara's personal time and seniority is required as part of his "make whole" relief.

## G. THE CCSO'S McDONNELL DOUGLAS AND MOOTNESS ARGUMENTS SHOULD BE DEEMED WAIVED FOR FAILING TO RAISE THE ARGUMENTS BELOW

For the first time on appeal, the CCSO makes the convoluted and disjointed argument contending that under *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), it was Nawara's burden to show a non-pretextual reason for the its illegal actions and argues that the reading the statute to require proof of discrimination as a condition for

back pay is consistent with *McDonnell Douglas*. (CCSO Brief, pp. 13-14, Doc. 50). This argument was never made before the district court and should be deemed waived (*See*, CCSO's Rule 50(a) motion, Doc. 312).

The CCSO did not even cite *McDonnell Douglas* in its motion for new trial. *Id*. Arguments not raised in the district court are waived on appeal. *Citizens Ins. Co. of Am. v. Barton*, 39 F.3d 826, 828 (7th Cir. 1994). Issues that a party fails to raise before the lower court are waived on appeal. *Schoenfeld v. Apfel*, 237 F.3d 788, 793 (7th Cir. 2001).

Moreover, the CCSO's argument conflicts with the plain language of the statute, and controlling case law. As discussed *supra*, § 12112(d)(1) provides that unlawful medical exams and inquiries constitute "discrimination." In addition, it was the Sheriff's Office's burden to establish that the inquiry or examination was job related and consistent with business necessity; that is, vital to the business, as opposed to a mere expediency. *Wright v. Illinois Dep't of Children & Family Servs.*, 798 F.3d 513, 523 (7th Cir. 2015).

Finally, the CCSO waived its *McDonnell Douglas* argument by failing to tender a jury instruction on the issue. The jury instructions submitted required the jury to determine if the inquiry was job related and consistent with business necessity under 42 U.S.C. § 12112(d)(4)(A). (Doc. 302 pp. 24-27, 29). The failure to submit such an instruction coupled with the CCSO's affirmative acceptance of the court's final jury instructions constitutes waiver. *United States v. Salerno*, 108 F.3d 730, 740 (7th Cir. 1997).

The CCSO also argues mootness for the first time, claiming that the lower court's order that the CCSO restore Nawara's seniority should be vacated on account of Nawara's transfer in 2019 from the Sheriff's Department of Corrections to the Sheriff's Police Department (CCSO Brief, Doc. 50 pp. 10, 33-34). There are numerous substantive and procedural problems with this argument. As a preliminary matter, mootness was never pled as an affirmative defense or raised before the district court. (Defendant's Answer to Second Amended Complaint, (Doc. 188). An affirmative defense must be properly pled. *Surface Shields, Inc. v. Poly-Tak Prot. Sys., Inc.*, 213 F.R.D. 307, 308 (N.D. Ill. 2003).

Nawara anticipates the CCSO will argue that its mootness claim was not known on April 18, 2019 when it filed its answer (Doc. 188). Because the Sheriff only asserts that the transfer occurred in 2019 without a supporting citation to the record, it cannot be determined if this is true or when in 2019 the transfer occurred. Even if this were true, however, the CCSO should have moved to amend its answer. *See*, *Burton v. Ghosh*, 961 F.3d 960, 954 (7th Cir. 2020). Nawara's transfer was certainly known at the time of Nawara's deposition in October 2019 (Doc. 316 p. 817:18), and at the time of trial in 2020. Accordingly, the Court should deem the CCSO's mootness argument waived for failing to plead it as an affirmative defense.

The CCSO also waived mootness by failing to raise it before the district court. On March 15, 2022, the CCSO filed its Rule 59(e) motion to alter or amend judgment

`regarding seniority benefits (Doc. 392). There is no mention of mootness in its Rule 59(e) motion.

There is no justification for the CCSO not raising the issue of mootness below. It had every opportunity to do so. By not raising and developing the issue below, the CCSO prevented any type of meaningful review. We do not know from the CCSO's submissions when Nawara started with its Department of Police. The Department of Police and the Department of Corrections are all part of the CCSO. *See*, [www.cookcountysheriff.org](www.cookcountysheriff.org). Hence, these arguments should be deemed waived.

## II.   NAWARA PROVED THAT HE IS ENTITLED TO BACK PAY

The CCSO is wrong when it claims that Nawara's lost wages should be reduced by $17,000. (CCSO Brief, Doc. 50 pp. 7, 8, 29). First, the CCSO waived mitigation for failing to raise it below (Nawara's Brief, Doc. 38 p. 23). Additionally, there is no merit to claim that Nawara failed to mitigate his damages (Nawara's Brief, Doc.  38 pp. 22-23). It makes no sense to require an employee who is on unpaid leave to secure alternative employment.

Also, the record shows Nawara never received anything close to $17,000 from secondary employment. At trial, defense counsel asked Nawara if he made over $17,000 from secondary employment. (Doc. 316, p. 883:23). Nawara answered if it is there I will agree with you. (Doc. 316, p. 884:3). Plaintiff's counsel objected

in that defense counsel was trying to portray $12,831.70 in pension benefit withdrawals as secondary employment earnings. (Doc. 316, p. 885:7; Def. Ex. 58). The CCSO recognized this error and in the stipulation they acknowledge that Nawara only earned $4,715.57 in other employment. (Doc. 362, p. 1, fn. 1).

Based on the proofs and the parties' stipulations, Nawara should be awarded $30,773.93 in back pay, plus the restoration of his personal and compensatory time used while on involuntary unpaid leave status (Nawara's Brief, Doc. 38 pp. 21-23).

The CCSO argues that the district court did not abuse its discretion in denying back pay even assuming that back pay is available (CCSO Brief, Doc. 50 p. 21). The basis for the CCSO's claim is (1) Nawara was not disabled, (2) Nawara presented no evidence of discrimination and (3) the jury awarded no damages for emotional distress. *Id*.

The CCSO's arguments are without merit. First, the district court found that "the evidence supports a finding that requiring Nawara to submit to an FFD before returning to work was the but-for cause of Nawara's unpaid leave." (Doc. 360, p. 26). This finding is not being appealed from and should not be open to challenge. Thus, the district court would have awarded back pay had the court ruled that back pay was available for non-disabled individuals for violations of § 12112(d)(4)(A). Second, the district court has broad equitable discretion to fashion back pay awards to make the Title VII victim whole. *David v. Caterpillar, Inc.*, 324 F.3d 851, 865 (7th Cir. 2003). Here, Nawara lost $30,773.93 in wages directly caused by the CCSO's ADA violations.

Third, § 12112(d)(4) does not require proof of a disability for backpay. *See*, discussion *supra*; Nawara's opening brief (Doc. 38); EEOC Brief (Doc. 41). Fourth, the CCSO is wrong that Nawara presented no evidence of discrimination. As previously discussed, the ADA expressly provides that unlawful medical exams and inquiries constitute "discrimination" under the ADA. 42 U.S.C. § 12112(d)(1).

Finally, the fact the jury awarded no emotional distress damages has nothing to do with Nawara's entitlement to back pay. A person is not required to succeed on every category of damages sought, *i.e.*, emotional distress, to be entitled to back pay. (Fed. Civ. Jury Instructions of the 7th Circuit No. 3.10, Doc. 302, p. 32) (This does not mean, however, that compensatory damages are restricted to the actual loss of money; they include both the physical and mental aspects of injury, even if they are not easy to measure. In calculating damages, you should not consider the issue of lost wages and benefits. The court will calculate and determine any damages for past or future lost wages and benefits.)

Nawara proved damages and must be made whole.

## III.   THE DISTRICT COURT ERRED IN NOT ORDERING THE RESTORATION OF NAWARA'S "PENSION-BASED SENIORITY BENEFITS"

As set forth in the opening brief, the district court's decision that Nawara is entitled to a restoration of seniority but not to the restoration of "pension-based seniority benefits" cannot be legally or logically reconciled (Doc. 38, pp. 38-46). The CCSO's

argument that the restoration of pension-based seniority benefits is an impermissible form of back pay (Doc. 50, pp. 29-31) fails as a matter of law assuming the Court finds that Nawara is entitled to back pay. The fact that the Pension Board may require the payment of wages in order to restore the benefits the CCSO took away from Nawara should not relieve the CCSO from its obligation of making Nawara as close to whole as possible.

There is no support in the record to support the CCSO's claim that it cannot restore seniority to a job Nawara no longer has. Nawara's Rule 59 motion regarding the restoration of seniority, which was granted by the district court (Doc. 382), requested the restoration of all seniority that was not credited from November 18, 2016 through September 29, 2017 (Doc. 377, p. 25). Because of the CCSO's unlawful actions, Nawara was not credited with the seniority he would have otherwise received had he not been unlawfully prevented from working. *Id*. The loss of seniority also affects Nawara's pension and retirement date. *Id*.

The CCSO's argument that "The district court's order to restore 'seniority' and 'vacation days' is directed to Nawara's old position at the Department of Corrections, not the Sheriff's Police" is wrong. (CCSO Brief Doc. 50 p. 45). The quoted remarks come from the CCSO's supplemental brief on back pay. The only clock that is restarted in terms of seniority is for purposes of work assignments. The CCSO conveniently ignores the seniority accumulate with respect to

retirement and pension. Nawara does not need to return to the Department of Corrections in order to claim retirement seniority that should have been allocated to him but for the CCSO's unlawful acts. There was no speculation by the district court in that respect.

Further, the record fails to support the CCSO's claim that Nawara's loss of seniority became moot when he transferred to the Police Department. This argument has been waived because it was not raised below. *See*, discussion *supra*. Further, this argument by the CCSO, finds no support in the record. For example, there is no record that would enable a conclusion that Nawara's vacation or personal days were not affected by the loss of seniority. The CCSO'S failure to raise the issue below makes it impossible to determine whether his unused personal, sick and vacation days would have carried over to the Police Department. In addition, upon information and belief, unused personal, sick and vacation days can be cashed out. Nawara's lost pension credits and the delay in his retirement date remain unaffected by his transfer and hence did not become moot. As an affirmative defense, it was the CCSO's burden to plead and prove mootness and it did not meet its burden in this regard. Therefore, the Court should reject the CCSO's mootness claim.

In addition, as previously discussed, restoration of retroactive "pension-based seniority benefits" would not disturb the district court's finding that Nawara is not entitled to backpay. (Nawara's Brief, Doc. 38 pp. 43-44). The CCSO caused Nawara to lose

153 days of "pension based seniority benefits." The CCSO must be required to do whatever is necessary to restore what it illegally took from Nawara as part of his make-whole relief.

The CCSO also suggests that the restoration of seniority is not an available remedy for its violation of § 12112(d)(4) (Doc. 50, pp. 31-32). As set forth in Nawara's initial brief, it is firmly established that retroactive seniority is an available remedy under the ADA, citing *Franks v. Bowman Transportation Co., Inc.*, 424 U.S. 747 (1976) and *Miles v. Indiana*, 387 F.3d 591, 599 (7th Cir. 2004) for the proposition that a Title VII victim is presumptively entitled to full relief (Doc. 38, p. 42). CCSO argues that *Franks* and *Miles* involve racial discrimination (CCSO Brief, Doc. 50 p. 31). The fact that the cases involve race discrimination under Title VII, as opposed to discrimination for violations of § 12112(d)(4), is of no consequence. A full restoration of seniority is required as part of Nawara's make-whole relief. Courts have broad discretion under 42 U.S .C. § 2000e–5(g) to craft equitable relief necessary to make whole a plaintiff who has won a verdict in his/her favor. *Miles*, 387 F.3d at 599.

## CONCLUSION

Plaintiff-Appellant, John Nawara, respectfully requests that this Court reverse the district court's order of November 4, 2021, denying Nawara's motion for backpay and other equitable relief, the orders of February 15, 2022 and July 29, 2022, in so far as the

orders denied Nawara what the district court characterized as "pension-based seniority"/

"seniority benefits."

                                   Respectfully Submitted,

                                   *JOHN NAWARA*

                                   */s/ Richard F. Linden*
                                   Richard F. Linden

Richard F. Linden
Law Offices of Richard Linden
17 North State Street, Suite 1550
Chicago, IL 60602
312/590-0211
lindenlaw@gmail.com

Peter V. Bustamante
Law Office of Peter V. Bustamante
17 North State Street, Suite 1550
Chicago, IL 60602
312/346-2072
pvbust@bustamantelaw.com

**CERTIFICATE OF COMPLIANCE**

This document complies with the type-volume limitations of Fed. R. App. P. 32(a)(7)(B) and Circuit Rule 32, because this document contains 6,908 words, excluding the parts of the document exempted by Fed. R. App. P. 32(f).

This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in 12-point Palatino Linotype style font.

Dated: March 13, 2023

/s/ *Richard F. Linden*
Richard F. Linden
One of the Attorneys for Appellant

**CERTIFICATE OF SERVICE**

I hereby certify that on March 13, 2023, the Reply Brief of Appellant/Brief of Cross-Appellee was filed with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the appellate CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

*/s/ Richard F. Linden*
Richard F. Linden